1   DAVID L. LARSON (SBN 112342)
    E-mail: dlarson@mwe.com
2   ROBERT J. BLANCH (SBN 189632)
    E-mail: rblanch@mwe.com
3   McDERMOTT WILL & EMERY LLP
    3150 Porter Drive
4   Palo Alto, CA 94304
    Telephone: (650) 813-5000
5   Facsimile:   (650) 813-5100

6   Attorneys for Defendant
    TSU-CHANG LEE

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  ViCHIP CORPORATION,                CASE NO.  C-04-02914 PJH

13                 Plaintiff,           ELECTRONIC CASE FILING

14      v.                             **COUNTERCLAIMS OF TSU-CHANG
                                       LEE; TSU-CHANG LEE'S AMENDED
15  TSU-CHANG LEE,                     ANSWER TO COMPLAINT**

16                 Defendant and       **DEMAND FOR JURY TRIAL**
                   Counterclaimant
17

18  ─────────────────────────────
    TSU-CHANG LEE,
19
                   Counterclaimant,
20
        v.
21
    ViCHIP CORPORATION and
22  ViCHIP CORPORATION, LTD.

23                 Counterclaim Defendants.

24

25                        **COUNTERCLAIMS**

26          Tsu-Chang Lee ("Dr. Lee"), as and for claims for relief herein, avers against

27  counterclaim defendants ViCHIP Corporation and ViCHIP Corporation, Ltd. as follows:

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

**THE PARTIES**

2      1.      Counterclaim plaintiff Dr. Lee is the founder and Chairman of NeoParadigm

3    Labs, Inc. ("NeoParadigm"), dba ViVoDa Communications, Inc.  Dr. Lee holds a Ph.D. in

4    electrical engineering from Stanford University and is a U.S. citizen and resident of California.

5      2.      In June, 2002, Dr. Lee received an inquiry from Bill Chien, President of SESODA

6    Corporation in Taiwan ("Sesoda"), regarding Sesoda's potential licensing of intellectual property

7    owned by NeoParadigm which Dr. Lee founded in 1995.  Sesoda is a large publicly held

8    Taiwanese corporation incorporated and existing under the laws of the Republic of China.  Mr.

9    Chien indicated that Sesoda was interested in creating a facility in Taiwan to develop and market

10   integrated chips based on NeoParadigm's integrated circuit technology.  During 2002,

11   NeoParadigm was also looking for funding from a joint venture partner to develop an upgraded

12   version of its VDC-601 chip, so long as the joint venture would not compete against it in its

13   focused "systems markets" for, among other things, certain video surveillance and security

14   products.  The "systems market" refers to system-level products incorporating the chips in

15   particular applications.

16      3.      As a result of further discussions and negotiations, NeoParadigm and Dr. Lee

17   ultimately formed a joint venture with (i) Sesoda, (ii) another Taiwanese company called Solid

18   State System Co., Ltd. ("3S"), and (iii) various holding companies, to develop a successor chip to

19   NeoParadigm's VDC-601 chip.  Of the approximately 22 million dollars in funding received by

20   NeoParadigm to date, more than fifty percent of such funding was used to develop the VDC-601

21   chip technology.  Dr. Lee and the joint venturers executed a Joint Venture Agreement on

22   November 20, 2002, pursuant to which the joint venturers would form a new company to develop

23   and market the successor chip.  Thereafter, the joint venturers created ViCHIP Corporation, Ltd.

24   in Taiwan ("ViCHIP" or "ViCHIP Taiwan") to implement the objectives of the joint venture.

25      4.      Counterclaim defendant ViCHIP is a Taiwanese corporation incorporated and

26   existing under the laws of the Republic of China.

27      5.      Counterclaim defendant ViCHIP Corporation ("ViCHIP California") is a

28   corporation incorporated in the State of California, with its principal place of business at 2860

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

COUNTERCLAIMS OF TSU-CHANG LEE; TSU-CHANG
LEE'S AMENDED ANSWER TO COMPLAINT          - 2 -          (Case No. C-04-02914 PJH)

1   Zanker Road, Suite 204, San Jose, California 95134.  In December 2002, Dr. Lee incorporated

2   ViCHIP California and served as its sole Director and CEO.   ViCHIP California is a wholly

3   owned subsidiary of ViCHIP Taiwan.

4         6.      3S and Sesoda are the majority shareholders of ViCHIP Taiwan.  On information

5   and belief, virtually all of the officers of ViCHIP Taiwan and ViCHIP California are employees

6   of 3S.  In addition, substantially all of the Directors of ViCHIP California are Directors of

7   ViCHIP Taiwan and simultaneously Directors, officers, managers, or family members of key

8   shareholders of 3S and Sesoda.  On information and belief, ViCHIP California is

9   undercapitalized, and all of ViCHIP California's funding comes from ViCHIP Taiwan.  Many of

10  ViCHIP California's managers and employees are joint employees of, and are partially paid by,

11  ViCHIP Taiwan.  The Board of Directors of ViCHIP Taiwan sets policies for both itself and

12  ViCHIP California.

13  **JURISDICTION**

14        7.      Jurisdiction over the compulsory counterclaims is proper in this Court pursuant to

15  28 U.S.C. §1367 because the counterclaims against ViCHIP California and ViCHIP Taiwan

16  concern the same transaction and operative facts set forth in the Complaint and are necessary for

17  a complete and just resolution of this matter.

18  **INTRADISTRICT ASSIGNMENT AND VENUE**

19        8.      Counterclaim defendant ViCHIP California has admitted that its principal place of

20  business is in Santa Clara County, California.  ViCHIP California has already availed itself of this

21  venue in filing the instant action and admitted in its Complaint that venue is proper in the United

22  States District Court for the Northern District of California.  Therefore, ViCHIP California is

23  subject to the personal jurisdiction of this Court.   On information and belief, ViCHIP Taiwan is

24  aware of, directed, and approved its wholly owned U.S. subsidiary's filing of the Complaint

25  against Dr. Lee.

26        9.      Venue in this Court is proper pursuant to 28 U.S.C.A. §§1391(b), (c), and (d)

27  (2000), in that a substantial part of the events or omissions giving rise to the claims occurred in

28  the State of California and/or in that a substantial part of property that is the subject of the action

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   is situated in the State of California within the geographical scope of the United States District

2   Court for the Northern District of California.  On information and belief, counterclaim defendant

3   ViCHIP Corporation, Ltd. is subject to personal jurisdiction of this Court.

4   **GENERAL ALLEGATIONS**

5   10.   Under the Joint Venture Agreement, NeoParadigm contributed to the joint venture

6   certain intellectual property rights to the VDC-601 chip.  Neither Dr. Lee nor NeoParadigm was

7   required to contribute any other intellectual property to the joint venture.

8   11.   The Joint Venture Agreement provides that minority shareholders NeoParadigm

9   and Dr. Lee have the power to appoint one member each to the five member Board of Directors

10  of the company to be formed.  *See* Joint Venture Agreement, ¶5.1.  The Agreement also provides

11  that 3S could appoint two board members, and Sesoda could appoint one board member.  *Id.* at

12  ¶5.1.  Pursuant to the terms of the Joint Venture Agreement, after ViCHIP was formed, the joint

13  venture partners (now ViCHIP shareholders), ratified appointment of 3S's two board members

14  (Tim Hu and Joey Su), Sesoda's board member (Felix Chen), NeoParadigm's board member (Dr.

15  T.C. Lee), and Dr. Lee's board member (Hsi-Sheng Chen).  In accordance with the Joint Venture

16  Agreement, Dr. Lee appointed himself as ViCHIP's CEO, with responsibility to lead the

17  management and technical team, and with the power to hire, organize, and control the

18  management and product development of the joint venture.  *Id.* at WHEREAS clause 3. and  ¶7.1.

19  12.   Under the Joint Venture Agreement, NeoParadigm, in exchange for contributing

20  certain rights to the VDC-601 chip, is to receive 10% ownership of the joint venture, $169,556

21  cash, a license back, the right to use the upgraded chip product from the joint venture, and a

22  promise that the joint venture would not compete with NeoParadigm in the systems market.  *See*

23  *id.* Article 3.  The Joint Venture Agreement also provides that if certain technical objectives (the

24  details of which were agreed to in a later separate specification) are met and certain financial

25  objectives are met, Dr. Lee will be entitled to receive, and to determine the distribution of, at his

26  sole discretion, up to 35% ownership of the joint venture company.  This, together with the 10%

27  ownership of the joint venture by NeoParadigm, would give Dr. Lee and NeoParadigm control of

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    45% of the joint venture. Accordingly, Dr. Lee was highly motivated to ensure the technical and

2    financial success of ViCHIP.

3        13.    Pursuant to his authority as the CEO of the joint venture and with the approval of

4    ViCHIP's board, Dr. Lee incorporated ViCHIP California, a wholly owned subsidiary of ViCHIP

5    Taiwan, in California in or around December, 2002. This U.S. subsidiary advanced the purposes

6    of the joint venture by permitting ViCHIP California to hire engineers in the United States to

7    develop the successor VDC-601 chips contemplated by the joint venture. Dr. Lee became CEO

8    and sole board member of ViCHIP California.

