1   ROBERT S. SHWARTS (STATE BAR NO. 196803)
2   SEAN LINCOLN (STATE BAR NO. 136387)
    LESLEY E. KOTHE (STATE BAR NO. 209512)
3   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
4   405 Howard Street
    San Francisco, CA  94105
5   Telephone:     415-773-5700
    Facsimile:     415-773-5759
6
7   Attorneys for Plaintiff
    VICHIP CORPORATION
8
                    UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

12   VICHIP CORPORATION,                    Case No.  C-04-02914 PJH
13           Plaintiff,
14       v.
15   TSU-CHANG LEE,                         VICHIP'S MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN SUPPORT OF ITS
16                                          MOTION FOR SUMMARY JUDGMENT
             Defendant and
17           Counterclaimant.
18
19   TSU-CHANG LEE,                         Date:        April 26, 2006
                                            Time:        9:00 a.m.
20           Counterclaimant,              Courtroom:   3, 17th Floor
                                            Judge:       Phyllis J. Hamilton
21       v.
22   VICHIP CORPORATION, and VICHIP
23   CORPORATION, LTD.,
24           Counterclaim Defendants.
25
26
27
28

1

## TABLE OF CONTENTS

2

Page

3   I.   INTRODUCTION ................................................................................................. 1

4   II.  RELEVANT PROCEDURAL HISTORY............................................................ 2

5   III. STATEMENT OF UNDISPUTED FACTS ......................................................... 3

6        A.   The Formation of the Joint Venture and the Creation of ViCHIP .......... 3

         B.   Dr. Lee Becomes a ViCHIP Consultant.................................................. 4

7        C.   ViCHIP Engineers Begin Working on the Viper Project........................ 4

8        D.   Dr. Lee Executes the Employee Invention Assignment and Confidentiality

9             Agreement ............................................................................................... 5

         E.   Dr. Lee Assigns His Rights to ViCHIP's Provisional Patent Application to

10            ViCHIP..................................................................................................... 6

11       F.   ViCHIP Taiwan's Board Decides that Dr. Lee Should Not Have Exclusive

              Control Over ViCHIP .............................................................................. 8

12       G.   After Dr. Lee is Asked to Step Down from his Positions at ViCHIP, Dr.

13            Lee Unilaterally Decides to Partition ViCHIP's Patent.......................... 9

14       H.   The Board of Directors of ViCHIP Taiwan Removed Dr. Lee From His

              Positions at ViCHIP and Terminated His Employment........................... 9

15       I.   The Day Before His Termination, Dr. Lee Hijacked ViCHIP's Intellectual

16            Property and Deleted ViCHIP's Computer Files................................... 10

17       J.   After Taking His Employee Invention Assignment and Confidentiality

              Agreement and the Patent Assignment Form, Dr. Lee Destroyed Both

18            Agreements in Which He Assigned to ViCHIP His Rights to Inventions

              and Intellectual Property ...................................................................... 11

19       K.   After Stealing ViCHIP's Then-Confidential Provisional Patent

              Application, Dr. Lee Used it to File Two Utility Patent Applications In His

20            Own Name ............................................................................................. 13

21       L.   Dr. Lee Has Jeopardized ViCHIP's Ability to Protect Its Intellectual

              Property and to Prosecute Its Patents.................................................. 13

22   IV.  SUMMARY JUDGMENT LEGAL STANDARD............................................ 14

23   V.   VICHIP IS ENTITLED TO SUMMARY JUDGMENT OF DR. LEE'S

24        COUNTERCLAIMS.......................................................................................... 15

         A.   Dr. Lee Cannot Sustain His Misappropriation Claim .......................... 15

25       B.   Dr. Lee Cannot Support His Unjust Enrichment Counterclaim............ 16

26       C.   As a Matter of Law, Dr. Lee Cannot Establish His Claims for Intentional

              Interference With Contractual Relations and Prospective Economic

27            Advantage ............................................................................................. 17

28

**TABLE OF CONTENTS**
(continued)

Page

D.  The Court Should Declare ViCHIP's Ownership Rights in the Pending
Patent Applications; Inventorship Issues Should Be Decided by the PTO........... 18

VI.  VICHIP IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF ITS
CLAIMS AGAINST DR. LEE ....................................................................................... 19

A.  No Genuine Issue of Material Fact Exists as to ViCHIP's Claim that Dr.
Lee Breached His Employee Invention Assignment and Confidentiality
Agreement ........................................................................................................ 20

B.  The Undisputed Facts Demonstrate Dr. Lee's Violation of the Computer
Fraud and Abuse Act........................................................................................ 22

C.  No Genuine Issue of Material Fact Exists as to ViCHIP's Claim that Dr.
Lee Breached His Fiduciary Duty..................................................................... 24

D.  No Genuine Issue of Material Fact Exists as to ViCHIP's Conversion
Claim................................................................................................................. 25

VII.  CONCLUSION ............................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### CASES

4

*Abbate v. County of Santa Clara,*
5
    91 Cal. App. 4th 1231 (2001) ........................................................................................... 18

6

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ......................................................................................................... 14

7

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
8
    7 Cal. 4th 503 (1991) ....................................................................................................... 17

9

*Balint v. Carson City,*
    180 F.3d 1047  (9th Cir. 1999) ........................................................................................ 14

10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .................................................................................................... 14, 15
11

*Concrete Washout Systems, Inc. v. Minegar Environmental Systems, Inc.,*
12
    2005 WL 1683930 (E.D. Cal. July 12, 2005) ................................................................. 19

13

*Display Research Laboratories, Inc. v. Telegen Corp.,*
    133 F.Supp.2d 1170 (N.D. Cal. 2001) ....................................................................... 18, 19
14

*Imi-Tech Corp. v. Gagliani,*
15
    691 F. Supp. 214 (S.D. Cal. 1986) ................................................................................. 20

16

*In re DoubleClick Inc. Privacy Litig.,*
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................................ 24
17

*International Airport Centers, L.L.C. v. Citrin,*
18
    2006 WL 548995 (7th Cir. (Ill.), March 8, 2006) .......................................................... 23

19

*Kremen v. Online Classifieds, Inc.,*
    337 F.3d 1024 (9th Cir. 2002) ........................................................................................ 25
20

*Latona v. Aetna U.S. Healthcare Inc.,*
21
    82 F. Supp. 2d 1089 (C.D. Cal. 1999) ........................................................................... 20

22

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc., ,*
    271 F.3d 825 (9th Cir. 2001) .......................................................................................... 17
23

*National Rural Telecommunications Cooperative v. DirectTV, Inc.,*
24
    319 F. Supp 2d 1059 (C.D. Cal. 2003) .......................................................................... 17

25

*Randas v. YMCA of Metropolitan Los Angeles,*
    17 Cal. App. 4th 158 (1993) ........................................................................................... 20
26

*Sebastian Int'l, Inc. v. Russolillo,*
27
    186 F. Supp. 2d 1055 (C.D. Cal. 2001) ......................................................................... 16

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990)........................................................................... 15

*Shanghai Automation Instrument Co., Ltd. v. Kuei*,
  194 F. Supp. 2d 995 (N.D. Cal. 2001) .......................................................... 20

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*,
  119 F. Supp. 2d 1121 (W.D. Wash. 2000) ..................................................... 23

*Smolen v. Deloitte, Haskins & Sells*,
  921 F.2d 959 (9th Cir. 1990)........................................................................... 14

*Sonista, Inc. v. Hsieh*,
  2005 WL 3113083 (N.D. Cal. Nov. 21, 2005).............................................. 24

*Travelers Casualty & Surety Co. of Amer. v. Amoroso*,
  2004 WL 1918890 (N.D. Cal. Aug. 24, 2004)................................................ 17

*United States v. City of Tacoma*,
  332 F.3d 574 (9th Cir. 2003)........................................................................... 14

*United States v. Galindo*,
  871 F.2d 99 (9th Cir. 1989)............................................................................. 22

*United States v. Middleton*,
  231 F.3d 1207 (9th Cir. 2000)......................................................................... 24

*Westways World Travel v. AMR Corp.*,
  182 F. Supp. 2d 952 (C.D. Cal. 2001) ........................................................... 16

**STATUTES**

18 U.S.C.
  Section 1030(a)(5)........................................................................................... 22
  Section 1030(a)(5)(A)-(B) .............................................................................. 22
  Section 1030(a)(5)(B)(i) ................................................................................. 22
  Section 1030(e)(2)(B)...................................................................................... 22
  Section 1030(e)(8).................................................................................... 22, 24
  Section 1030(e)(11).......................................................................................... 24
  Section 1030(g)................................................................................................ 24

37 CFR 1.53(c)........................................................................................................ 6

California Code of Civil Procedure
  Section 1060................................................................................................... 18

**RULES**

Federal Rule of Civil Procedure
  Rule 56 ........................................................................................................... 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Rule 56(e)........................................................................................................................... 14

VICHIP's MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT -  CASE NO. C-04-02914 PJH

1

## I.      **INTRODUCTION**

2          Until his termination on June 4, 2004, Dr. Tsu-Chang Lee was ViCHIP's President, CEO

3   and sole director.  He is also one of five ViCHIP employees who invented the technology

4   embedded in the Viper Chip, ViCHIP's innovative MPEG4 Codec integrated circuit.  In 2003,

5   ViCHIP started the process of obtaining patent protection for its Viper Chip, and on June 23,

6   2003, ViCHIP filed a provisional patent application.  All five inventors, including Dr. Lee,

7   irrevocably assigned to ViCHIP their rights to the inventions claimed in the provisional patent

8   application.