9        14.    The joint venture was formed with the understanding that there would be a close

10   cooperative relationship between the joint venture (that is, ViCHIP), NeoParadigm, 3S and

11   Sesoda. Accordingly, on July 17, 2003, the Board of Directors of ViCHIP formally confirmed

12   there were no restrictions to prevent Dr. Lee from continuing to work for NeoParadigm while he

13   was also working for ViCHIP. The board similarly made clear that Tim Hu, President of 3S,

14   could retain that position while working on ViCHIP's business at the same time.

15       15.    The ViCHIP Taiwan board also agreed that joint sales opportunities with

16   NeoParadigm would be advantageous to both ViCHIP and NeoParadigm to generate revenue

17   prior to completion of the chip, given the limited capital of ViCHIP. Dr. Lee discussed joint sales

18   ideas with ViCHIP Taiwan's board members since early 2003. In particular, on or about October

19   9, 2003, Dr. Lee presented an idea which involved having ViCHIP sell NeoParadigm products

20   with the two companies splitting the profits. None of ViCHIP Taiwan's other board members

21   objected to this proposal, which Dr. Lee continued to pursue thereafter. Dr. Lee also participated

22   in preparing a proposal for a joint project by 3S and ViCHIP Taiwan which had been submitted to

23   the government of Taiwan for approval.

24       16.    Meanwhile, in early 2003, as ViCHIP's development and engineering manpower

25   needs increased, board member Hsi-Sheng Chen suggested that some of NeoParadigm's

26   engineers be retained as consultants to ViCHIP. The idea of outsourcing and leveraging

27   NeoParadigm's engineering resources was reported and discussed with the board, and several

28   NeoParadigm engineers began working on ViCHIP's projects pursuant to certain consulting

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    agreements between NeoParadigm and ViCHIP.  NeoParadigm engineers, in large measure,

2    developed the software, firmware, and drivers on ViCHIP's video codec FPGA board before the

3    verification and leading to the successful verification and completion of the performance

4    milestone.

5         17.    The VDC-601 chip and the upgraded chip require, as part of their design, certain

6    mathematical algorithms to perform "motion estimation," which essentially is a comparison of

7    one video frame to another in an effort to determine how various images have moved or changed.

8    These algorithms generally include procedures that quantify certain characteristics of images and

9    look for similar images in related frames.  The VDC-601 chip and the upgraded chip can use this

10   information to reduce ("compress") the amount of data bits required to encode the video stream;

11   conversely, when the video is played back, the information is decoded for display on a video

12   screen or other device.  A chip or chipset that includes these coding and decoding functions is

13   sometimes referred to as a "codec," short for coder/decoder.

14        18.    In early 2003, Dr. Lee came to believe that progress on the motion estimation

15   function of the new chip development was too slow to meet the end of year deadline set by the

16   joint venture partners.  To speed up development, Dr. Lee decided to adapt and incorporate into

17   the motion estimation functionality a portion of some technology that he had invented prior to the

18   formation of the joint venture.  Nothing in the Joint Venture Agreement required Dr. Lee to adapt

19   part of his own pre-existing inventions for use in the video compression chip, and he received no

20   consideration for the technology.  Dr. Lee believed, however, that some aspects of the technology

21   he had invented could be adapted to the implementation of the motion estimation function needed

22   in the chip, and that this implementation would help ViCHIP and the joint venture achieve its

23   performance objectives.  Accordingly, Dr. Lee disclosed a portion of his previous invention to

24   ViCHIP's technical staff, and guided them on testing, verifying, and adapting these narrow

25   aspects of his prior invention into the motion estimation functionality of the new chip design to

26   satisfy ViCHIP's video codec requirements.  Thereafter, the ViCHIP technical staff, with Dr.

27   Lee's assistance and supervision, implemented some of these ideas in the new chip's C models,

28   verification test bench and, ultimately, the logic design of the chip.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1      19.    Although Dr. Lee adapted a particular portion of his previously-invented

2    technology for use in the new video chip, he never used at ViCHIP the broader aspects of that

3    prior invention.  Moreover, while Dr. Lee intended that ViCHIP could use the narrow

4    implementation of his technology in the upgraded chip, he never intended to relinquish his

5    ownership rights either to that particular implementation in a video codec chip or to the broader

6    technology he had invented prior to the joint venture's formation.

7      20.    As it happened, implementation of a portion of Dr. Lee's technology in the new

8    chip achieved not merely an upgrade to the VDC-601 chip (as contemplated by the joint venture),

9    but in fact achieved a tremendous breakthrough in performance.  By the end of December 2003,

10   3S tested the video "codec" (coder/decoder) functionality, and verified that the emulation

11   substantially met or exceeded the milestones set forth in the specification agreed to by the joint

12   venture partners.  3S's President, (Tim Hu), Sesoda's Chairman (Mathias Chen), Sesoda's

13   President (Bill Chien) along with most of the design team, celebrated this breakthrough

14   achievement at a luncheon party in December 2003 in Taipei, Taiwan after 3S signed off on the

15   verification.  In fact, 3S immediately arranged a demonstration of the emulation to one of its best

16   business partners, Toshiba.  Tim Hu and ViCHIP employee Dinso Shing personally presented the

17   demonstration to Toshiba on or about January 8, 2004.  Dr. Lee prepared the PowerPoint slides

18   for their presentation, but did not attend the meeting, which took place in ViCHIP's offices in

19   Taiwan.  With the design verified and successfully demonstrated to Toshiba, 3S realized

20   immediately the potential business opportunities of this unexpectedly superior chip performance.

21     21.    In fact, this successful verification triggered the joint venture partners' obligation

22   to complete the third round of funding of ViCHIP under the Joint Venture Agreement.  This

23   funding was to be supplied by 3S and Sesoda, and the third round of funding closed in April,

24   2004.

25     22.    After the close of the third round of funding and as a precursor to their fraudulent

26   takeover of ViCHIP and removal of Dr. Lee from his operation and management rights

27   guaranteed by the Joint Venture Agreement, 3S personnel prepared and filed a ViCHIP

28   Taiwanese registration document which, on information and belief, was recorded with the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

COUNTERCLAIMS OF TSU-CHANG LEE; TSU-CHANG
LEE'S AMENDED ANSWER TO COMPLAINT      - 7 -      (Case No. C-04-02914 PJH)

McDermott Will & Emery LLP
Attorneys At Law
Silicon Valley

1    Taiwanese Ministry of Economic Affairs after ViCHIP's capital increased.  Rather than

2    identifying NeoParadigm, dba ViVoDa Communications, as an institutional investor and Dr. Lee

3    as the representative for that board seat, on information and belief, 3S personnel fraudulently

4    identified Dr. Lee and all of the other directors as institutional directors representing 3S, except

5    Hsi-Sheng Chen who is identified as an individual director representing himself.  On information

6    and belief, by falsely and fraudulently identifying Dr. Lee as an institutional director representing

7    3S, (which 3S and ViCHIP knew to be false at the time), 3S and ViCHIP sought to enhance their

8    ability to remove Dr. Lee as a director at a time of their choosing.

9          23.    Throughout the development period in 2003 and into 2004, 3S provided

10   management information and accounting services for ViCHIP.  3S employees set up and

11   maintained ViCHIP's computer networks and information systems, and controlled ViCHIP's

12   financial accounts.  3S personnel had keys to enter into ViCHIP's offices at any time and had

13   system administrator access to ViCHIP computers and networks, despite the absence of any

14   confidentiality agreement between ViCHIP and 3S.  In March 2004, Tim Hu and Dr. Lee

15   discussed formalizing the information services relationship between 3S and ViCHIP, and Dr. Lee

16   sent him a form of agreement Dr. Lee had used previously in a similar situation.  In April, 2004,

17   Mr. Hu rejected Dr. Lee's suggested agreement, and instead forwarded a service agreement in

18   which 3S proposed, among other things, that in exchange for providing MIS and accounting

19   services, 3S would own all intellectual property while performing services for ViCHIP,

20   retroactive to January, 2004.  In addition, under 3S's proposed agreement, 3S would not be liable

21   for any damages of any kind to ViCHIP beyond the nominal amounts ViCHIP paid it for MIS and

22   accounting services.  Thus, if 3S misappropriated technology or stole trade secrets of ViCHIP

23   (which it easily could do with its access to ViCHIP's computers and networks) or harmed

24   ViCHIP in any other way, ViCHIP would be effectively without recourse.  In other words, the

25   company Dr. Lee was building and managing in accordance with the Joint Venture Agreement –

26   the company he and NeoParadigm would receive 45% control and benefits flowing therefrom, if

27   successful – would risk not owning whatever intellectual property it may have created, and all of

28   its intellectual property could potentially be owned by 3S.  Dr. Lee deleted the more onerous

1   provisions of 3S's proposed agreement and sent Tim Hu his marked-up copy, but Tim Hu never

2   responded.

3       24.     Instead, at the next ViCHIP board meeting, on May 13, 2004 in Taiwan, Mr. Hu

4   demanded that Dr. Lee immediately discontinue the consulting agreement between ViCHIP and

5   NeoParadigm, and that Dr. Lee not hire or fire any ViCHIP or ViCHIP California employees, no

6   matter how low-level, without his or the full board's approval. Mr. Hu also expressed his intent

7   to change the composition of the board of directors of ViCHIP California. Mr. Hu said that these

8   changes were necessary as a matter of "corporate governance."