9          On June 3, 2004, less than a month before ViCHIP had to file a utility patent application

10  for its Viper Chip, Dr. Lee took ViCHIP's patent files and deleted proprietary information related

11  to the Viper Chip from ViCHIP's computer system.  The next day, ViCHIP terminated Dr. Lee

12  from his positions as the company's President, CEO and sole director.  In spite of his contractual

13  obligations to return to ViCHIP the patent files as well as the other proprietary information that

14  he removed (or deleted), Dr. Lee took the provisional patent application, which he had

15  irrevocably assigned to ViCHIP, and used it to file utility patent applications in his own name.

16         The most astonishing aspect of these facts is that they are undisputed.  Dr. Lee has

17  admitted that he signed *three* different agreements in which he assigned to ViCHIP his rights to

18  the technology embedded in the Viper Chip.  He has admitted to taking ViCHIP's patent files and

19  deleting files from ViCHIP's computer system on the eve of his termination.  And he has

20  admitted to using ViCHIP's provisional patent application to file utility patents applications in his

21  own name.  Finally, in what appears to be a *coup de grace* to his former employer, Dr. Lee has

22  admitted to taking and then ripping up the only executed copy of his Employee Invention

23  Assignment and Confidentiality Agreement and the patent assignment form, which was signed by

24  Dr. Lee and the other four inventors.

25         Dr. Lee's unabashed (and uncontested) taking and use of ViCHIP's intellectual property

26  gave rise to ViCHIP's claims against Dr. Lee.  Given Dr. Lee's admitted conduct, ViCHIP can

27  establish with undisputed facts each element of the following causes of action: breach of contract,

28

VICHIP's MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - CASE NO. C-04-02914 PJH

1   breach of fiduciary duty, violation of the Computer Fraud and Abuse Act and conversion.[1]

2   Because there are no genuine issues of material fact as to Dr. Lee's liability, ViCHIP is entitled to

3   summary adjudication of these claims.

4         Dr. Lee's four counterclaims against ViCHIP are all that remain after Dr. Lee's

5   unsuccessful attempt to bring two Taiwanese companies, Solid State Systems Corporation, Ltd.

6   and Sesoda Corporation, Ltd., into this litigation.  The counterclaims against ViCHIP arise from

7   Dr. Lee's belief that he, not ViCHIP, owns the rights to the technology contained in the

8   provisional patent application.  Because Dr. Lee irrevocably assigned to ViCHIP the rights to the

9   intellectual property that he now purports to own, Dr. Lee cannot prevail on his counterclaims as

10  a matter of law.  ViCHIP is also entitled to summary judgment of Dr. Lee's counterclaims.

11  **II.   <u>RELEVANT PROCEDURAL HISTORY</u>**

12        ViCHIP filed a complaint against Dr. Lee on July 19, 2004.  *See* ViCHIP Corporation's

13  Complaint.  Dr. Lee answered on September 23, 2004.  *See* Answer to Complaint.

14        On November 10, 2004, the Court granted ViCHIP's *ex parte* application for a temporary

15  restraining order and expedited discovery.  Dr. Lee was ordered to refrain from using the

16  confidential information that he removed from ViCHIP, including ViCHIP's Provisional Patent

17  Application, and to return to ViCHIP the original copy of the Employee Invention Assignment

18  and Confidentiality Agreement and all other portions of his personnel file that he removed.  *See*

19  November 10, 2004 Order.

20        On December 23, 2004, ViCHIP's Provisional Patent Application (which was a trade

21  secret when the Court issued the temporary restraining order) was laid open by operation of

22  patent law.  On March 2, 2005, the Court denied ViCHIP's motion for a preliminary injunction

23  because, by that time, ViCHIP's provisional patent application had been laid open under PTO

24  rules.  *See* March 2, 2005 Order.

25        On February 18, 2005**,** Dr. Lee filed a Motion for Leave to Amend.  Dr. Lee and ViVoDa

26  Communications, Inc. ("ViVoDa") sought to file counterclaims against ViCHIP and ViCHIP

27  

28  ───────────────
    [1] ViCHIP is not moving for summary adjudication of its trade secrets misappropriation claim.

Taiwan, and cross-claims against 3S, Sesoda and Hsi-Sheng Chen.  In its April 18, 2005 Order,

the Court denied Dr. Lee's and ViVoDa's motion to file cross-claims against 3S and Sesoda[2], but

allowed Dr. Lee (but not ViVoDa) to file counterclaims against ViCHIP and ViCHIP Taiwan.

The Court also permitted Dr. Lee to amend his answer.  *See* April 18, 2005 Order.  The Court also

denied Dr. Lee's motion to bring cross-claims against Hsi-Sheng Chen.  *See* May 9, 2005 Order.

On May 19, 2005, Dr. Lee filed his Counterclaims and Amended Answer.  *See*

Counterclaims and Amended Answer of Tsu-Chang Lee.  Although he was not permitted to bring

cross-claims against 3S and Sesoda in this litigation[3], Dr. Lee alleged counterclaims for

declaratory relief, misappropriation, unjust enrichment and contractual interference against

ViCHIP and ViCHIP Taiwan.  *Id.*  ViCHIP filed its answer to Dr. Lee's counterclaims on June 8,

2005.  *See* ViCHIP Corporation's Answer to Counterclaims of Tsu-Chang Lee.  ViCHIP Taiwan,

however, has not appeared in this case because it was never properly served with Dr. Lee's

counterclaims.

## III.  STATEMENT OF UNDISPUTED FACTS

### A.  The Formation of the Joint Venture and the Creation of ViCHIP

On November 20, 2002, Dr. Lee, ViVoDa Communications, Inc. ("ViVoDa"), and two

Taiwanese corporations, Solid State Systems Corporation., Ltd. ("3S") and Sesoda Corporation,

Ltd. ("Sesoda"), executed a Joint Venture Agreement.  Declaration of Lesley Kothe ("Kothe

Decl."), Ex. B (JVA).  Pursuant to this agreement, the parties agreed to establish a joint venture

company in Taiwan "for the purpose of researching, developing and outsourcing the production

and manufacture of MPEG4 Codec IC related products."  *Id.* at ¶ 1.  The joint venturers created

---

[2] Dr. Lee, and his company ViVoDa, have brought claims against 3S and Sesoda in an arbitration proceeding in Taiwan.  As the Court may recall, Dr. Lee moved to stay this case until the arbitration concluded.  *See* Motion for Stay of Proceedings.  Dr. Lee withdrew this motion, which had been fully briefed, before the hearing.

[3] Dr. Lee unsuccessfully sought leave to amend to file the following cross-claims: declaration of ownership (against 3S and Sesoda); misappropriation (against 3S); unjust enrichment (against 3S); breach of contract (against 3S and Sesoda); breach of the covenant of good faith and fair dealing (against 3S and Sesoda); breach of fiduciary duty (against 3S and Sesoda); intentional interference with contractual relations and prospective economic advantage (against Hsi-Sheng Chen) and breach of confidence (against Hsi-Sheng Chen).

1  ViCHIP Corporation Ltd. ("ViCHIP Taiwan") to implement the objectives of the joint venture.

2  Kothe Decl., Ex. A (Lee Decl.), ¶ 5.  Dr. Lee became the "first" general manager of ViCHIP

3  Taiwan as well as a member of its board of directors.  Kothe Decl., Ex. B (JVA), ¶ 7.1.  In

4  December 2002, ViCHIP Taiwan's board of directors decided to incorporate a wholly-owned

5  subsidiary in California so that it could hire engineers in the United States.  Kothe Decl., Ex. A

6  (Lee Decl.), ¶ 9.  ViCHIP Corporation ("ViCHIP"), a California corporation, was incorporated in

7  December 2002 and Dr. Lee became its President, CEO and sole director.  *Id.*

8  **B.   Dr. Lee Becomes a ViCHIP Consultant**

9  In addition to serving as an officer and director of both ViCHIP and ViCHIP Taiwan,

10  Dr. Lee was also an officer and the Chairman of the board of ViVoDa.  Kothe Decl., Ex. G (Lee

11  Amended Answer), ¶¶ 21, 23.  On January 10, 2003, Dr. Lee, acting as the CEO of ViCHIP and

12  as the President of ViVoDa, executed a consulting agreement whereby Dr. Lee, a ViVoDa

13  employee, became a ViCHIP consultant.  Kothe Decl., Ex. C (Lee Consulting Agreement).