9       25.     The next day, Dr. Lee met with Mr. Hu and 3S's marketing director Joey Su and

10  Sesoda President Bill Chien to further discuss his role at ViCHIP. They suggested that Dr. Lee

11  was "too ambitious" in wanting to grow ViCHIP, and that they (that is, 3S/Sesoda) only wanted a

12  "normal" Taiwan company. They asked Dr. Lee to consider relinquishing management of

13  ViCHIP and returning to NeoParadigm. Dr. Lee indicated that their suggestion constituted a

14  fundamental change in the Joint Venture Agreement, and that all the joint venture parties would

15  have to consider and negotiate an amendment. Dr. Lee told them that he would return to Taiwan

16  in a few weeks and that they would discuss the issue further at that time. On May 29, 2004, Dr.

17  Lee informed Tim Hu that he would come to Taiwan the week of June 7, 2004 to further discuss

18  these issues. Meanwhile, although Dr. Lee strongly objected to Mr. Hu's actions, and believed

19  them to violate the Joint Venture Agreement, he endeavored to comply with the board's purported

20  directives by terminating the consulting agreement with NeoParadigm and by seeking approval

21  for hiring and firing decisions.

22      26.     Before Dr. Lee could return to Taiwan, however, Tim Hu sent two fax letters to

23  Dr. Lee on June 4, 2004. The first letter stated that "[a]s the Chairman of the board of the parent

24  company of ViCHIP corporation, I hereby notify you that, starting immediately, you are removed

25  from the duty as Director of ViCHIP Corporation." The second letter stated that "The Board

26  decides that, starting immediately, you are removed from the offices of President, Chief

27  Executive Officer, Chief Financial Officer, and Secretary of ViCHIP Corporation . . . In addition,

28  you are no longer an employee of ViCHIP Corporation." Neither letter affected Dr. Lee's

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    position as President and board member of the parent company, ViCHIP Taiwan.  In fact, Mr. Hu

2    and other board members of ViCHIP Taiwan made no attempt to remove Dr. Lee from ViCHIP

3    Taiwan's board until October 2004.  ViCHIP Taiwan's board also purported to appoint Tim Hu,

4    Felix Chen and Joey Su as the new board members of ViCHIP California.

5        27.    On Friday, June 11, 2004, Dr. Lee received notice of a purported ViCHIP Taiwan

6    board of directors meeting for that coming Monday.  Dr. Lee did not attend the board meeting.

7    The minutes of that meeting, which he did not receive until June 21, include a resolution to

8    promote Dr. Lee to "Vice Chairman" of ViCHIP Taiwan and appointed Tim Hu as "Acting"

9    CEO.

10       28.    Dr. Lee thereafter retained the Taiwanese law firm of Lee and Li, who, pursuant to

11   the arbitration clause of the Joint Venture Agreement, sent a letter to 3S, Sesoda, and ViCHIP

12   Taiwan to initiate arbitration proceedings for their violations of the Agreement.  The petition for

13   arbitration alleges, among other things, that their actions improperly deprived Dr. Lee of the

14   opportunity to achieve the performance milestones under the Joint Venture Agreement, to the

15   detriment of NeoParadigm and Dr. Lee.

16       29.    After 3S and Sesoda received Dr. Lee's demand for arbitration under the Joint

17   Venture Agreement, they caused ViCHIP California to file this suit against Dr. Lee in the United

18   States District Court for the Northern District of California on or about July 19, 2004.

19       30.    Dr. Lee filed a provisional patent application on June 23, 2003 that disclosed

20   certain aspects of his prior invention.  ViCHIP claims that, after Dr. Lee left ViCHIP, it did not

21   have copies of the June 23, 2003 provisional patent application.  On information and belief, this

22   allegation is incorrect.  Dr. Lee provided copies of the provisional application to five individuals

23   at ViCHIP California, including Wen-Lung Chen, Yusong Huang, Li-Herng Yao, Hsi-Sheng

24   Chen, and King Shaw.  Dr. Lee also provided an electronic copy of this application to his

25   assistant, Ms. Tina Lu.

26       31.    ViCHIP also claims that it has maintained the confidentiality of its alleged trade

27   secrets and has not disclosed them to third parties.  On information and belief, this allegation is

28   incorrect.  Immediately after 3S personnel had verified the video compression chip design in

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

COUNTERCLAIMS OF TSU-CHANG LEE; TSU-CHANG
LEE'S AMENDED ANSWER TO COMPLAINT          - 10 -                    (Case No. C-04-02914 PJH)

1    December, 2003, 3S's Tim Hu met with 3S's business partner Toshiba to present a live

2    demonstration of the new video compression FPGA board (which emulated the new video codec

3    chip design) and a presentation of the new technology.  Dr. Lee urged Tim Hu on January 7, 2004

4    to have Toshiba sign a non-disclosure agreement before witnessing the demonstration.  Tim Hu

5    disregarded Dr. Lee's suggestion and the technical presentation and demo proceeded without a

6    non-disclosure agreement.

7         32.     During May and early June, 2004, Dr. Lee worked with ViCHIP's patent attorney,

8    David Jaffer, to prepare a draft utility patent application for filing before the June 23, 2004

9    deadline for claiming priority to the provisional patent application.  Dr. Lee was unable to

10   complete the patent applications with Mr. Jaffer because on June 3, 2004, before he knew about

11   Tim Hu's letters purporting to remove him from his positions at ViCHIP, Dr. Lee learned that

12   someone purportedly acting on behalf of ViCHIP had directed Mr. Jaffer to stop all work on the

13   applications.  Dr. Lee was not aware of any such authorization to transfer the patent files.  Fearful

14   that 3S was plotting to completely take over ViCHIP and its intellectual property, and mindful of

15   the imminent deadline to file utility patent applications based on the provisional, Dr. Lee took

16   possession of the patent files.  At that time, Dr. Lee was CEO and sole director of ViCHIP

17   California, and CEO and a board member of ViCHIP Taiwan.

18        33.     After June 4, 2004, Dr. Lee retained a new attorney to prepare utility patent

19   applications based on the June 23, 2003 provisional patent application.  Dr. Lee wanted to

20   differentiate clearly between some aspects of the technology that he had previously invented, and

21   a detailed hardware implementation adapted from his prior invention that utilized a limited

22   motion estimation method and system for use in video compression.

23        34.     On or about June 14, 2004, Dr. Lee's new attorney filed two U.S. utility patent

24   applications and a related PCT patent application, correctly identifying Dr. Lee as the sole

25   inventor on each application.  On information and belief, these patent applications were made

26   publicly available by the U.S. Patent & Trademark office on December 23, 2004 and January 20,

27   2005, respectively, in accordance with Patent Office procedures.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

35.   In July, 2004, Dr. Lee filed a Taiwanese patent application, which is largely a Chinese translation of one of the U.S. utility application that was filed on June 14, 2004.

36.   On December 22, 2004, Dr. Lee filed a provisional patent application directed to the technology he had invented prior to the formation of the joint venture.

37.   Notwithstanding ViCHIP California's contention that Dr. Lee knowingly abandoned his intellectual property rights when he signed an Employee Confidentiality Agreement allegedly as a condition of his "employment," Dr. Lee did not sign the document until late May, 2003 well after he had disclosed his technology to ViCHIP staff. Dr. Lee did so by mistake, without legal advice, without consideration or remuneration of any kind, without any intent to convey his ownership in either the motion estimation methodology implemented in the upgraded chip or the technology which he invented prior to the formation of the joint venture, and before realizing that the agreement conflicted with Dr. Lee's rights under the Joint Venture Agreement. Dr. Lee cancelled the Employee Confidentiality Agreement.

38.   On or about June 23, 2003, Dr. Lee signed a pre-printed Assignment of U.S. Origin Patent Application form. Proceeding without knowledge as to the requirements of inventorship, Dr. Lee included as named inventors the entire design team that implemented the motion estimation function of the chip, and he asked each of them to sign it. Dr. Lee had no intention to assign away his own individual property rights. In May or June, 2004, in anticipation of a restriction requirement by the Patent Office, Dr. Lee decided to split any potential draft utility patent application based on the June 23, 2003 provisional patent application into several draft patent applications with different potential inventive entities. Dr. Lee believed that the Assignment form was no longer valid in view of the new utility patent applications having different potential inventive entities that did not exist at the time the Assignment form was executed. Dr. Lee cancelled the original signed Assignment from 2003.

39.   Until at least October 27, 2004 and long after the filing of ViCHIP California's Complaint, Dr. Lee remained a member of the Board and Vice Chairman of ViCHIP Taiwan. Dr. Lee continued to receive confidential information of ViCHIP, and he was never prohibited by ViCHIP Taiwan's Board of Directors from having ViCHIP Taiwan's or ViCHIP California's

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   confidential materials.  On October 27, 2004, ViCHIP Taiwan purportedly conducted a

2   shareholder meeting.  As a result of this shareholder meeting, on information and belief, Dr. Lee

3   was purportedly removed from the Board of ViCHIP, despite the fact that the Joint Venture

4   Agreement provides that he is board member appointed by NeoParadigm.

5        40.   Dr. Lee has never interfered with prosecution of any of ViCHIP California's patent

6   applications, nor does Dr. Lee have any intention to do so.  No matter who ultimately is

7   determined to have rights to any inventions that may result from the applications, Dr. Lee

8   believes that the applications should be prosecuted accurately and in good faith.  Dr. Lee has not

9   retained in his possession copies of allegedly confidential ViCHIP California documents.