14  Pursuant to this consulting agreement, ViCHIP agreed to pay ViVoDa for Dr. Lee's performance

15  of the following services: "new video codec chip technology development" and "general business

16  management."  *Id*. at ¶ 2.  By signing the consulting agreement, Dr. Lee assigned to ViCHIP his

17  and ViVoDa's right to all Work Product developed at ViCHIP:

18
19  > Subject to full payment of the consulting fees due hereunder,
   > Consultant hereby assigns to Client its entire right, title and interest
   > in the Work Product including all patents, copy rights, trade secrets
   > and other proprietary rights in or based on the Work Product.
20

21  Kothe Decl., Ex. C (Consulting Agreement), ¶ 8.

22  **C.   ViCHIP Engineers Begin Working on the Viper Project**

23  After ViCHIP was incorporated, Dr. Lee began assembling an engineering team that

24  would be responsible for developing the MPEG4 Codec IC and related products contemplated by

25  the joint venture.  Dr. Lee gave this project a code name: Viper.  Kothe Decl., Ex. D (H.S. Chen

26  1/26/05 Decl.), ¶ 2; Ex. E (W.L. Chen 1/26/05 Decl.), ¶ 2.  In January 2003, ViCHIP hired

27

28

VICHIP's MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT -  CASE NO. C-04-02914 PJH

1   Dr. Wen-Lung Chen, Dr. Hsi-Sheng Chen, Li-Herng Yao and Yusong Huang[4] to work on the

2   Viper project.

3          In addition to giving its MPEG4 Codec development project a code name, ViCHIP has

4   numerous security measures in place to protect and prevent the unauthorized disclosure and use

5   of its confidential and proprietary information and trade secrets.  Kothe Decl., Ex. G (Lee

6   Amended Answer), ¶¶ 11, 65; Ex. F (Lu Decl.), ¶ 2.  ViCHIP required each employee, as a

7   condition of his employment, to sign an Employee Invention Assignment and Confidentiality

8   Agreement.  Kothe Decl., Ex. F (Lu Decl.), ¶ 2, Ex. A; Ex. T (Employee Agreements).  Dr. Lee,

9   as the CEO of ViCHIP, countersigned each employee's agreement on behalf of ViCHIP.  Kothe

10  Decl., Ex. T (Employee Agreements).  By signing this agreement, each engineer agreed, among

11  other things, to keep his work on the Viper Project confidential, and to assign to ViCHIP the

12  exclusive right to any invention created during his employment at ViCHIP.  *Id.*

13          **D.      Dr. Lee Executes the Employee Invention Assignment and Confidentiality**

14          **Agreement**

15          In or around April 2003, Dr. Lee became a ViCHIP employee and, like all ViCHIP

16  employees, executed an Employee Invention Assignment and Confidentiality Agreement.  Kothe

17  Decl., Ex. I (Lee 1/11/05 Depo), 11:24-12:13.  By signing this agreement, Dr. Lee assigned all

18  inventions to ViCHIP:

19                  I agree that all inventions that (i) are developed using equipment
                    supplies, facilities, or trade secrets of the Company; (ii) result from
20                  work performed by me for the Company; or (iii) relate to the
                    Company's business or current or anticipated research  and
21                  development, will be the sole and exclusive property of the
                    Company and are hereby *irrevocably assigned by me to the*
22                  *Company.*

23  Kothe Decl., Ex. H (Employee Agreement), ¶ 3.

24          Dr. Lee also irrevocably assigned his other rights to ViCHIP:

25                  In addition the foregoing assignment of Inventions to the Company,
                    I hereby irrevocably transfer and assign to the Company: (i) all
26                  worldwide patents, patent applications, copyrights, mask works,

27  _____

28  [4] Yosong Huang was hired as a consultant in January, 2003.  Kothe Decl, Ex. X (Huang
    Agreement).  He became an employee in June, 2003. Kothe Decl., Ex. T (Employee Agreements).

1

2

> trade secrets, and other intellectual property rights in any Invention;
> and (ii) any and all "Moral Rights" (as defined below) that I may
> have in or with respect to any Invention.

3    *Id.* at ¶ 5.

4        In addition to his assigning his rights to ViCHIP, Dr. Lee also agreed to maintain the

5    confidentiality of ViCHIP's proprietary information, during his employment and after his

6    termination:

7

> At all times, both during my employment and after its termination, I
> will keep and hold all such Proprietary Information without the

8

> prior written consent of the Company, except as may be necessary
> to perform my duties as an employee of the Company for the

9

> benefit of the Company.  Upon termination of my employment with
> the Company, I will promptly deliver to the Company all

10

> documents and materials of any nature pertaining to my work with
> the Company.  I will not take with me any documents or materials

11

> he or copies thereof containing any Proprietary Information.

12   *Id.* at ¶ 8.

13       **E.**    **<u>Dr. Lee Assigns His Rights to ViCHIP's Provisional Patent Application to ViCHIP</u>**

14

15       On June 23, 2003, ViCHIP filed with the PTO a Provisional Patent Application[5] for

16   Method and Apparatus For Adaptive Multiple-Dimensional Signal Sequences

17   Encoding/Decoding.  ("ViCHIP's Provisional Patent Application").  Kothe Decl., Ex. J (Daybell

18   Decl.), at Ex. A; Ex. K (Jaffer Decl.), ¶ 2.  The invention claimed in the Provisional Patent

19   Application is the core video codec technology on which ViCHIP's MPEG4 Codec IC – the

20   Viper chip – is based.  Kothe Decl., Ex. E (W.L. Chen 1/26/05 Decl.), ¶ 5.  Pursuant to Dr. Lee's

21   instructions, the Provisional Patent Application lists the following engineers as inventors: Tsu-

22   Chang Lee, Hsi-Sheng Chen, Wen-Lung Chen, Li-Herng Yao and Yusong Huang.  Kothe Decl.,

23

24   [5] Provisional applications provide the means to establish an early effective filing date in a patent

25   application and permit the term "Patent Pending" to be applied in connection with the invention.
     The filing date of a provisional application is the date on which a written description of the
     invention, and drawings if necessary, are received in the PTO.  The applicant has up to 12 months

26   to file a non-provisional application for patent because a provisional application will become
     abandoned by operation of law twelve months from its filing date.  The claimed subject matter in

27   the later filed non-provisional application is entitled to the benefit of the filing date of the
     provisional application if it has support in the provisional application.  *See* 37 CFR 1.53(c).

28

1   Ex. J (Daybell Decl.), at Ex. A.  Furthermore, before filing the Provisional Patent Application,

2   Dr. Lee sent the engineering team an email congratulating them on their hard work and

3   contributions:

4        Hi,

5        The patent draft is ready, and you guys are the inventors (do you
6        know that?)

7        Anyhow, this is a pretty big patent.  You all made contributions to
        certain portions of the system.  This patent would be very important
8        for the company and we should do it right before we file it.

9        Let's have an inventor patent review meeting at 2:00pm this
        afternoon.

10       TC

11   Kothe Decl., Ex. M (Lee 6/13/03 Email).

12       In connection with the Provisional Patent Application, ViCHIP's patent counsel, David

13   Jaffer, sent Dr. Lee an Assignment of U.S. Origin Patent Application form ("Patent Assignment")

14   listing all five inventors.  Kothe Decl., Ex. N (Patent Assignment).  By signing the Patent

15   Assignment, each inventor assigned to ViCHIP his rights to the invention entitled "Method And

16   Apparatus for Adaptive Multiple-Dimensional Signal Sequences."  It is undisputed that all five

17   inventors listed on the Provisional Patent Application, *including Dr. Lee*, signed the Patent

18   Assignment form:

19     Q.   So you signed the document, "Assignment of U.S. Origin
        Patent Application" for the Method and Apparatus for
20        Adaptive Multiple Dimensional Signal Sequence?  You
        signed this form right here, correct?
21

22     A.   I'm not sure whether exactly this form, but I say I sign a form
        similar to this.

23     Q.   So you signed a form, an assignment form for the ViChip
        provisional patent application, correct?
24

25     A.   Yes.

    Q.   When did you sign it?
26

27     A.   That was June 2003.  Later part of June 2003 or July.  I'm not
        sure.  Around that time, 2003.

28

Q.     Okay.  Do you know if the other inventors also signed the same form?

A.     Yes.

Kothe Decl., Ex. I (Lee 1/11/05 Depo), 56:13-57:2.