10        41.   NeoParadigm has been seriously harmed by 3S's interference with Dr. Lee's

11   management duties and its attempt to remove Dr. Lee from his positions at ViCHIP and ViCHIP

12   California.  Prior to being ousted from his management positions of ViCHIP California, Dr. Lee

13   had negotiated with and received a quotation from a foundry to "tape out" and produce samples

14   of the new video codec chip.  On information and belief, the new chip would have been available

15   to NeoParadigm for use in its systems products well before the end of 2004 had it not been for the

16   improper actions of 3S, Sesoda, Hsi-Sheng Chen, ViCHIP Taiwan and their agent and alter ego

17   ViCHIP California's interfering with and terminating Dr. Lee's management rights and

18   obligations under the Joint Venture Agreement.  Since ViCHIP's decision to terminate

19   cooperative relationships with NeoParadigm, NeoParadigm has been deprived of information

20   relating to the specifications for this successor to its VDC-601 chip that it needs in order to

21   incorporate such chips into systems products and has been unable to obtain access to such chips

22   from ViCHIP.  On information and belief, ViCHIP also intends to assist 3S in entering the

23   systems market in direct competition with NeoParadigm in violation of the Joint Venture

24   Agreement.  As a result of this lack of chip information, the lack of available successor chips, and

25   ViCHIP's own violation of the Joint Venture Agreement by intending to enter the very system

26   market in which NeoParadigm sells and markets, NeoParadigm has been harmed in an amount to

27   be proven at trial.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   **COUNT I: DECLARATION OF OWNERSHIP OF INTELLECTUAL PROPERTY**

2   **EMBODIED IN PATENT APPLICATIONS**

3       42.     Dr. Lee hereby realleges and incorporates by reference each and every allegation

4   contained in paragraphs 1 through 41 of the Counterclaims.

5       43.     This is a compulsory counterclaim against ViCHIP California and a related

6   counterclaim against ViCHIP Taiwan under California Code of Civil Procedure §1060 seeking a

7   declaration of ownership of certain intellectual property embodied in certain patent applications

8   filed by Dr. Lee and ViCHIP California,  in view of the circumstances alleged above and the

9   Employee Assignment Agreement and Assignment of U.S. Origin Patent Application forms

10  signed by Dr. Lee.

11      44.     Prior to the formation of the joint venture, Dr. Lee invented a broad technology,

12  one aspect of which includes an n-dimensional motion estimation algorithm and hardware

13  implementation structure.

14      45.     To preserve his intellectual property rights and to ensure that relevant filing

15  deadlines would not be missed, Dr. Lee filed two utility patent applications (Memory and Array

16  Processor Structure for Multiple-Dimensional Signal Processing) and (Method and Apparatus for

17  Adaptive Multiple-Dimensional Signal Sequences Encoding/Decoding) on June 14, 2004.  Both

18  of these utility patent applications claimed priority to U.S. provisional patent application number

19  60/480,985 (Method and Apparatus for Adaptive Multiple Dimensional Signal Sequences

20  Encoding/Decoding) previously filed at Dr. Lee's direction on June 23, 2003.

21      46.     Dr. Lee also filed for foreign patent rights under the Patent Cooperation Treaty.

22      47.     Under applicable Patent Office regulations, Dr. Lee's utility patent applications

23  were subject to publication by the U.S. Patent Office within 18 months of the filing of the

24  provisional application.  Both of Dr. Lee's utility patent applications have been published by the

25  U.S. Patent Office and, on information and belief, the provisional patent application has been

26  accessible to the public since on or about December 23, 2004.

27      48.     Following Dr. Lee's purported removal as its CEO and sole director, ViCHIP

28  California, at ViCHIP's direction, filed a U.S. utility patent application number 10/875,258

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

COUNTERCLAIMS OF TSU-CHANG LEE; TSU-CHANG      - 14 -          (Case No. C-04-02914 PJH)
LEE'S AMENDED ANSWER TO COMPLAINT

(Method and Apparatus for Adaptive Multiple-Dimensional Signal Sequences Encoding/Decoding) on June 23, 2004 having different patent claims from those set forth in Dr. Lee's two utility patent applications but also claiming priority to the same provisional patent application.  On information and belief, ViCHIP California has identified itself as the assignee of the U.S. utility patent application it filed and has filed foreign counterparts of such U.S. utility patent application.

49.     On information and belief, ViCHIP California, at 3S's insistence, granted ViCHIP Taiwan a license to all of ViCHIP's purported technology, with the right to sublicense third parties.

50.     On information and belief, ViCHIP and/or its alter ego ViCHIP California disclosed to 3S certain intellectual property belonging to Dr. Lee when ViCHIP California and/or ViCHIP gave 3S personnel access to the VIPER video codec FPGA and files related thereto.

51.     There is an actual controversy between the parties as to ownership of the intellectual property contained within the provisional patent applications and at least one or more claims of the three U.S. utility patent applications filed by Dr. Lee and ViCHIP California, respectively, and their related foreign filings.  This actual controversy is evidenced by ViCHIP California's false allegations of trade secret misappropriation and conversion set forth in its Complaint and its false allegations in its motion for preliminary injunction which was denied.

52.     On information and belief, an actual case or controversy exists due to ViCHIP California's and/or ViCHIP's disclosure of certain of Dr. Lee's intellectual property embodied in Dr. Lee's patent applications to Dr. Lee's former joint venturer 3S and by ViCHIP's potential sub-licensing of Dr. Lee's intellectual property to 3S,  3S's Japanese business partners and customers, and/or to Sesoda during the pendency of this lawsuit.

53.     3S's website contains product plans, a product road map, and a company profile that 3S is now entering the "multimedia codec engines" business, above and beyond its traditional flash memory business.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    54.    On information and belief, the value of the three utility patent applications and the

2    provisional application to which they claim priority exceeds the jurisdictional minimum of

3    $75,000.

4    55.    Dr. Lee is the rightful owner and an inventor of (i) the technology embodied in

5    two U.S. patent applications that he filed and in the provisional patent application to which the

6    two utility patent applications claim priority, (ii) technology embodied in related foreign patent

7    applications filed by Dr. Lee, (iii) the technology embodied in one or more patent claims of the

8    U.S. utility patent application filed by ViCHIP California, and (iv), on information and belief, the

9    technology embodied in one or more patent claims of related foreign patent applications filed by

10   ViCHIP California.

### COUNT II: MISAPPROPRIATION

12   56.    Dr. Lee hereby realleges and incorporates by reference each and every allegation

13   contained in paragraphs 1 through 55 of the Counterclaims.

14   57.    This is a pendent counterclaim against ViCHIP and ViCHIP's alter ego ViCHIP

15   California for misappropriation of Dr. Lee's intellectual property under California common law.

16   58.    Dr. Lee invested substantial time and money in developing n-dimensional motion

17   estimation technology prior to the formation of the joint venture.  A much narrower two-

18   dimensional subset of Dr. Lee's n-dimensional motion estimation technology is now embodied in

19   the ViPER chip and related documentation, and ViCHIP California has filed a patent application

20   directed to that broader n-dimensional algorithm and hardware structure, which claims priority to

21   the provisional application embodying the technology invented by Dr. Lee prior to the formation

22   of the joint venture.  On information and belief, ViCHIP and/or ViCHIP California have

23   disclosed and/or given access to this intellectual property, including such motion estimation

24   algorithms and structures and related documentation thereof, to 3S at 3S's direction.  3S has now

25   admitted in its Internet website that it is entering the multimedia "codec" engine business, where,

26   on information and belief, it has no past experience or track record.  This new business focus of

27   3S could not have occurred without 3S's improper access to Dr. Lee's pre-existing invention.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    59.    ViCHIP and ViCHIP California have appropriated Dr. Lee's intellectual property,

2    including motion estimation algorithm and hardware structures and documentation thereof and

3    the right to file a patent application directed thereto, at little or no cost.

4    60.    Dr. Lee has been injured as a direct result of ViCHIP's and ViCHIP California's

5    misappropriation in an amount to be proven at trial.

6                              **COUNT III: UNJUST ENRICHMENT**

7    61.    Dr. Lee hereby realleges and incorporates by reference each and every allegation

8    contained in paragraphs 1 through 60 of the Counterclaims.

9    62.    This is a pendent counterclaim against ViCHIP California and ViCHIP for unjust

10   enrichment under California common law.

11   63.    ViCHIP and ViCHIP California have received the benefit of Dr. Lee's disclosure

12   of his n-dimensional motion estimation algorithm and hardware structure beginning prior to the

13   time that Dr. Lee was on ViCHIP's payroll and well prior to the time that Dr. Lee signed, by

14   mistake and without consideration or legal advice, the Employee Confidentiality Agreement.

15   3S's and ViCHIP's agent ViCHIP California has incorporated a two-dimensional subset of Dr.

16   Lee's n-dimensional motion estimation algorithm and hardware structure into its Viper chip and

17   has continued to prosecute one or more patent applications directed to Dr. Lee's broader n-

18   dimensional motion estimation algorithm and hardware structure, despite knowing, on

19   information and belief, that such technology was invented by Dr. Lee prior to the formation of the

20   joint venture.  3S has now disclosed that it is entering the multimedia codec engine business.