By virtue of this assignment, ViCHIP owns the exclusive rights to the technology embedded in the Viper Chip and disclosed in the Provisional Patent Application.

**F.     ViCHIP Taiwan's Board Decides that Dr. Lee Should Not Have Exclusive Control Over ViCHIP**

In the spring of 2004, Tim Hu, the Chairman of ViCHIP and ViCHIP Taiwan, learned that Dr. Lee, who was still serving as ViVoDa's chairman, had executed two questionable consulting agreements between ViCHIP and ViVoDa.  Kothe Decl, Ex. O (Lee 2/15/06 Depo), 134:9 – 135:22; Declaration of Tim Hu ("Hu Decl."), ¶ 5.  Mr. Hu also learned that Dr. Lee used ViCHIP's funds to pay for his attendance at a trade show on behalf of ViVoDa.  Kothe Decl., Ex. O (Lee 2/15/06 Depo), 108:3 – 14, 136:3 – 7.  Mr. Hu and ViCHIP Taiwan's board determined that Dr. Lee had breached his fiduciary duty to ViCHIP by entering into transactions that benefited ViVoDa to the detriment of ViCHIP, and ultimately decided that Dr. Lee should be removed from his positions with ViCHIP.  Hu Decl., ¶ 5.  At its May 13, 2004 meeting, the ViCHIP Taiwan board of directors decided to reconstitute ViCHIP's board by replacing Dr. Lee with three new members.  Kothe Decl., Ex. A (Lee Decl.), ¶ 19, Ex. N;  Hu Decl., ¶ 5.  The next day, Mr. Hu, Joey Su, a member of ViCHIP Taiwan's board, and Bill Chien, the supervisor of ViCHIP Taiwan's board, met with Dr. Lee.  Kothe Decl., Ex. A (Lee Decl.), ¶ 20; Ex. O (Lee 2/15/06 Depo), 139:15-140:4.  At this May 14, 2004 meeting, Mr. Hu told Dr. Lee that ViCHIP Taiwan and its shareholders wanted him to step-down from his positions as President, CEO, CFO and the sole director of ViCHIP.  Hu Decl., ¶ 6.  They offered Dr. Lee a new position as the Vice Chairman of ViCHIP Taiwan.  *Id.*  While Dr. Lee did not agree with the Board's decision, it is undisputed that, as of May 14, 2004, Dr. Lee was aware of ViCHIP Taiwan's intent to remove him from his positions at ViCHIP.  Kothe Decl., Ex. O (Lee 2/15/06 Depo), 138:14-141:16; Ex. A (Lee Decl.), ¶¶ 19, 20.

**G.**   **After Dr. Lee is Asked to Step Down from his Positions at ViCHIP, Dr. Lee Unilaterally Decides to Partition ViCHIP's Patent**

In late May, after the May 14, 2004 meeting during which he was asked to step down from his positions at ViCHIP, Dr. Lee decided to split ViCHIP's patent application for the MPEG4 Codec into two parts.[6]  Kothe Decl., Ex. A (Lee Decl.), ¶ 27.  On or about June 1 or 2, 2004, Dr. Lee called Dr. Wen-Lung Chen, ViCHIP's former director of engineering and one of the inventors listed on ViCHIP's Provisional Patent Application, and told him about his plan to partition the patent application into two parts: an algorithm portion and an architecture design portion.  Kothe Decl., Ex. I (Lee 1/11/05 Depo), 64:19-65:20; Ex. P (W.L. Chen 10/04 Decl.), ¶ 5.  In particular, Dr. Lee wanted to file a utility patent solely in his own name for the algorithm portion of the invention.  Kothe Decl., Ex. P (W.L. Chen 10/04 Decl.), ¶ 5.  Dr. Wen-Lung Chen objected and informed Dr. Lee that he was *not* the sole inventor of the algorithm.[7]  *Id*. at ¶ 6.  Furthermore, Dr. Wen-Lung Chen understood that, pursuant to the Invention Assignment and Confidentiality Agreement, the entire patent belongs to ViCHIP.  *Id.* at ¶ 3.  Dr. Wen-Lung Chen called Tim Hu to inform him of this situation.  Hu Decl., ¶ 7; Kothe Decl., Ex. P (W.L. Chen 10/04 Decl.), ¶ 7.

**H.**   **The Board of Directors of ViCHIP Taiwan Removed Dr. Lee From His Positions at ViCHIP and Terminated His Employment**

After learning from Dr. Wen-Lung Chen about Dr. Lee's plan to file a portion of the

---

[6] There is no evidence that Dr. Lee decided to split ViCHIP's patent application into multiple parts *before* he was asked to step-down from his roles at ViCHIP.  To the contrary, the evidence suggests that Dr. Lee made the decision to partition the patent application after being asked to resign at the May 14, 2004 meeting.  Dr. Lee has testified that he does not know of any documents expressing his intent to partition ViCHIP's Provisional Patent Application that pre-date the May 14, 2004 meeting.  Kothe Decl., Ex. O (Lee 2/15/06 Depo), 144:7-15.

[7] At his deposition, Dr. Lee has admitted that the algorithm that he claims to have invented prior to his work at ViCHIP was incorporated within the MPEG4 codec developed by the ViCHIP engineers and then incorporated within the Provisional Patent Application that he assigned to ViCHIP.  Kothe Decl., Ex. O (Lee 2/15/06 Depo), 82:4-25; 88:1-89:6.  Based on Dr. Lee's execution of the Patent Assignment form, there is no dispute that Dr. Lee assigned his rights to the inventions contained in the Provisional Patent Application – including any inventive contributions he made to the algorithm portion – to ViCHIP.

1   patent in his own name, and from Ms. Lu about Dr. Lee's removal of the executed copy of his

2   Employee Invention Assignment and Confidentiality Agreement and the Patent Assignment form,

3   the ViCHIP Taiwan board decided to terminate Dr. Lee immediately.  Hu Decl., ¶ 9.  On June 3,

4   2004, Mr. Hu sent Dr. Lee an email in which he informed Dr. Lee that he was "implementing the

5   board's decision to reorganize ViCHIP USA" and asked Dr. Lee not to "make any legal decision

6   on behalf of ViCHIP USA."  Hu Decl., ¶ 8, Ex. A.  On June 4, 2004, ViCHIP Taiwan, as the sole

7   shareholder of ViCHIP, resolved to remove Dr. Lee from his position as ViCHIP's sole director

8   and replace Dr. Lee with three new directors.  *Id*. at ¶ 9.  ViCHIP's new board then resolved to

9   remove Dr. Lee from his positions as President, CEO, Secretary, CFO and registered agent of

10  ViCHIP.  *Id*.  ViCHIP also terminated Dr. Lee's employment.  *Id*.  On June 4, 2004, Mr. Hu sent

11  two letters via facsimile to Dr. Lee at ViCHIP's San Jose office informing him of his removal

12  from his positions at ViCHIP.  *Id.* at Ex. B and C.

13
      **I.      The Day Before His Termination, Dr. Lee Hijacked ViCHIP's Intellectual**
14           **Property and Deleted ViCHIP's Computer Files**

15          On June 3, 2004, the day before his termination, Dr. Lee stole all the files relating to

16  ViCHIP's Provisional Patent Application.  Kothe Decl., Ex. I (Lee 1/11/05 Depo), 49:14-50:21;

17  Ex. F (Lu Decl.), ¶ 6.  Dr. Lee has admitted that he removed from ViCHIP's offices the hard copy

18  of ViCHIP's Provisional Patent Application and all related files, which included an executed

19  copy of the Patent Assignment form.  Kothe Decl., Ex. I (Lee 1/11/05 Depo), 43:18-21, 49:6-13.

20  Dr. Lee also has admitted that he went to the law offices of Pillsbury Winthrop and asked

21  ViCHIP's patent counsel, David Jaffer, to give him all the files relating to ViCHIP's Provisional

22  Patent Application, including the original executed Patent Assignment Form.  *Id*. at 57:24-58:4.

23  Mr. Jaffer, who had worked with Dr. Lee to prepare and file the Provisional Patent Application

24  and was in the process of preparing the utility patent application *on behalf of ViCHIP*, gave all of

25  ViCHIP's patent files to Dr. Lee.  Kothe Decl., Ex. G (Lee Amended Answer), ¶ 46; Ex. K (Jaffer

26  Decl.), ¶ 3.

27          In addition to taking ViCHIP's patent files, Dr. Lee has admitted that he deleted electronic

28  files relating to the Viper Project from ViCHIP's computer system.  Kothe Decl., Ex. I (Lee

1  1/11/05 Depo), 50:13-21.  On June 3, 2004, the night before his termination, Dr. Lee accessed

2  ViCHIP's file server and deleted the contents of the computer files that he had generated as a

3  ViCHIP employee.  *Id.*  He also deleted the contents of his ViCHIP-issued laptop computer.

4  Kothe Decl., Ex. G (Lee Amended Answer), ¶¶ 38, 44; Ex. S (H.S. Chen 10/04 Decl.), ¶ 3.  Dr.

5  Lee has also admitted that he removed the executed copy of his Invention Assignment and

6  Confidentiality Agreement from his personnel file when he left the company.  Kothe Decl., Ex. I

7  (Lee 1/11/05 Depo), 14:8-10; Ex. G (Lee Amended Answer), ¶ 16.