21   64.    ViCHIP and ViCHIP California have unjustly obtained the benefit of Dr. Lee's

22   prior invention at Dr. Lee's expense and without compensation to Dr. Lee.

23   **COUNT IV: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
24   AND PROSPECTIVE ECONOMIC ADVANTAGE**

25   65.    Dr. Lee hereby realleges and incorporates by reference each and every allegation

26   contained in paragraphs 1 through 64 of the Counterclaims.

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1      66.    A valid contract exists between Dr. Lee, NeoParadigm Labs, Inc., 3S, and Sesoda

2  to form a joint venture called ViCHIP Corporation Ltd.  This contract is embodied in the Joint

3  Venture Agreement.

4      67.    ViCHIP and ViCHIP California intentionally and without justification terminated

5  Dr. Lee from certain of his management positions and duties at ViCHIP and ViCHIP California,

6  on information and belief, in order to gain ownership of Dr. Lee's valuable intellectual property

7  which ViCHIP and/or ViCHIP California intend to license or transfer to 3S, Sesoda, or their

8  customers and, on information and belief, in order to deprive Dr. Lee of his control and disposal

9  of 35% ownership interest in ViCHIP which instead will instead be controlled and disposed by 3S

10  and Sesoda.

11      68.    At the time that ViCHIP and ViCHIP California terminated Dr. Lee from such

12  management positions and duties,  ViCHIP and ViCHIP California knew of the existence of the

13  Joint Venture Agreement and intended to induce its breach, knew that Dr. Lee had valuable

14  intellectual property, knew that Dr. Lee would be entitled to control and benefits flowing from

15  35% of the stock of the joint venture and other benefits if he reached certain performance

16  milestones in 2006, and knew that NeoParadigm would be entitled to control and benefits flowing

17  from 10% of the stock of the joint venture and would be entitled to have access to the successor

18  video compression chip for use in the systems market without interference and competition from

19  ViCHIP.

20      69.    ViCHIP and ViCHIP California wrongfully intended to induce 3S's and Sesoda's

21  breach of the Joint Venture Agreement with Dr. Lee and NeoParadigm and to prevent Dr. Lee

22  from achieving certain performance milestones and knew that interference or disruption of the

23  Joint Venture Agreement was certain or substantially certain to occur as a result of their

24  misconduct.

25      70.    3S and Sesoda breached the Joint Venture Agreement.  Prior to such breach, Dr.

26  Lee had successfully completed all performance milestones recited in the Joint Venture

27  Agreement.

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
SILICON VALLEY

71.     ViCHIP's and ViCHIP California's wrongful termination of Dr. Lee from management positions at ViCHIP and ViCHIP California proximately caused 3S and Sesoda's breach of the Joint Venture Agreement, a disruption of the joint venture relationship, and the loss of reasonably certain future economic benefits specified in the Joint Venture Agreement, resulting in damage to Dr. Lee in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Tsu-Chang Lee requests the following relief:

A.      That this Court declare Dr. Lee's ownership rights in the technology contained within the aforementioned patent applications;

B.      That judgment be entered against ViCHIP Taiwan and ViCHIP California for their misappropriation of Dr. Lee's intellectual property including his motion estimation algorithms and documentation and right to file patent applications thereon;

C.      That judgment be entered against ViCHIP Taiwan and ViCHIP California for unjust enrichment;

D.      That judgment be entered against ViCHIP Taiwan and ViCHIP California for their intentional interference with contractual relationships and prospective economic advantage;

E.      That ViCHIP Taiwan, ViCHIP California, related companies, and their successors keep confidential all information received from Dr. Lee relating to his intellectual property; and that ViCHIP Taiwan and ViCHIP California be precluded from licensing or transferring to any non-party (including 3S, Sesoda, related companies, and their successors) any intellectual property derived from (1) technology disclosed by Dr. Lee to ViCHIP staff; (2) the original VDC-601 technology;

F.      Compensatory, exemplary, and punitive damages in an amount to be proven at trial;

G.      Attorneys' fees and costs;

H.      Such other and further relief as the Court deems just and proper.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

## DEMAND FOR JURY TRIAL

Defendant and counterclaimant Tsu-Chang Lee, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demands a trial by jury as to all matters contained in the Counterclaims.

Defendant Tsu-Chang Lee ("Dr. Lee") hereby amends his Answer to the Complaint filed by Plaintiff ViCHIP Corporation ("ViCHIP California") as follows:

## AMENDED ANSWER

Dr. Lee specifically incorporates by reference paragraphs 1-41 in the Counterclaims, above:

1.     Dr. Lee admits the allegations of paragraph 1 of the Complaint.

2.     Dr. Lee admits that NeoParadigm designated Dr. Lee to perform certain consulting services for ViCHIP California pursuant to a consulting agreement between ViCHIP California and NeoParadigm from approximately December, 2002 through at least the end of March, 2003.  Dr. Lee further admits that pursuant to the terms of the Joint Venture Agreement, he received the right to operate and manage ViCHIP Taiwan and ViCHIP California which included the right to appoint its CEO (pursuant to which Dr. Lee appointed himself to serve in that capacity and as President of ViCHIP) and the right to appoint a Board member on ViCHIP Taiwan's Board of Directors, as well as serving as ViCHIP California's CEO, President, Chief Financial Officer, Registered Agent, and sole Director from their inception.  Dr. Lee denies the Complaint's improper use of the past tense and the word "former" in characterizing Dr. Lee's job titles and its intentional omission of other relevant job titles Dr. Lee continued to hold at the time of the filing of the Complaint in view of the Joint Venture Agreement and Taiwanese law requiring proper notice of Board of Director meetings.  Except as expressly admitted, defendant denies the allegations of paragraph 2 of the Complaint.

3.     Dr. Lee admits that the Complaint purports to state a cause of action for the Computer Fraud and Abuse Act pursuant to 18 U.S.C.A. §1030 for which this Court would have subject matter jurisdiction, but otherwise denies the allegations of paragraph 3 of the Complaint.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

4.      Except as to the street address recited therein, Dr. Lee admits the allegations of paragraph 4 of the Complaint.

5.      Dr. Lee admits that venue is proper in this Court but otherwise denies the allegations of paragraph 5 of the Complaint.

6.      Dr. Lee admits that assignment of this case to the San Jose Division is proper, but otherwise denies the allegations of paragraph 6 of the Complaint.

7.      Dr. Lee admits the allegations of paragraph 7 of the Complaint.

8.      Dr. Lee admits that ViCHIP California is a U.S. branch of its parent company, ViCHIP Taiwan, that Dr. Lee incorporated ViCHIP California to support the parent company to perform design work related to certain integrated circuits, that integrated circuits are electronic devices generally consisting of interconnected transistors and components, and that integrated circuits are used for a variety of purposes, but otherwise denies the allegations of paragraph 8 of the Complaint.

9.      Dr. Lee admits that the integrated circuit market is competitive, but otherwise denies the allegations of paragraph 9 of the Complaint.

10.     Dr. Lee admits that ViCHIP Taiwan has expended resources to upgrade the VDC-601 video compression technology of NeoParadigm Labs, Inc. (dba ViVoDa Communications, Inc.) and that ViCHIP Taiwan's wholly owned U.S. subsidiary, ViCHIP California, filed at least one utility patent application on or about June 23, 2004. Dr. Lee lacks information sufficient to enable him to admit or deny the remaining allegations of paragraph 10 of the Complaint and, on that basis, denies them.

11.     Dr. Lee admits that ViCHIP California  kept certain of its patent files in a locked file cabinet, that ViCHIP's computer system has an external firewall, and that ViCHIP California has certain vendor and employee confidentiality agreements. Dr. Lee denies that ViCHIP California has the explicit employment policies alleged in paragraph 11 of the Complaint or that ViCHIP California has taken reasonable measures to protect and prevent any such unauthorized disclosure, because ViCHIP Taiwan did not require Solid State System Co., Ltd. to execute a non-disclosure agreement, because ViCHIP Taiwan permitted Solid State System Co., Ltd.

1   personnel to have keys to its facilities and gave passwords to 3S personnel to allow them to have

2   complete access to ViCHIP's computer servers and networks, and because ViCHIP Taiwan

3   permitted confidential technology to be demonstrated to 3S's business partner without a non-

4   disclosure agreement.   Except as expressly admitted, Dr. Lee otherwise denies the allegations of

5   paragraph 11 of the Complaint.

6           12.     Dr. Lee denies that any such policy of ViCHIP California exists or that any such

7   Agreement for which Dr. Lee received no consideration could pre-empt and deprive Dr. Lee of

8   the benefits and obligations arising under the Joint Venture Agreement and his status as a joint

9   venturer.  Except as where expressly admitted, Dr. Lee denies the allegation of paragraph 12 of

10  the Complaint.

11          13.     Dr. Lee admits that the recited Agreement purports to require employees to assign

12  to ViCHIP California  patent rights in products that employees make or conceive during their

13  employment and purports to require employees to return all company property to ViCHIP

14  California upon the termination of employment, but denies that the recited Agreement that Dr.

15  Lee mistakenly signed could pre-empt and deprive Dr. Lee of the benefits and obligations arising

16  under the Joint Venture Agreement or could require Dr. Lee to turn over inventions he conceived

17  of prior to forming ViCHIP California and for which he received no consideration.   Except as

18  where expressly admitted, Dr. Lee denies the allegations of paragraph 13.