8       After his termination on June 4, 2004, Dr. Lee refused to return to ViCHIP its patent files,

9  including the Provisional Patent Application, and the other documents related to the Viper Project

10 that he retained.  Dr. Lee did not return these materials until the Court ordered him to do so in its

11 November 10, 2004 Order granting ViCHIP's motion for a temporary restraining order.

12   **J.      After Taking His Employee Invention Assignment and Confidentiality**
          **Agreement and the Patent Assignment Form, Dr. Lee Destroyed Both**
13        **Agreements in Which He Assigned to ViCHIP His Rights to Inventions and**
          **Intellectual Property**
14

15       Dr. Lee did not just take the executed copies of two of his assignment agreements with

16 ViCHIP.  He destroyed them.  Dr. Lee ripped up the original executed copy of his Invention

17 Assignment and Confidentiality Agreement.  Kothe Decl., Ex. I (Lee 1/11/05 Depo), 11:24-12:4,

18 20:16-21.  Dr. Lee also ripped up the original and ViCHIP's copy of the Patent Assignment form,

19 which had been executed by himself and four other ViCHIP engineers:

20                 Q.     Where is the executed copy of this [Patent Assignment]
                         form?
21
                  A.     You mean now?
22
                  Q.     Yes.
23
                  A.     It no longer exists.
24
                  Q.     What happened to it?
25
                  A.     **I tore it up**.
26
                  Q.     When did you tear it up?
27
                  A.     That was June 1st or 2nd of 2004.  I'm not sure exact date,
                         but it's -- it's before June 3rd.  That week, early -- either
28

1       Monday, Wednesday, Tuesday during that week, early that
        week.
2
        Q.    Were there any other copies of this document?
3
        A.    I don't know.
4
        Q.    Where was the document that you tore up?
5
        A.    Where?
6
        Q.    Where did you get the --
7
        A.    Where did I get this --
8
        Q.    -- the form?
9
        A.    -- the assignment form?
10
        Q.    Yes.
11
        A.    From Pillsbury.
12
        Q.    So the executed assignment form for the provisional patent
13            application was kept at Pillsbury?

14      A.    Yes, correct.  Was, yes.

15      Q.    And when you retrieved the files from Pillsbury, you
16            destroyed this document?

17      A.    **Yes, I tore it up**.

        Q.    Did you destroy any other documents?
18
        A.    This one, and there was a copy of -- the original was in
19            Pillsbury.  There was a copy in the -- the ViChip's folder.
              The file folder at that time was in my possession to do the
20            preparation work.  He has a copy.  It's not original one.  **And
              both of them I tore it up.**
21
        Q.    So you destroyed the copy at ViChip?
22
        A.    And the original.
23
        Q.    Then you retrieved the files from Pillsbury and destroyed the
24            original assignment form?

25      A.    Yes.

26
*Id.*, 57:3-58:16 (emphasis added).
27
        There is no dispute that Dr. Lee destroyed both agreements in which he assigned to
28

ViCHIP his rights to the inventions disclosed in the Provisional Patent Application.

**K.    After Stealing ViCHIP's Then-Confidential Provisional Patent Application, Dr. Lee Used it to File Two Utility Patent Applications In His Own Name**

On June 14, 2004, Dr. Lee filed two utility patent applications: US 2004/025814 ("Memory and Array Processor Structure for Multiple-dimensional Signal Processing"); and US 2005/0013369 ("Method and Apparatus for Adaptive Multiple-dimensional Signal Sequences for Encoding/Decoding"). Kothe Decl., Ex. I (Lee 1/11/05 Depo), 30:13-31:23; Ex. R (Blanch Decl.), at Exs. 3, 4. Both of Dr. Lee's utility applications, which list Dr. Lee as the sole inventor, claim priority to ViCHIP's Provisional Patent Application. Kothe Decl., Ex. G (Lee Amended Answer), ¶ 66; Ex. I (Lee 1/11/05 Depo), 74:15-76:16. Dr. Lee has admitted that his utility applications subsume all of the claims contained in ViCHIP's Provisional Patent Application. *Id*. In addition to the patent applications that he filed in the United States, on June 17, 2004, Dr. Lee filed for foreign patent rights under the Patent Cooperation Treaty, and in July 2004 he filed a Taiwanese patent application for the same invention because Taiwan is not a signatory to the PCT. Kothe Decl., Ex. A (Lee Decl.), ¶¶ 30, 31.

**L.    Dr. Lee Has Jeopardized ViCHIP's Ability to Protect Its Intellectual Property and to Prosecute Its Patents**

On June 23, 2004, ViCHIP filed its utility patent application (US 2005/0111548 entitled "Method and Apparatus for Adaptive Multiple-dimensional Signal Sequences Encoding/Decoding"), which also claims priority to its Provisional Patent Application. Kothe Decl., Ex. Q (ViCHIP Depo), 42:16-43:5; 47:7-10. Like its Provisional Patent Application, ViCHIP's utility application lists all five ViCHIP engineers, including Dr. Lee, as inventors. Additionally, ViCHIP also filed for foreign patent rights under the PCT and a patent application for the same inventions in Taiwan. Kothe Decl., Ex. U (ViCHIP Answer), ¶ 48.

By misappropriating ViCHIP's intellectual property and filing utility patents in his own name, Dr. Lee has put ViCHIP's ability to protect its own intellectual property at risk. ViCHIP cannot obtain patent protection for its Viper Chip technology because Dr. Lee has filed patent applications (in the United States and abroad) that compete with ViCHIP's. Hu Decl., ¶ 11. Until

1   the PTO sorts out these competing applications, ViCHIP cannot properly prosecute its patents.

2   *Id.*  This process in the PTO will take time, and this delay – a direct result of Dr. Lee's competing

3   patent applications – could devastate a start-up company trying to remain competitive in the

4   integrated circuit design industry.  *Id.*  Without an ability to patent its cutting edge technology,

5   the entire Viper Project is at risk.  *Id.*  ViCHIP has been unable to secure funding from any new

6   investors because Dr. Lee's actions have encumbered ViCHIP's intellectual property rights. *Id.*

7   **IV.   SUMMARY JUDGMENT LEGAL STANDARD**

8        Summary judgment is appropriate when there is no genuine issue as to material facts and

9   the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are

10   those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

11   247-48 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

12   reasonable jury to return a verdict for the nonmoving party.  *Id.*

13        A party seeking summary judgment bears the initial burden of informing the court of the

14   basis for its motion, and of identifying those portions of the pleadings and discovery responses

15   that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477

16   U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must

17   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

18   party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving

19   party can prevail merely by pointing out to the district court that there is an absence of evidence

20   to support the nonmoving party's case.  *Id.*  If the moving party meets its initial burden, the

21   opposing party must then set forth specific facts showing that there is some genuine issue for trial

22   in order to defeat the motion.  *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.

23        "To show the existence of a 'genuine' issue, ... [a plaintiff] must produce at least some

24   significant probative evidence tending to support the complaint."  *Smolen v. Deloitte, Haskins &*

25   *Sells,* 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court must view the evidence

26   in the light most favorable to the non-moving party.  *United States v. City of Tacoma,* 332 F.3d

27   574, 578 (9th Cir. 2003).  The court must not weigh the evidence or determine the truth of the

28   matter, but only determine whether there is a genuine issue for trial.  *Balint v. Carson City,* 180

- 14 -

1    F.3d 1047, 1054 (9th Cir. 1999).  If the nonmoving party fails to show that there is a genuine

2    issue for trial, "the moving party is entitled to judgment as a matter of law."  *Celotex,* 477 U.S. at

3    323.  Regardless of whether plaintiff or defendant is the moving party, each party must "establish

4    the existence of an element essential to [its] case, and on which [it] will bear the burden of proof

5    at trial."  *Id.* at 322.

6  
7    **V.    VICHIP IS ENTITLED TO SUMMARY JUDGMENT OF DR. LEE'S COUNTERCLAIMS**

8              Dr. Lee's counterclaims against ViCHIP are predicated on Dr. Lee's assertion that he is

9    the sole inventor and owner of the intellectual property embodied in ViCHIP's Provisional Patent

10   Application and in any subsequent utility patent application that claims priority to it.

11   Unfortunately for Dr. Lee, saying it does not make it so, nor does it create a genuine issue of

12   material fact given the undisputed evidence.  ViCHIP, not Dr. Lee, owns the inventions contained

13   in the Provisional Patent Application because all five inventors of the Viper Chip technology,

14   including Dr. Lee, *assigned to ViCHIP* their rights to this intellectual property.  The analysis of

15   Dr. Lee's counterclaims starts and stops with the undisputed fact that Dr. Lee assigned to ViCHIP

16   his rights to the Provisional Patent Application.  ViCHIP is entitled to summary judgment of each

17   of Dr. Lee's counterclaims because Dr. Lee cannot, as matter of law, present evidence to establish

18   the elements of each cause of action.