19          14.     Dr. Lee admits that he signed the Confidentiality Agreement  in or about late May,

20  2003 by mistake, did not read it before signing, did so without legal counsel, did not receive any

21  consideration therefor, and thereafter concluded that it conflicted with his duties, obligations, and

22  benefits arising under the Joint Venture Agreement.  Except as expressly admitted, Dr. Lee denies

23  the allegations of paragraph 14 of the Complaint.

24          15.     Dr. Lee denies the allegations of paragraph 15 of the Complaint.

25          16.     Dr. Lee admits that he removed the Employee Invention Assignment and

26  Confidentiality Agreement from his personnel file after he determined that it improperly

27  conflicted with his duties, obligations, and benefits arising under the Joint Venture Agreement,

28  but otherwise denies the allegations of paragraph 16 of the Complaint.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    17.    Dr. Lee admits that pursuant to his management rights under the Joint Venture

2    Agreement, Dr. Lee appointed himself as ViCHIP California's President, CEO, Secretary, CFO,

3    registered agent, and sole Director prior to his purported removal by action of ViCHIP Taiwan on

4    June 4, 2004.  Dr. Lee further admits that as part of management of ViCHIP Taiwan, Dr. Lee

5    properly had access and continued to have access to confidential information of ViCHIP

6    California and ViCHIP Taiwan before and well after the filing of the Complaint.  Except as

7    where expressly admitted, Dr. Lee denies the allegations of paragraph 17 of the Complaint.

8    18.    Dr. Lee admits that pursuant to his management rights under the Joint Venture

9    Agreement, Dr. Lee had access to information and files regarding the June 23, 2003 provisional

10   patent application and to draft utility patent applications on which Dr. Lee had been working

11   when Dr. Lee learned that on June 3, 2004 that Tim Hu of Solid State System Co., Ltd. had

12   requested patent files from ViCHIP California's patent attorney and had ordered the patent

13   attorney to cease work on the draft patent applications.  Dr. Lee admits that, fearing Tim Hu's

14   conversion of the patent files for the benefit of 3S, Dr. Lee took possession of the patent files.  Dr.

15   Lee admits that he did not return all copies of the provisional patent application prior to the filing

16   of the Complaint but denies that other ViCHIP California personnel did not already have copies

17   of the provisional patent application.  Except as expressly admitted, Dr. Lee denies the allegations

18   of paragraph 18 of the Complaint.

19   19.    Dr. Lee admits that as the President, CEO, Secretary, CFO, registered agent, and

20   sole Director of ViCHIP California and as the CEO and a director of ViCHIP Taiwan, Dr. Lee

21   had and has broad authority to manage the affairs of ViCHIP California, as provided for in the

22   Joint Venture Agreement.  Dr. Lee admits that he has regarded himself as a fiduciary of not only

23   ViCHIP California and ViCHIP Taiwan but also NeoParadigm Labs, Inc. based on the terms of

24   the Joint Venture Agreement.  Dr. Lee avers that the July 17, 2003 resolution of the Board of

25   Directors of ViCHIP Taiwan resolved "to remove . . . the restriction of Non-competition from the

26   date when [Dr. Lee] acted as the director or managerial personnel of each company," and

27   expressly noted that Dr. Lee "concurrently acts as a director of ViVoDa Communications, Inc.,

28   ViVoDa Communications. Ltd., and ViCHIP Corporation, U.S.A., which both engage in the same

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   business with our Company."   Except as expressly admitted and averred, Dr. Lee denies the
2   allegations of paragraph 19 of the Complaint.

3       20.   Dr. Lee admits that he has a fiduciary duty to maintain the confidentiality of
4   ViCHIP California business information, but otherwise denies the allegations in paragraph 20 of
5   the Complaint.

6       21.   Dr. Lee admits that prior to incorporating ViCHIP California pursuant to his
7   operational and  management rights under the Joint Venture Agreement, he served as Chairman
8   and Chief Executive Officer of NeoParadigm.  Dr. Lee further admits that pursuant to the Joint
9   Venture Agreement and the July 17, 2003 resolution of ViCHIP Taiwan's Board of Directors, Dr.
10  Lee was explicitly allowed to be involved with NeoParadigm, but otherwise denies the allegations
11  of paragraph 21 of the Complaint.

12      22.   Dr. Lee admits that NeoParadigm's website states that the Company develops and
13  sells multimedia communications solutions, but otherwise denies the allegations of paragraph 22
14  of the Complaint.

15      23.   Dr. Lee admits that he served as Chairman and CEO of NeoParadigm and
16  affiliated companies until June, 2003 and remained NeoParadigm's Chairman thereafter.  Dr. Lee
17  further admits that he served as the ViCHIP California's President, CEO, secretary, CFO,
18  Registered agent, and sole Director and as ViCHIP Taiwan's President during this time period
19  pursuant to the Joint Venture Agreement and the July 17, 2003 resolution of ViCHIP Taiwan's
20  Board ratifying Dr. Lee's involvement with NeoParadigm and affiliated companies, but otherwise
21  denies the allegations of paragraph 23 of the Complaint.

22      24.   Dr. Lee admits that following the closure of NeoParadigm's U.S. offices, Dr. Lee
23  stored NeoParadigm's files and two PCs on less than 10 sq. ft. of floor space at ViCHIP
24  California's San Jose offices.  Dr. Lee admits that NeoParadigm has not been charged for use of
25  this space.  Dr. Lee further avers that NeoParadigm provided to ViCHIP California hundreds of
26  thousands of dollars worth of CAD software, accounting software, and office supplies for which
27  NeoParadigm has never sought or received compensation from ViCHIP California.  Except as
28  admitted, Dr. Lee denies the allegations of paragraph 24 of the Complaint.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   25.   Dr. Lee admits that Tina Lu was hired by ViCHIP California in or around January,

2   2003 as a part-time consultant for ViCHIP California while she continued to work part-time for

3   an unknown third party.  Dr. Lee further admits that in or about April, 2003 Ms. Lu served as a

4   part-time employee for ViCHIP California and a part-time employee for NeoParadigm to perform

5   limited tasks following the closure of NeoParadigm's U.S. offices.  Dr. Lee admits that Ms. Lu

6   became a full-time employee for ViCHIP California on or about April 16, 2004, but otherwise

7   denies the allegations of paragraph 25 of the Complaint.

8   26.   Dr. Lee admits that on or about January 10, 2003, Dr. Lee executed a consulting

9   agreement on behalf of ViCHIP California and ViVoDa for services performed by Dr. Lee.  Dr.

10  Lee further admits that due to Board of Director member Hsi-Sheng Chen's failure to hire

11  technical people and on Hsi-Sheng Chen's own recommendation, Dr. Lee, on behalf of ViCHIP

12  California, executed a consulting agreement on or about June 9, 2003 and an engineering service

13  agreement on or about July 28, 2003.  These agreements were countersigned by Jimmy Yue on

14  behalf of NeoParadigm.  The agreements gave ViCHIP California access to sufficient resources

15  to meet performance milestones, but otherwise denies the allegations of paragraph 26 of the

16  Complaint.

17  27.   Dr. Lee denies the allegations of paragraph 27 of the Complaint.

18  28.   Dr. Lee admits that he executed an agreement on or about January 10, 2003

19  between ViCHIP California and NeoParadigm regarding the provision of services by him to

20  ViCHIP California, that ViCHIP California paid NeoParadigm approximately $57,000 for

21  services performed by Dr. Lee who was then employed by NeoParadigm and not on the payroll of

22  ViCHIP California, but otherwise denies the allegations in paragraph 28 of the Complaint.

23  29.   Dr. Lee admits that ViCHIP California and NeoParadigm agreed on or about July

24  28, 2003 that NeoParadigm would assign two engineers to work on a project for ViCHIP

25  California, who were to be compensated at a rate of $1,250 per man-week for work performed, as

26  requested by ViCHIP Taiwan Board of Director member Hsi-Sheng Chen, but otherwise denies

27  the allegations of paragraph 29 of the Complaint.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    30.    Dr. Lee avers that NeoParadigm engineers, in large measure, developed the

2    software, firmware, and drivers of ViCHIP's video codec FPGA board, contributing to the

3    successful verification and completion of the performance milestones. Dr. Lee lacks information

4    sufficient to admit or deny the allegations of paragraph 30 of the Complaint, because it was Hsi-

5    Sheng Chen who requested and supervised these consultants as well as another consultant

6    retained on or about June 9, 2003 and, on that basis, denies the allegations of paragraph 30 of the

7    Complaint.

8    31.    Dr. Lee admits that ViCHIP California paid approximately $118,000 to

9    NeoParadigm for services provided to ViCHIP California in connection with the consulting

10   agreements.

11   32.    Dr. Lee admits that the consulting agreements for services requested by Board of

12   Director member Hsi-Sheng Chen and the consulting agreement for which Dr. Lee provided

13   services did not include detailed descriptions of the work to be performed and actually performed,

14   and did not include reporting requirements, but otherwise denies the allegations of paragraph 32

15   of the Complaint.

16   33.    Dr. Lee denies the allegations of paragraph 33 of the Complaint.