19          **A.    Dr. Lee Cannot Sustain His Misappropriation Claim**

20              The tort of common law misappropriation requires three elements: (1) the plaintiff has

21   invested substantial time and money in development of its property; (2) the defendant has

22   appropriated the property at little or no cost; and (3) the plaintiff has been injured by the

23   defendant's conduct.  *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462,

24   467 (9th Cir. 1990) (*citing Balboa Ins. Co. v. Trans Global Equities,* 218 Cal. App. 3d 1327,

25   1342 (1990)).  Dr. Lee cannot sustain his common law misappropriation claim because ViCHIP,

26   not Dr. Lee, owns the intellectual property at issue.  Stated another way, ViCHIP cannot

27   misappropriate its own intellectual property.  It is undisputed that Dr. Lee signed three separate

28   agreements in which he assigned to ViCHIP his rights to the intellectual property developed at

- 15 -

1  ViCHIP and contained in ViCHIP's Provisional Patent Application. Kothe Decl., Ex. C (Lee

2  Consulting Agreement); Ex. I (Lee 1/11/05 Depo), 11:24-12:13; 56:13-57:2**.**  Dr. Lee's references

3  to his pre-existing invention are a *non sequitur*.  Dr. Lee unequivocally assigned *to ViCHIP* his

4  rights to the inventions claimed ViCHIP's Provisional Patent Application, regardless of when this

5  technology was invented.

6  **B.      Dr. Lee Cannot Support His Unjust Enrichment Counterclaim**

7  To establish a claim for unjust enrichment under California law, Dr. Lee must establish

8  (1) that ViCHIP received a benefit, and (2) that it would be unjust to allow ViCHIP to retain the

9  benefit at the expense of Dr. Lee.  *See Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d

10  952, 964 (C.D. Cal. 2001) (*citing Lectrodryer v. Seoul Bank*, 77 Cal. App. 4th 723, 726 (2000);

11  *see also Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1074 (C.D. Cal. 2001) ("In

12  order to make out a claim for unjust enrichment in California, plaintiff must show that defendant

13  received unjust benefit at the expense of the plaintiff.").  Summary judgment of Dr. Lee's unjust

14  enrichment claim is proper because there is no evidence that ViCHIP improperly obtained a

15  benefit at the expense of Dr. Lee.  To the contrary, it is undisputed that Dr. Lee assigned to

16  ViCHIP his rights to any invention, including the Viper Chip, that he worked on at ViCHIP, both

17  as a consultant and as an employee.  Kothe Decl., Ex. C (Consulting Agreement), ¶ 8; Ex. I (Lee

18  1/11/05 Depo), 11:24-12:13; 56:13-57:2**.**  There is no evidence or viable legal argument that

19  Dr. Lee's execution of his Consulting Agreement, his Employee Invention Assignment

20  Agreement or the Patent Assignment form was improper.  There is no evidence that these

21  assignment agreements are unenforceable.  Furthermore, it is undisputed that ViCHIP

22  compensated Dr. Lee for the work he performed at ViCHIP, both as a consultant and as an

23  employee.  Kothe Decl., Ex. C (Lee Consulting Agreement) ¶ 3; Ex. O (Lee 2/15/06 Depo), 70:8-

24  15.  Without evidence that ViCHIP *unjustly* benefited from the work Dr. Lee performed as a

25  ViCHIP consultant or employee, summary judgment of Dr. Lee's unjust enrichment claim is

26  proper.

27

28

VICHIP's MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT - CASE NO. C-04-02914 PJH

1

**C.**   **As a Matter of Law, Dr. Lee Cannot Establish His Claims for Intentional Interference With Contractual Relations and Prospective Economic Advantage**

2

3    The core of intentional interference business torts is interference with an economic

4    relationship by a third party *stranger* to that relationship.  *See Marin Tug & Barge, Inc. v.*

5    *Westport Petroleum, Inc.,* , 271 F.3d 825, 832 (9th Cir. 2001); *Travelers Casualty & Surety Co. of*

6    *Amer. v. Amoroso*, 2004 WL 1918890 (N.D. Cal. Aug. 24, 2004), *3; *Applied Equipment Corp. v.*

7    *Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 514 (1991) (tortious interference claims designed for

8    "protecting the expectations of contracting parties against frustrations by *outsiders* who have no

9    legitimate social or economic interest in the contractual relationship").  "The threshold test for

10    determining whether a defendant is not a stranger to an economic relationship, and thus cannot be

11    liable for tortious interference, is whether such defendant has a direct interest or involvement in

12    that relationship."  *National Rural Telecommunications Cooperative v. DirecTV*, *Inc*., 319 F.

13    Supp 2d 1059, 1070 (C.D. Cal. 2003).  Dr. Lee's tortious interference claims against ViCHIP fail

14    as a matter of law because ViCHIP is not a third-party stranger to the Joint Venture Agreement,

15    the contract with which ViCHIP allegedly interfered.  Far from being an "outsider," ViCHIP's

16    involvement in the Joint Venture Agreement could not be more direct; ViCHIP and its corporate

17    parent, ViCHIP Taiwan, are the companies *created by Dr. Lee* and his joint venture partners to

18    implement the purpose of the Joint Venture Agreement.

19    Dr. Lee's claims in the pending arbitration in Taiwan, which concerns the joint venture

20    parties' rights and obligations under the JVA, demonstrate ViCHIP's direct involvement in the

21    relationship between ViCHIP and its joint venture partners, 3S and Sesoda:

22    As reflected in the Application for Arbitration, the primary issue in
      dispute in the pending arbitration is whether Solid State System

23    Corp., Ltd. and SESODA Corporation, Ltd. wrongfully and without
      cause removed [Dr. Lee] from his positions as an officer and

24    director of ViCHIP Corporation and as an officer of ViCHIP
      Taiwan or, in other words, whether Tsu-Chang Lee breached any

25    duties to ViCHIP Corporation or ViCHIP Taiwan, thereby
      justifying his removal as an officer and/or director of those

26    companies.

27    Kothe Decl., Ex. V (Wang Decl.), ¶ 3.

28    Dr. Lee is currently litigating the issue of the propriety of his removal *from ViCHIP*

- 17 -

1   against 3S and Sesoda in the Taiwan arbitration.  Dr. Lee's attempt to bring a claim in the United

2   States *against ViCHIP* for causing 3S and Sesoda to breach the JVA is improper as a matter of

3   law given ViCHIP's relationship to the joint venture.

4        Given the law's "stranger" requirement, ViCHIP cannot be liable for interfering with the

5   JVA.  ViCHIP is entitled to summary judgment of Dr. Lee's legally invalid contractual

6   interference claims.

7
8        **D.**    **The Court Should Declare ViCHIP's Ownership Rights in the Pending Patent Applications; Inventorship Issues Should Be Decided by the PTO**

9        Dr. Lee has asked the Court for a "declaration of ownership of intellectual property

10   embodied in patent applications" under Cal. Code of Civ. Proc. § 1060.  Specifically, Dr. Lee has

11   asked this Court to declare that:

12        Dr. Lee is the rightful owner and an inventor of (i) the technology
13        embodied in two U.S. patent applications that he filed and in the
         provisional patent application to which the two utility patent
14        applications claim priority, (ii) technology embodied in related
         foreign patent applications filed by Dr. Lee, (iii) the technology
15        embodied in one or more patent claims of the U.S. utility patent
         application filed by ViCHIP California, and (iv), on information
16        and belief, the technology embodied in one or more patent claims
         of related foreign patent applications filed by ViCHIP California.

17   Kothe Decl., Ex. Y (Lee Counterclaims), ¶ 55.

18        Should this Court exercise its discretion to grant a declaration of ownership of the

19   aforementioned intellectual property[8], the undisputed facts demonstrate that ViCHIP is the

20   rightful owner of the Provisional Patent Application as well as any subsequent patent applications

21   that claim priority to it.  Dr. Lee executed three separate agreements in which he assigned to

22   ViCHIP his rights to the intellectual property developed at ViCHIP.  Kothe Decl., Ex. C (Lee

23   Consulting Agreement) ¶ 8; Ex. I (Lee 1/11/05 Depo), 11:24-12:13; 56:13-57:2.  In one of these

24

25   _____

     [8] The decision to grant declaratory relief is matter of discretion, even when the court is presented
26   with a justicible controversy.  *See Display Research Laboratories, Inc. v. Telegen Corp.*, 133
     F.Supp.2d 1170, 1174 (N.D. Cal. 2001); *see also Abbate v. County of Santa Clara*, 91 Cal. App.
27   4th 1231-32 (2001) ("Whether a determination is proper in an action for declaratory relief is a
     matter within the trial court's discretion and the court's decision to grant or deny relief will not be
28   disturbed on appeal unless it be clearly shown that the discretion was abused.").