17   34.    Dr. Lee admits that he attended the ISC West 2004 trade show for both ViCHIP

18   California and NeoParadigm and that the Board of Directors of ViCHIP Taiwan was generally

19   aware of this kind of joint marketing and cooperative sale opportunity with NeoParadigm which

20   could potentially earn additional revenue for both companies, but otherwise denies the allegations

21   of paragraph 34 of the Complaint.

22   35.    Dr. Lee admits that ViCHIP California paid certain expenses associated with his

23   attendance at the ISC West 2004 trade show for joint marketing and sales activities and that

24   NeoParadigm reimbursed ViCHIP California for expenses paid allegedly on its behalf, as

25   estimated by Tina Lu, in response to a request by 3S and Sesoda members of the Board of

26   Directors of ViCHIP Taiwan.  Dr. Lee lacks information sufficient to admit or deny allegations of

27   paragraph 35 regarding alleged payments by ViCHIP California and, on that basis, denies them.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1   Except as expressly admitted, Dr. Lee otherwise denies the allegations of paragraph 35 of the
2   Complaint.

3         36.    Dr. Lee denies the allegations of paragraph 36 of the Complaint.

4         37.    Dr. Lee admits that ViChip Taiwan was aware of ViCHIP California's payments
5   to NeoParadigm and of certain of his activities relating to ViVoDa Communications, but
6   otherwise denies the allegations of paragraph 37 of the Complaint.

7         38.    Dr. Lee admits that, fearing a theft of intellectual property by Solid State System
8   Co., Ltd. on June 3, 2004, Dr. Lee deleted certain information and/or files stored on ViCHIP
9   California's server. Except as expressly admitted, Dr. Lee denies the allegations of paragraph 38
10  of the Complaint.

11        39.    Dr. Lee admits that on June 4, 2004, Tim Hu, on behalf of ViCHIP Taiwan,
12  purported to terminate Dr. Lee from his position as sole Director of ViCHIP California in
13  violation of the Joint Venture Agreement and Taiwanese law requiring proper notice of Board of
14  Director meetings. Except as expressly admitted, Dr. Lee denies the allegations of paragraph 39
15  of the Complaint.

16        40.    Dr. Lee admits that he received a facsimile on June 4, 2004 from Tim Hu
17  purporting to allege that "[t]he Board decides that, starting immediately, you are removed from
18  the offices of President, Chief Executive Officer, Chief Financial Officer, and Secretary of
19  ViCHIP Corporation. At the same time, you are also removed from the duty of agent for service
20  of ViCHIP Corporation. In addition, you are no longer an employee of ViCHIP Corporation."
21  Dr. Lee further admits that in violation of the Joint Venture Agreement and Taiwanese corporate
22  law, he received no notice of this Board of Directors meeting and no documentation for this
23  alleged resolution or appointment of new positions for ViCHIP Taiwan, despite the fact that Dr.
24  Lee continued to serve as CEO and as a Board of Director member of ViCHIP Taiwan (the parent
25  company of ViCHIP California) on June 4, 2004. Except as expressly admitted, Dr. Lee denies
26  the allegations of paragraph 40 of the Complaint.

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

COUNTERCLAIMS OF TSU-CHANG LEE; TSU-CHANG
LEE'S AMENDED ANSWER TO COMPLAINT     - 27 -          (Case No. C-04-02914 PJH)

1   41.   Dr. Lee admits that he received a letter on or about June 4, 2004 which purported

2   to remove him from his positions with ViCHIP California, but otherwise denies the allegations in

3   paragraph 41 of the Complaint.

4   42.   Dr. Lee admits that Tina Lu showed him the letter purporting to remove him from

5   his positions with ViCHIP California and that Dr. Lee subsequently left ViCHIP California's

6   office with his briefcase which did not contain ViCHIP California's laptop computer, but

7   otherwise denies the allegations of paragraph 41 of the Complaint.

8   43.   Dr. Lee admits that he called Ms. Lu on or about June 4, 2004 to inform her that he

9   would be returning to ViCHIP California on Monday the following week, but otherwise denies

10  the allegations of paragraph 43 of the Complaint.

11  44.   Dr. Lee admits that he returned to ViCHIP California the laptop computer issued

12  to him by the Company and that he deleted certain system files from that laptop computer.

13  Except as where expressly admitted, Dr. Lee denies the allegations of paragraph 44 of the

14  Complaint.

15  45.   Dr. Lee lacks information sufficient to enable him to admit or deny the allegations

16  of paragraph 45 of the Complaint and, on that basis, denies them.

17  46.   Dr. Lee admits that he took possession of files relating to the provisional patent

18  application, including certain patent files from ViCHIP's legal counsel on June 3, 2004 after

19  being informed that a 3S representative had attempted to convert them for 3S's benefit, but denies

20  that ViCHIP personnel did not already have copies of the provisional patent application and

21  certain related files. Except as expressly admitted, Dr. Lee denies the allegations of paragraph 46.

22  47.   Dr. Lee admits that on or about June 21, 2004 he learned that on June 14, 2004,

23  ViCHIP Taiwan had purported to terminate Dr. Lee as its President in violation of the Joint

24  Venture Agreement and Taiwanese corporate law regarding proper notice of Board of Director

25  meetings and, and had purported to promote Dr. Lee to "Vice Chairman" of the Board of

26  Directors of ViCHIP Taiwan, but otherwise denies the allegations of paragraph 47 of the

27  Complaint.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    48.   Dr. Lee admits that attorney A. James Isbester requested in June of 2004 that he

2  deliver documents related to ViCHIP's provisional patent application. Dr. Lee denies that

3  ViCHIP did not already have a copy of the provisional patent application in its possession, but

4  otherwise denies the allegations of paragraph 48 of the Complaint.

5    49.   Dr. Lee admits that he stated in a letter on or about June 17, 2004 that he was the

6  Chief Executive Officer of ViCHIP Taiwan and that Mr. Isbester was not authorized to represent

7  ViCHIP Taiwan, but otherwise denies the allegation of paragraph 49 of the Complaint.

8    50.   Dr. Lee admits that he informed ViCHIP Taiwan on or about July 7, 2004 that he,

9  as the inventor, had filed utility patent applications, but otherwise denies the allegations of

10  paragraph 50 of the Complaint.

11    51.   Dr. Lee incorporates by reference his admissions and denials to paragraphs 1

12  through 50 of the Complaint, but otherwise denies the allegations of paragraph 51 of the

13  Complaint.

14    52.   Dr. Lee denies the allegations of paragraph 52 of the Complaint.

15    53.   Dr. Lee denies the allegations of paragraph 53 of the Complaint.

16    54.   Dr. Lee denies the allegations of paragraph 54 of the Complaint.

17    55.   Dr. Lee denies the allegations of paragraph 55 of the Complaint.

18    56.   Dr. Lee denies the allegations of paragraph 56 of the Complaint.

19    57.   Dr. Lee incorporates by reference his admissions and denials to paragraphs 1

20  through 56 of the Complaint, but otherwise denies the allegations of paragraph 57 of the

21  Complaint.

22    58.   Dr. Lee admits that he regarded himself as a fiduciary of both ViCHIP California

23  and NeoParadigm. Dr. Lee had authority from the Board of Directors of ViCHIP Taiwan and

24  from the Joint Venture Agreement itself to be concurrently involved in both companies, and at all

25  times remained a joint venturer who enjoyed the benefits and obligations guaranteed by the Joint

26  Venture Agreement. Except as expressly admitted, Dr. Lee denies the allegations of paragraph 58

27  of the Complaint.

28    59.   Dr. Lee denies the allegations of paragraph 59 of the Complaint.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    60.    Dr. Lee denies the allegations of paragraph 60 of the Complaint.

2    61.    Dr. Lee denies the allegations of paragraph 61 of the Complaint.

3    62.    Dr. Lee incorporates by reference his admissions and denials to paragraphs 1

4    through 61 of the Complaint, but otherwise denies the allegations of paragraph 62 of the

5    Complaint.

6    63.    Dr. Lee admits that he had access and a key to certain confidential ViCHIP

7    California property and business information in his various capacities and pursuant to the Joint

8    Venture Agreement, but otherwise denies the allegations of paragraph 63 of the Complaint.

9    64.    Dr. Lee denies the allegations of paragraph 64 of the Complaint.

10    65.    Dr. Lee admits that ViCHIP California, aside from providing complete access of

11    its computer servers and networks to 3S and allowing confidential core technology to be

12    demonstrated and presented to 3S's business partners and customers without a non-disclosure

13    agreement signed by 3S and 3S's partners/customers, attempted to take certain measures to

14    prevent the unauthorized disclosure and use of certain of its confidential and/or proprietary

15    information, but otherwise denies the allegations of paragraph 65 of the Complaint.

16    66.    Dr. Lee admits that he deleted certain information and/or files from the laptop

17    computer issued to him by ViCHIP California but denies that such information was not stored

18    elsewhere.  Dr. Lee admits that he removed the Employee Invention Assignment and

19    Confidentiality Agreement from his personnel file which he signed in late May, 2003 by mistake,

20    without legal advice, and for which he received no consideration by ViCHIP Taiwan after he

21    determined that it did comport with his obligations and benefits arising under the Joint Venture

22    Agreement and his role as a joint venturer.  Dr. Lee further admits that, fearing their conversion

23    by 3S on June 3, 2004, Dr. Lee took possession of certain documents relating to the recited

24    provisional application from former counsel.  Dr. Lee admits that he filed two utility patent

25    applications that claimed priority to the provisional patent application on June 14, 2004 to meet

26    patent filing deadlines and to preserve intellectual property subsisting in that provisional patent

27    application.   Except as expressly admitted, Dr. Lee denies the allegations of paragraph 66 of the

28    Complaint.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    67.    Dr. Lee denies the allegations of paragraph 67 of the Complaint.