1    agreements, the Patent Assignment form, Dr. Lee expressly assigned "the full and exclusive right,

2    title and interest to the said invention in the United States and in all foreign countries" to ViCHIP.

3    Kothe Decl., Ex. N (Patent Assignment) at TCL00000269.  Based on this valid assignment,

4    signed by all five inventors of the technology, ViCHIP is the lawful owner of the inventions

5    contained in the Provisional Patent Application.  The fact that Dr. Lee destroyed his assignment

6    agreements does not change the fact that ViCHIP owns the Viper Chip technology developed by

7    its engineers as well as any patent applications directed to this technology.  Accordingly, ViCHIP

8    should also be declared the rightful owner of Dr. Lee's two utility patent applications and his

9    related foreign filings, all of which claim priority to ViCHIP's Provisional Patent Application.

10   The fact that Dr. Lee's pending patent applications are directed to inventions owned by ViCHIP

11   is undisputed.  Dr. Lee admitted that his utility patent applications subsume the claims contained

12   in ViCHIP's Provisional Patent Application.  Kothe Decl., Ex. G (Lee Amended Answer), ¶ 66;

13   Ex. I (Lee 1/11/05 Depo), 74:15-76:16.

14           To the extent that Dr. Lee is seeking a declaration of inventorship, as opposed to

15   ownership, the Patent & Trademark Office ("PTO"), not the district court, is the preferred forum

16   for handling inventorship disputes over patent applications.  *See Display Research Laboratories,*

17   *Inc.,* 133 F. Supp. 2d at 1174-75 (dismissing declaratory relief counterclaims because "the PTO's

18   established procedure for handling inventorship disputes is a better forum for [counterclaimant] to

19   bring its claims."); *Concrete Washout Systems, Inc. v. Minegar Environmental Systems, Inc.*,

20   2005 WL 1683930, *4 (E.D. Cal. July 12, 2005) ("Because the PTO has not yet had the

21   opportunity to reach the issues of inventorship disputed in this case, the court determines that it

22   would be best to decline to exercise jurisdiction over this claim.").  Dr. Lee's declaratory relief

23   claim should be adjudicated in ViCHIP's favor or dismissed.

24   **VI.    VICHIP IS ENTITLED TO PARTIAL SUMMARY JUDGMENT OF ITS CLAIMS
25           AGAINST DR. LEE**

26           ViCHIP's claims against Dr. Lee arise from the fact that Dr. Lee stole, and in some

27   instances destroyed, ViCHIP's confidential and proprietary information in violation of his

28   contractual and fiduciary obligations.  Because Dr. Lee has admitted to committing the conduct

1    that gave rise to ViCHIP's complaint, there are no genuine issues of material fact as to Dr. Lee's

2    liability.  ViCHIP is entitled to summary adjudication on the issue of Dr. Lee's liability for the

3    following causes of action: breach of contract, breach of fiduciary duty, violation of the Computer

4    Fraud and Abuse Act and conversion.  The only remaining issue for trial on these causes of action

5    is the amount of ViCHIP's damage.

6            A.      **No Genuine Issue of Material Fact Exists as to ViCHIP's Claim that Dr. Lee
7                    Breached His Employee Invention Assignment and Confidentiality
                    Agreement**

8            To establish a claim for breach of contract, ViCHIP must prove: (1) the existence of a

9    contract; (2) performance of the contract; (3) breach; and (4) damage.  *Shanghai Automation*

10   *Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1004 (N.D. Cal. 2001).  The Employee

11   Invention Assignment and Confidentiality Agreement that Dr. Lee signed (and then stole and

12   destroyed) is a valid and enforceable contract.  *See Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214,

13   230 (S.D. Cal. 1986) (finding that personal service agreements prohibiting employees from

14   disclosing confidential information obtained while engaged in research and development for the

15   employer were valid and enforceable); *see also Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp.

16   2d 1089, 1096 (C.D. Cal. 1999) (recognizing that employment restrictions that serve to protect a

17   former employer's trade secrets, proprietary information and confidential information are valid in

18   California.).  As the plain language of the contract makes clear, Dr. Lee signed the Employee

19   Invention Assignment and Confidentiality Agreement "in consideration of, and as a condition of

20   [his] employment with ViCHIP."  Kothe Decl., Ex. H (Employee Agreement), at p. 1.

21           Dr. Lee's alleged excuse that he did not read the contract before signing it does not

22   invalidate the Employee Invention Assignment and Confidentiality Agreement.  As a matter of

23   law, parties are expected to read the terms of any agreement they sign.  "It is well established, in

24   the absence of fraud, overreaching, or excusable neglect, that one who signs an instrument may

25   not avoid the impact of its terms on the ground that he failed to read the instrument before signing

26   it."  *Randas v. YMCA of Metropolitan Los Angeles*, 17 Cal. App. 4th 158, 163 (1993).  There is

27   no evidence of fraud, overreaching or excusable neglect in this case.  Moreover, the evidence

28

- 20 -

1   shows that Dr. Lee was well aware of the terms of the Employee Invention Assignment and

2   Confidentiality Agreement.  In addition to signing his own, he countersigned, on behalf of

3   ViCHIP, the contracts executed by the members of ViCHIP's engineering team.  Kothe Decl.,

4   Ex. T (Consulting Agreements) (emphasis added).

5         The Employee Invention Assignment and Confidentiality Agreement expressly prohibits

6   Dr. Lee from removing proprietary information from ViCHIP:

> Upon termination of my employment with the Company, I will
> promptly deliver to the Company all documents and materials of
> any nature pertaining to my work with the Company.  *I will not take
> with me any documents or materials or copies thereof containing
> any Proprietary Information.*"

10  Kothe Decl., Ex. H (Employee Agreement), ¶ 8.

11        Dr. Lee's breach of this provision is undisputed.  Dr. Lee has admitted to:

12        •   taking ViCHIP's patent files (containing ViCHIP's Provisional
              Patent Application and the original executed copy of the Patent
13            Assignment form) from ViCHIP and ViCHIP's patent counsel;

14  Kothe Decl., Ex. I, 43:18-21, 49:6-13, 57:24-58:4; Ex. G, ¶ 75.

15        •   taking (and destroying) his Employee Invention Assignment
              and Confidentiality Agreement;
16
17  Kothe Decl., Ex. I, 11:24-12:4, 20:16-21; Ex. G, ¶¶ 16, 66.

18        •   deleting computer files related to his work on the Viper
              Project.

19  Kothe Decl., Ex. I, 50:13-21; Ex.G, ¶¶ 38,44,66.

20        There is no dispute that ViCHIP suffered damage as result of Dr. Lee's removal and

21  destruction of ViCHIP's proprietary information.  Dr. Lee *agreed* that a breach of his contractual

22  obligations could cause ViCHIP to suffer irreparable harm:

> I understand that in the event of a breach or threatened breach of
> this Agreement by me the Company may suffer irreparable harm
> and will therefore be entitled to injunctive relief to enforce this
> Agreement.

26  Kothe Decl., Ex. H (Employee Agreement), ¶ 14.

27        Dr. Lee stole ViCHIP's patent files approximately 20 days before ViCHIP had to file its

28  utility patent application on June 23, 2004.  As a result of Dr. Lee's breach of his contractual

- 21 -

1   obligations, ViCHIP had to prepare and file its utility patent application without its patent files,

2   which included the only executed copies of the Patent Assignment form.  Kothe Decl., Ex. F (Lu

3   Decl.), ¶ 6 and ¶ 10, at Ex. B.  Furthermore, ViCHIP was unable to recover any of the data Dr.

4   Lee deleted from his laptop and much of the information that he deleted from ViCHIP's file

5   server.  Kothe Decl., Ex. S (H.S. Chen 10/04 Decl.), ¶ 3.  Based on this undisputed evidence,

6   including Dr. Lee's own admissions, the Court should find, as a matter of law, that Dr. Lee

7   breached his Employee Invention Assignment and Confidentiality Agreement.