2    68.    Dr. Lee denies the allegations of paragraph 68 of the Complaint.

3    69.    Dr. Lee incorporates by reference his admissions and denials to paragraphs 1

4    through 68 of the Complaint, but otherwise denies the allegations of paragraph 69 of the

5    Complaint.

6    70.    Dr. Lee admits that, fearing conversion of relevant files and intellectual property

7    by 3S personnel who have access to the computer servers and networks linked to ViCHIP

8    Taiwan, Dr. Lee accessed ViCHIP California's server and deleted certain files on or about June 3,

9    2004. Dr. Lee denies that duplicate copies of such files did not exist elsewhere. Except as

10   expressly admitted, Dr. Lee denies the allegations of paragraph 70 of the Complaint.

11   71.    Dr. Lee lacks information sufficient to enable him to admit or deny the allegations

12   of paragraph 71 of the Complaint and, on that basis, denies them.

13   72.    Dr. Lee denies the allegations of paragraph 72 of the Complaint.

14   73.    Dr. Lee denies the allegations of paragraph 73 of the Complaint.

15   74.    Dr. Lee incorporates by reference his admissions and denials to paragraphs 1

16   through 73 of the Complaint, but otherwise denies the allegations of paragraph 74 of the

17   Complaint.

18   75.    Dr. Lee admits that, fearing conversion of certain files and intellectual property by

19   3S personnel who had access to ViCHIP's server and representatives of 3S who sought to seize

20   all patent files from patent counsel, Dr. Lee took possession of files relating to the provisional

21   patent application.  Dr. Lee denies that duplicate copies of such provisional patent application did

22   not exist in ViCHIP's files.  Except as specifically admitted, Dr. Lee denies the allegations of

23   paragraph 75 of the Complaint.

24   76.    Dr. Lee admits that attorney A. James Isbester asked him in June of 2004 to

25   deliver to him documents relating to the provisional patent application, but otherwise denies the

26   allegations of paragraph 76 of the Complaint.

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

77.     Dr. Lee admits that he stated in a letter on or about June 17, 2004 that he was the Chief Executive Officer of ViCHIP Taiwan and that Mr. Isbester was not authorized to represent ViCHIP Taiwan, but otherwise denies the allegations of paragraph 77 of the Complaint.

78.     Dr. Lee denies that he has not returned a copy of the provisional patent application to ViCHIP or that ViCHIP did not already have one or more copies in its possession.

79.     Dr. admits that he filed as the inventor two U.S. utility patent applications on June 14, 2004 under the Patent Cooperation Treaty claiming priority to the provisional patent application and in July, 2004 a related patent application in Taiwan as its inventor.  Dr. Lee is informed and believes that ViCHIP California filed its own utility application on or about June 23, 2004 claiming priority to the provisional patent application, but otherwise denies the allegations of paragraph 79 of the Complaint.

80.     Dr. Lee denies the allegations of paragraph 80 of the Complaint.

## AFFIRMATIVE DEFENSES

81.     As a defense to the Complaint's contract action, Dr. Lee asserts:

a) absence of breach based on Dr. Lee's status as a non-employee of ViCHIP California at the time he disclosed his prior invention and Dr. Lee's status as joint venturer, Dr. Lee's entitlement to have allegedly confidential documents of ViCHIP California due to Dr. Lee's continued role as a director and Vice Chairman of ViCHIP Taiwan; (b) Dr. Lee's mistake in signing the Employee Confidentiality Agreement and Assignment form, (c) lack of consideration for Dr. Lee's execution of the two alleged contracts at issue and ViCHIP California's unjust enrichment by retention of Dr. Lee's intellectual property, (d) failure of consideration occasioned by 3S's and Sesoda's breach of the Joint Venture Agreement, (e) excuse and discharge of any contract liability occasioned by 3S's and Sesoda's breach of the Joint Venture Agreement's terms providing, among other things, that Dr. Lee had management authority for the joint venture (including for the wholly owned U.S. subsidiary created by Dr. Lee for that purpose) and the right to pursue performance milestones, (f) business justification based on Sesoda's, 3S's, and ViCHIP's attempted seizure of ViCHIP California and 3S's, Sesoda's, ViCHIP's and ViCHIP California's misappropriation of Dr. Lee's intellectual property, (g) the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    absence of damage to ViCHIP California, and (h) ViCHIP California's failure to mitigate

2    damages.

3        82.    As a defense to the Complaint's breach of fiduciary duty allegations, Dr. Lee

4    asserts:

5            (a) absence of breach and (b) waiver based on the fact that the Joint Venture

6    Agreement and applicable resolutions of the Board of Directors of ViCHIP Taiwan specifically

7    contemplated and provided that Dr. Lee could concurrently be involved in ViCHIP California and

8    NeoParadigm, that the Board of Directors of ViCHIP Taiwan, including Hsi-Sheng Chen, was

9    aware of and approved joint marketing and sales activities with NeoParadigm, the requirements

10   for engineering outsourcing, and leveraging the know-how and engineering resources of

11   NeoParadigm to support ViCHIP California's projects to meet the performance milestones, and

12   (c) absence of a legal duty, in that Dr. Lee had rights and benefits as a party to the Joint Venture

13   Agreement that pre-empted his other duties and that the joint venture did not transform Dr. Lee

14   into an "employee" or contemplate that Dr. Lee would relinquish his intellectual property

15   invented prior to the joint venture, and (c) absence of harm to ViCHIP California from the alleged

16   breach.

17       83.    As a defense to the Complaint's trade secret misappropriation allegations, Dr. Lee

18   asserts:

19           (a)  that he did not misappropriate trade secrets of ViCHIP California, (b) that Dr.

20   Lee has authority under the Joint Venture Agreement and resolutions of the Board to have access

21   to ViCHIP California and ViCHIP Taiwan information and, in any event, continued to have that

22   right well after the filing of the Complaint as evidenced by actions of the Board of Directors of

23   ViCHIP Taiwan promoting Dr. Lee to Vice Chairman and providing him with access to

24   confidential ViCHIP California information in October, 2004, (c) lack of secrecy, in that ViCHIP

25   California did not maintain in confidence information it claims to have been misappropriated by

26   virtue of the fact, among other things, that it permitted 3S staff and 3S's business partner Toshiba

27   to have access to such information without an non-disclosure agreement in place, that any alleged

28   trade secrets embodied in patent applications were terminated by ViCHIP California's own filing

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY

McDermott Will & Emery LLP
Attorneys At Law
Silicon Valley

1   of a utility patent application which required, under 35 U.S.C. §122, that the U.S. utility

2   application be published on or about December 23, 2004, or 18 months after the June 23, 2003

3   filing date of the provisional application, and that the provisional application is already in the

4   public domain, and (d) that Dr. Lee independently developed and owns the alleged trade secrets

5   ViCHIP California claims to have been misappropriated.

6       84.     As a defense to the Computer Fraud and Abuse Act claim, Dr. Lee asserts:

7       (a) absence of damage to ViCHIP California in that any documents deleted were

8   backed up elsewhere or duplicate copies exist thereof, (b) that Dr. Lee had authority to have

9   access to such documents pursuant to the Joint Venture Agreement and his duties and obligations

10  as an officer and Director of ViCHIP California and ViCHIP Taiwan, (c) business justification, in

11  that Dr. Lee had a right to safeguard such files from 3S personnel who sought to convert Dr.

12  Lee's and ViCHIP California's information for its own purposes in violation of the Joint Venture

13  Agreement, and (d) that any such damage was caused by ViCHIP California's failure to mitigate.

14      85.     As a defense to the conversion claim, Dr. Lee asserts:

15      (a) that Dr. Lee rightfully had access to the documents and patent files arising from

16  Dr. Lee's duties and obligations pursuant to the Joint Venture Agreement and his authority as

17  CEO of both ViCHIP California and ViCHIP Taiwan and his continuing role as a director of

18  ViCHIP Taiwan, (b) that he did not convert ViCHIP California's property but rather filed patent

19  applications on an invention that he himself independently invented prior to the formation of the

20  joint venture, (c) that he has already returned copies of all documents in his possession to ViCHIP

21  California's counsel, (d) that ViCHIP California concurrently filed its own patent applications

22  which have resulted or will result in their publication or public access within 18 months, (e) that

23  ViCHIP California's conversion claim is duplicative of its misappropriation of trade secret claim,

24  and (f) that there is no damage to ViCHIP California.

25

26

27

28

1    Dated: May 19, 2005                    McDERMOTT WILL & EMERY LLP
                                            DAVID L. LARSON
2                                           ROBERT J. BLANCH

3

4                                           By: /s/ Robert J. Blanch
                                               Attorneys for Defendant and
5                                              Counterclaimant
                                               TSU-CHANG LEE
6

7

8

9

10   MPK 84407-5.072949.0011

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SILICON VALLEY