8          **B.**       **The Undisputed Facts Demonstrate Dr. Lee's Violation of the Computer**

9                  **Fraud and Abuse Act**

10        The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(5), makes it

    unlawful to: (1) intentionally access; (2) a protected computer; (3) without authorization; and
11
    (4) as a result of such conduct; (5) intentionally, recklessly or otherwise cause; (6) damage.  *See*
12
    18 U.S.C. §§ 1030(a)(5)(A)-(B).  "Damage" is defined as "any impairment to the integrity or
13
    availability of data, a program, a system, or information" (§ 1030(e)(8)) that causes "loss to 1 or
14
    more persons during any 1-year period...aggregating at least $5000 in value."  *Id.* at
15
    § 1030(a)(5)(B)(i).  Dr. Lee's undisputed action – his unauthorized deletion of ViCHIP's
16
    computer files – falls squarely within the conduct proscribed by the CFAA.
17
          ViCHIP's file server qualifies as a "protected computer" because it is "used in interstate
18
    commerce or communication."  18 U.S.C. § 1030(e)(2)(B).  It is undisputed that Dr. Lee accessed
19
    ViCHIP's file server on June 3, 2004, the night before he was terminated from ViCHIP, and
20
    intentionally deleted files from ViCHIP's server.  Dr. Lee has also admitted that he deleted files
21
    from his ViCHIP-issued laptop computer.  The fact that Dr. Lee, who was at that time an
22
    employee with a fiduciary duty of loyalty to ViCHIP, had access to the proprietary information
23
    stored on ViCHIP's server does not mean that he was authorized to delete it.
24
          As a matter of law, Dr. Lee's authority to access ViCHIP's server terminated when he
25
    decided to destroy the files that were the property of ViCHIP, in violation of the duty of loyalty
26
    that agency law imposes on an employee.  *See United States v. Galindo*, 871 F.2d 99, 101 (9th
27
    Cir. 1989) ("When an agent acts contrary to the interests on the principal, the agency relationship
28

- 22 -

1    ceases."); *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121,

2    1124-25 (W.D. Wash. 2000).  In a recent seventh circuit case, *International Airport Centers,*

3    *L.L.C. v. Citrin*, 2006 WL 548995 (7th Cir. (Ill.), March 8, 2006) , the defendant deleted files that

4    incriminated himself and other files that were the property of his employer from his work-issued

5    laptop computer.  The Court held that the plaintiff employer stated a claim under the CFAA

6    because the defendant employee acted without authorization when he deleted data from his

7    computer.  *Id.* at * 3.  According to Judge Posner, "Citrin's breach of his duty of loyalty

8    terminated his agency relationship (more precisely, terminated any rights he might have claimed

9    as IAC's agent – *he could not by unilaterally terminating any duties he owed his principal gain*

10   *an advantage!*) and with it his authority to access the laptop, because the only basis of his

11   authority had been that relationship." (emphasis added)  *Id.*

12       On the eve of his termination, Dr. Lee went out of his way to harm ViCHIP by destroying

13   data that he knew ViCHIP had no duplicates of and deleting every trace of the work that he had

14   performed for ViCHIP.  Kothe Decl., Ex. I (Lee 1/11/05 Depo), 49:6-20.  Dr. Lee's Employee

15   Invention Assignment and Confidentiality Agreement is explicit that Dr. Lee was not entitled to

16   retain, let alone destroy, ViCHIP's proprietary information after his termination.  Kothe Decl.,

17   Ex. H (Employee Agreement), ¶ 3.  Yet Dr. Lee kept copies of the data that he deleted from

18   ViCHIP's computers and then refused to return these electronic files to ViCHIP after his

19   termination.  Kothe Decl. Ex. I (Lee 1/11/05 Depo), 82:12-24; Ex. F (Lu Decl.), ¶ 6.  Until the

20   Court ordered Dr. Lee to return to ViCHIP all of the documents that he had removed, ViCHIP

21   was unable to discern exactly what information Dr. Lee had deleted.

22       The harm ViCHIP has suffered as a result of Dr. Lee's conduct exceeds $5000.  From

23   2003 through the present, ViCHIP and ViCHIP Taiwan have spent at least 5.6 million U.S.

24   dollars on the Viper Project (Hu Decl., ¶ 3), and paid Dr. Lee an annual salary of $165,000 for his

25   work for the company.  Kothe Decl., Ex. O (Lee 2/15/06 Depo), 70:8-15.  Dr. Lee has admitted

26   that he deleted everything that he had been working on at ViCHIP.  Kothe Decl., Ex. I (Lee

27   1/11/05 Depo), 50:13-21; Ex. S (H.S. Chen 10/04 Decl.), ¶ 3.  His effort to sabotage ViCHIP's

28   work cost the company well over $5000 in lost work product.  Furthermore, ViCHIP incurred

1   expenses assessing the damage to the file server and determining whether the files were

2   recoverable (some of them were not).  Hsi-Sheng Chen spent approximately 10 hours trying to

3   recover the files deleted by Dr. Lee.  Hu Decl., ¶ 10.

4        Theses expenses fall within the statute's definition of a "loss"[9] and are therefore sufficient

5   to constitute "damage" under sections 1030(e)(8) and 1030(g).  *See, e.g., United States v.*

6   *Middleton*, 231 F.3d 1207, 1213 (9th Cir. 2000) (instructing the jury that it could consider costs

7   that were a "natural and foreseeable result of Defendant's conduct," costs that were "reasonably

8   necessary" and costs that would "resecure the computer to avoid further damage."); *In re*

9   *DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 524 (S.D.N.Y. 2001) ("Clearly, any

10  economic losses plaintiffs bore in securing or remedying their systems in the wake of

11  DoubleClick's alleged CFAA violations would count towards § 1030(e)(8)(A)'s damage

12  threshold.").  Based on the undisputed facts establishing Dr. Lee violation of the CFAA, ViCHIP

13  is entitled to summary adjudication of this claim.

14
15       **C.**      **No Genuine Issue of Material Fact Exists as to ViCHIP's Claim that Dr. Lee Breached His Fiduciary Duty**

16       To prove its breach of fiduciary duty claim, ViCHIP must show: (1) the existence of a

17  fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the

18  breach.  *See Sonista, Inc. v. Hsieh*, 2005 WL 3113083, * 1 (N.D. Cal. Nov. 21, 2005) (*citing*

19  *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995)).  It is undisputed that Dr. Lee owed

20  ViCHIP fiduciary obligations as an officer, director and an employee.  Kothe Decl., Ex. G (Lee

21  Amended Answer), ¶ 19, 20.  As discussed in sections A and B above, Dr. Lee breached his

22  fiduciary obligation when he removed ViCHIP's patent files, deleted ViCHIP's confidential and

23  proprietary information from the ViCHIP file server and destroyed the executed copy of both his

24  Employee Invention Assignment and Confidentiality Agreement and the Patent Assignment form.

25  There is no dispute that Dr. Lee's malfeasance damaged ViCHIP and its ability to seek patent

26

27  [9] The statute defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or

28  information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  § 1030(e)(11).

1    protection for its technology.  ViCHIP is entitled to summary adjudication of its breach of

2    fiduciary duty claim against Dr. Lee.

3              **D.      No Genuine Issue of Material Fact Exists as to ViCHIP's Conversion Claim**

4              To establish the tort of conversion under California law, a plaintiff must show ownership

5    or right to possession of property, wrongful disposition of the property and damages.  *See Kremen*

6    *v. Online Classifieds, Inc.*, 337 F.3d 1024, 1029 (9th Cir. 2002).  ViCHIP can establish each

7    element of this cause of action based on Dr. Lee's admission that he took ViCHIP's Provisional

8    Patent Application and used it to file his own utility patents applications, which claimed priority

9    to the ViCHIP provisional.  As discussed in sections IV.A and IV.D above, the undisputed facts

10   relating to Dr. Lee's multiple assignments of his intellectual property rights to ViCHIP

11   demonstrate that ViCHIP is the rightful owner of the June 23, 2003 Provisional Patent

12   Application.  There is no dispute that Dr. Lee used ViCHIP's property, the Provisional Patent

13   Application and the related patent files, to file utility patents in his own name.  Kothe Decl., Ex.

14   G (Lee Amended Answer), ¶ 66; Ex. I (Lee 1/11/05 Depo), 74:15-76:16.  As a result, ViCHIP's

15   rights to its intellectual property, which were once free and clear, have been encumbered by the

16   competing patent applications filed by Dr. Lee.  ViCHIP is entitled to summary adjudication of its

17   conversion claim against Dr. Lee.

18   **VII.    CONCLUSION**

19             For the foregoing reasons ViCHIP respectfully requests that the Court grant summary

20   judgment of Dr. Lee's counterclaims against ViCHIP, and summary adjudication on the issue of

21   Dr. Lee's liability for ViCHIP's claims for breach of contract, breach of fiduciary duty, violation

22   of the Computer Fraud and Abuse Act and conversion.

23

24   DATED:   March 22, 2006              ORRICK, HERRINGTON & SUTCLIFFE LLP

25

26                                       By:  _____/s/ Lesley E. Kothe_____

27                                              Lesley E. Kothe
                                             Attorneys for ViCHIP Corporation

28