ROBERT S. SHWARTS (STATE BAR NO. 196803)
SEAN LINCOLN (STATE BAR NO. 136387)
LESLEY E. KOTHE (STATE BAR NO. 209512)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Telephone:    415-773-5700
Facsimile:    415-773-5759

Attorneys for Plaintiff
VICHIP CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VICHIP CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>TSU-CHANG LEE,<br><br>    Defendant and<br>    Counterclaimant. | Case No.  C-04-02914 PJH<br><br><br><br>**VICHIP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| TSU-CHANG LEE,<br><br>    Counterclaimant,<br><br>    v.<br><br>VICHIP CORPORATION, and VICHIP CORPORATION, LTD.,<br><br>    Counterclaim Defendants. | **Date:**        May 17, 2006<br>**Time:**       9:00 a.m.<br>**Courtroom:** 3, 17th Floor<br>**Judge:**      Phyllis J. Hamilton |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. DISCUSSION .................................................................................................................... 3

    A. Lee's Argument Regarding When He Conceived of Ideas He Contributed to ViCHIP's Viper Project Is Irrelevant to This Motion ........................................ 3

    B. Lee Has No Competent Evidence or Viable Argument that His Agreements with ViCHIP Are Not Enforceable ........................................................................ 5

        1. Lee Cannot Defeat Summary Judgment By Claiming He Didn't Read Or Understand the Agreements ............................................................ 5

        2. The Undisputed Evidence Shows The Agreements Were Supported By Consideration ................................................................................. 6

        3. Lee's Legal Authorities Regarding "Consideration" Do Not Support His Position ........................................................................................... 8

    C. Lee's Other Arguments In His Opposition Are Similarly Meritless ....................... 9

        1. Lee' Intentional Interference Claim Is Improper As A Matter of Law ..................................................................................................... 9

        2. The Issue of Ownership of the Patent Application and the Corresponding Invention Should be Decided Now, But the Issue of Inventorship Need Not Be Decided By This Court ................................. 11

        3. Lee's Arguments that His Actions Were All for ViCHIP's Benefit Are Inconsistent With the Undisputed Facts, Do Not Excuse His Behavior, and Make No Sense .............................................................. 11

III. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bailey v. Chattem, Inc.*,
  684 F. 2d. 386 (6th Cir. 1982) .................................................................................................. 8

*Connors v. Howard Johnson*,
  30 Mass. App. Ct. 603 (1991) .................................................................................................. 8

*Cubic Corp. v. Marty* ,
  185 Cal. App. 3d 438 (1986) .................................................................................................... 7

*Fox v. Kingsland*,
  81 F. Supp. 433 (D.C. Cir. 1948) ............................................................................................. 8

*Gaillard v. Natomas Co.*,
  208 Cal. App. 3d 1250 (1989) ................................................................................................ 12

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
  271 F.3d 825 (9th Cir. 2001) .................................................................................................. 10

*National Rural Telecommunications Cooperative v. DirectTV, Inc.*,
  319 F. Supp. 2d 1059 (C.D. CA 2003) ............................................................................ 10, 11

*Travelers Casualty & Surety Co. of Amer. v. Amoroso*,
  2004 WL 1918890 (N. D. Cal. Aug. 24, 2004) ...................................................................... 10

*Troy Iron & Nail Factory v. Corning*,
  55 U.S. 193 (1852) ................................................................................................................... 9

*United States v. Galindo*,
  871 F.2d 99 (9th Cir. 1989) .................................................................................................... 12

*Upton v. Tribilcock*,
  91 U.S. 45 (1875) ..................................................................................................................... 6

*Welles v. Acad. of Motion Picture Arts & Sciences*,
  2004 U.S. Dist. LEXIS 5756 (C.D. Cal. March 4, 2004) ........................................................ 5

## TREATISES

Friedman, C. Hugh , *California Practice Guide: Corporations*, (Rutter Group
  2006), at § 6:245.3 ................................................................................................................. 12

I. **<u>INTRODUCTION</u>**

Far from providing any evidence of a disputed material fact, Tsu-Chang Lee's Opposition to ViCHIP's Motion for Summary Judgment ("Lee Opp." or "Lee Opposition") admits all of the facts demonstrating that ViCHIP's motion for summary judgment should be granted. Lee's Opposition papers *admit*:

- Lee signed the ViCHIP Employee Invention Assignment Agreement and Confidentiality Agreement in or around April 2003. Lee Opp. at 17:4.

- Lee worked with other engineers at ViCHIP to develop the Viper codec. Lee Opp. at 6:4-8.

- Lee signed the Assignment of U.S. Original Patent Application form ("Patent Assignment") in or around June 23, 2003, along with four other co-inventors who worked for ViCHIP, assigning to ViCHIP all rights to the invention and to the patent application. Lee Decl. ¶32.

- In April and May 2004, Lee found out that the management of ViCHIP Taiwan was going to make changes in the management and operation of ViCHIP. Lee Opp. at 8:24-25; 10:9-12.

- Thereafter, Lee took and destroyed his executed ViCHIP Employee Invention Assignment Agreement and Confidentiality Agreement, as well as the original and all copies of the executed Patent Assignment. Lee Decl. ¶25, Lee Opp. at 24:3-27

- Lee took the patent application files from ViCHIP's files, and directed ViCHIP's patent counsel to deliver ViCHIP's patent files to him as well, all of which he removed from ViCHIP's offices. Lee Opp. 13:1-13.

- Lee also then accessed ViCHIP's computer systems and systematically deleted files relating to ViCHIP's patent application and files he had worked on at ViCHIP. Lee Opp. 13:11-13.

- After Lee was terminated from his employment at ViCHIP on June 4, 2004, Lee then took the patent files and used them to file utility applications for his own benefit claiming himself as the sole owner and inventor of the inventions. Lee Opp. 13:14-22.

These facts alone demonstrate that summary judgment is appropriate on all of Lee's counterclaims and on Lee's liability for ViCHIP's claims for breach of contract, violation of the Computer Fraud and Abuse Act, breach of fiduciary duty, and conversion.

Instead of providing any evidence disputing these facts, Lee's Opposition attempts to obfuscate them by rehashing his alleged tale of woe regarding his dispute with third parties 3S and Sesoda. Indeed, Lee spends most of the brief and nearly all of the first eleven pages of his

1   Opposition recounting his arguments that his partners to the Joint Venture Agreement (JVA)
2   should have given him more equity in ViCHIP Taiwan or otherwise should not have fired him
3   from ViCHIP. All of these arguments simply ignore the fact that neither 3S nor Sesoda are
4   parties to this action. This Court *denied* Lee's request to add counterclaims against 3S and
5   Sesoda in this case. Lee's dispute with 3S and Sesoda and ViCHIP Taiwan is being heard in
6   Taiwan pursuant to an arbitration clause in the JVA, and does not constitute a factual or legal
7   defense in this case.
8         Put another way, even assuming Lee's arguments that he is owed more equity or cash
9   from his joint venture partners had any merit, none of that would excuse his theft of ViCHIP's
10  intellectual property and destruction of ViCHIP's computer files. If Lee were correct that he was
11  entitled to greater ownership in ViCHIP Taiwan under the JVA, he should have left ViCHIP's
12  property intact and resolved his dispute in Taiwan by legal means. An employee – much less an
13  officer – of, say, a grocery store, who is fired and claims he is owed more money under a contract
14  with the shareholders of the store, cannot legally trash the back office, rip up his agreements and
15  steal things from the shelves on the way out the door. Yet that is what Lee has done here.
16        All of Lee's hand-waving about *when* he conceived of an idea he contributed to ViCHIP's
17  Viper codec project is similarly irrelevant. His execution of the Patent Assignment assigns to
18  ViCHIP *everything* in the invention as described in the patent application, as well as the patent
19  application itself. The entire invention belongs to ViCHIP, whether Lee thought of some of it
20  two weeks or two years before he signed the Patent Assignment. Lee's other agreements with
21  ViCHIP confirm his obligations to preserve ViCHIP's confidential information and to assign
22  rights to inventions, but the Patent Assignment itself ends any relevance of whether he thought of
23  a piece of the Viper codec before or after he signed the Employee Invention Assignment
24  Agreement and Confidentiality Agreement.
25        As for the Patent Assignment, again, there are no relevant, material facts in dispute. Lee
26  signed it. He admitted signing it. His claim not to have read it before signing it is not a valid
27  defense to ViCHIP's claims or to this motion. His unsupported argument that the agreement was
28  void for lack of consideration ignores all the evidence of consideration, including the agreement

1    itself, as well as the substantial salary ViCHIP paid Lee, and other consideration such as the
2    services of ViCHIP's patent counsel.

3    Moreover, Lee admits – indeed it is the centerpiece of his argument – that he contributed
4    the ideas he had (whether pre-existing or not) to ViCHIP's Viper codec pursuant to the JVA.
5    According to Lee, *if the Viper codec met certain milestones,* Lee and the other ViCHIP engineers
6    would be entitled to a bigger piece of equity ownership in ViCHIP Taiwan.  Lee affirmatively
7    asserts that he contributed what he contributed to the ViCHIP codec in an effort to help meet
8    these milestones.  Thus, Lee's own argument demonstrates he received consideration – the
9    agreement to provide Lee and others with equity in ViCHIP's parent company if the Viper codec
10   met the milestones – for his contributions.  Even if, as Lee claims, he did not ultimately get all of
11   what he thought he should get from his joint venture partners in 2004, this does not invalidate his
12   Patent Assignment (signed a year earlier).  If Lee were correct, he may have a right to bring a
13   claim in an arbitration in Taiwan – which he has brought and is pursuing.  Lee's possible claims
14   under the JVA do not, however, entitle him to "unilaterally rescind" the Patent Assignment or
15   other agreements he signed with ViCHIP.

16   In the end, Lee's repeated insistence that all of the agreements he signed with ViCHIP just
17   do not apply to him is as untenable as it is bizarre.  He admitted executing the agreements.  He
18   admitted receiving a salary and other benefits from ViCHIP.   His bald-faced assertion that he
19   could rescind his own agreements whenever he felt like it has no support in the law.  Yet, Lee has
20   no other defense and no other basis for maintaining his claims against ViCHIP.  It is time for
21   those issues to be decided by summary judgment.

22   **II.    DISCUSSION**

23         **A.    Lee's Argument Regarding When He Conceived of Ideas He Contributed to
                   ViCHIP's Viper Project Is Irrelevant to This Motion**
24

25   Aside from Lee's lengthy digression into his dispute with 3S and Sesoda, his primary
26   defense to this motion is that all of the agreements he signed (and admits signing) with ViCHIP
27   should be ignored.  To support this position, he argues that some of what he contributed to
28   ViCHIP's Viper project was something he actually conceived of before signing the agreements

1  with ViCHIP. As ViCHIP's opening papers made clear, the issue of when Lee conceived of
2  some of the ideas he contributed to the Viper codec project is *irrelevant* to this motion.

3  Even accepting Lee's version of events, his admission that he assigned the invention and
4  the provisional patent application to ViCHIP destroys any argument he might make about
5  whether he conceived of a piece of the Viper codec invention before or after he became employed
6  by ViCHIP. The undisputed fact is that he signed the Patent Assignment. By definition, that
7  Patent Assignment covered an invention that had already occurred. Under the unambiguous
8  terms of that Patent Assignment, ViCHIP owns the invention as well as the provisional patent
9  application, no matter when the co-inventors came up with the invention. *See* Declaration of
10 Lesley Kothe In Support Of ViCHIP's Motion for Summary Judgment ("Kothe Decl."), Ex. N.
11 As the Patent Assignment states, in part, "the ASSIGNOR, does hereby sell, assign and transfer
12 unto ASSIGNEE...the full and exclusive right, title and interest to said invention[1] in the United
13 States and all foreign countries, as described in the aforesaid application, and to the said
14 application and to all continuations, divisions, reissues and substitutes of said application....". *Id.*
15 Lee has not contended that this assignment was ambiguous in any way. Thus, this Court should
16 interpret the Patent Assignment according to its plain meaning, find that the invention, the
17 provisional patent application and any subsequent patent applications that claim priority to the
18 provisional belong to ViCHIP, and grant ViCHIP's summary judgment motion.[2]

---

[1] The "said invention" is identified in the Patent Assignment as the invention subject to the patent application entitled, "Method and Apparatus for Adaptive Multi-Dimensional Signal Sequences." *Id*.

[2] Lee relies on his assertion that he conceived of an idea prior to joining ViCHIP that he later contributed to the Viper codec project to claim that the ViCHIP Employee Invention Assignment and Confidentiality Agreement cannot be read to require him to assign that idea to ViCHIP. Though unnecessary to the resolution of this motion, Lee is mistaken, even if his claimed timeline is correct. According to Lee's own sworn Declaration, he disclosed his earlier-conceived idea and, "[t]hereafter, the ViCHIP engineers, with my assistance and supervision, implemented my technology in the new chip's C model, verification testbench, and ultimately the logic design of the chip." Declaration of Tsu-Chang Lee In Support Of Opposition to ViCHIP's Motion for Summary Judgment ("Lee Decl."), ¶10. However, Lee's Employee Invention Assignment and Confidentiality Agreement does not just apply to inventions *conceived* while working at ViCHIP, but also expressly requires assignment of all inventions that Lee might "make or conceive ***or first reduce to practice*** or create, either alone or jointly with others, during the period of [his]

     **B.**    **Lee Has No Competent Evidence or Viable Argument that His Agreements with ViCHIP Are Not Enforceable**

Perhaps recognizing the irrelevancy of his argument regarding the timing of the invention, Lee then attempts to claim that the Patent Assignment (and all the other agreements with ViCHIP that he signed) should not be enforced. Lee claims that he signed the Patent Assignment, "without reading it, without receiving any legal advice, and without any consideration." Lee Declaration, ¶ 32. Such post-hoc nonsense does not create a factual dispute, nor does it constitute a proper legal basis for denying ViCHIP's motion.

     **1.**    **Lee Cannot Defeat Summary Judgment By Claiming He Didn't Read Or Understand the Agreements**

Lee's "I didn't read it" or "I didn't get legal advice[3]" arguments do not invalidate his agreements, nor do they excuse his breach. Coming from the man who was the CEO of ViCHIP, who directed his co-inventors to sign the Patent Assignment agreement, and who signed the various employment agreements with these co-inventors on behalf of ViCHIP, Lee's arguments do not pass the straight face test. However, the Court here does not have to decide if Lee's factual assertion that he didn't read the agreements he signed is conceivably true, because the law does not countenance such tactics. *See, e.g.*, *Welles v. Acad. of Motion Picture Arts & Sciences*,

---

employment...". Kothe Decl., Ex. H, Section 2 (emphasis added). Lee's admission that ViCHIP's engineers "implemented" his idea and thus reduced it to practice at ViCHIP shows that ViCHIP's motion should be granted under the Employee Invention Assignment and Confidentiality Agreement, and not just the Patent Assignment.

[3] Lee's Opposition includes a declaration from ViCHIP's former patent counsel, David Jaffer, who improperly discloses privileged communications in an apparent attempt to defend Lee's decision to split the patent application into separate applications (ViCHIP will be filing a separate document objecting to the "evidence" contained in Mr. Jaffer's declaration). But Jaffer's declaration does not support Lee's argument that the Patent Assignment should not be enforced, nor does the Jaffer declaration excuse Lee's attempt to assert that he was the sole inventor and owner of the inventions contained in the Viper codec assigned to ViCHIP by the Patent Assignment. In any event, Lee's submission of a declaration from the ViCHIP patent counsel with whom he was working renders Lee's "I didn't get legal advice" argument rather pointless. Neither Lee nor Jaffer give any reason why Lee could not have gotten further legal advice on any patent issue.

2004 U.S. Dist. LEXIS 5756, at *22-23 (C.D. Cal. March 4, 2004).  As ViCHIP pointed out during the preliminary injunction proceedings, Lee's arguments have been rejected by courts for well over a century.  As the Supreme Court stated in *Upton v. Tribilcock*, 91 U.S. 45 (1875),

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.  If this were permitted, contracts would not be worth the paper on which they are written.  But such is not the law.  A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.

*Id*. at 45, 50.  Lee's arguments fail as a matter of well-settled law.

### 2. The Undisputed Evidence Shows The Agreements Were Supported By Consideration

Similarly, Lee's "no consideration" argument cannot defeat this motion.  Lee provides no evidentiary support for his argument, but only argues that the express understanding in the agreements that there *was* consideration is not completely dispositive.  Even if Lee were correct about the law regarding contract language regarding consideration, he points to no evidence to undercut the clear language of the agreements.  Indeed, the evidence demonstrates that the agreements, in particular the Patent Assignment, were supported by consideration.  For example, both before and after he signed the Patent Assignment, Lee remained employed by ViCHIP and received substantial wages and benefits from the company.[4]  *See* Reply Declaration of Tina Lu In Support of ViCHIP's Motion for Summary Judgment ("Lu Decl."), ¶¶ 2, 3, Exs. B and C (Lee's W-2s for 2003 and 2004, listing him as an employee).  Dr. Lee admitted in deposition that he was paid an annual salary by ViCHIP.  *See* Kothe Decl., Ex. O (Lee 2/25/06 Depo.), 70:8-15.  In addition, Lee admits that the work done to file the provisional patent application was done by

---

[4] Lee's Opposition asserts, without citation, that, "Dr. Lee was never a ViCHIP employee."  Lee Opp. at 22-23.  This assertion is belied by his W-2s from ViCHIP, as well as by his execution of the ViCHIP *Employee* Invention Assignment Agreement and Confidentiality Agreement , which begins, "In consideration of, and as a condition of my *employment* with ViCHIP...."  Kothe Decl. Ex. H (emphasis added).  Lee does admit that he was an officer and director of ViCHIP.  Lee Opp. at 23.  Whether he wants to call himself an employee or something else, Lee does not deny that he stayed in that position and received compensation from ViCHIP both before and after he signed the Patent Assignment.

*ViCHIP's* patent counsel. Lee Opp. at 12:4-5. Lee does not dispute that he benefited (and thus received consideration) from the filing of ViCHIP's provisional patent. In fact, he went to substantial efforts to steal the patent application so he could use it for his own personal purposes after he was fired.

Moreover, if Lee were correct that the Patent Assignment and other agreements were void *ab initio* for lack of consideration, he would not have needed to steal them and rip them up. Lee's admitted actions after he found out he was going to be fired demonstrate the contracts were valid and enforceable, notwithstanding the post-hoc, self-serving arguments in his opposition.

Finally, Lee's Opposition admits that he *did* receive consideration for the Patent Assignment, but Lee disagrees about how *much* consideration he should have received. Lee argues that he should receive 35% of the Viper codec profits under his Joint Venture Agreement with the owners of ViCHIP Taiwan, rather than the lesser percentage he claims he was provided under the JVA. As Lee states, "The patent assignment ... is rescinded for failure of consideration – denying Dr.Lee his right to 35% of the MPEG 4 Viper Codec profits." Lee Opp. at 24-25. Under the JVA, Lee received initial equity in ViCHIP Taiwan. *See* Kothe Decl., Ex. B. What additional equity or cash, if any, Lee should receive under the JVA is being resolved in the Taiwan arbitration. However, the undisputed fact remains that Dr. Lee did receive consideration for his execution of his Patent Assignment and other agreements with ViCHIP. The law does not require any particular amount of consideration for a contract to be enforceable. *See*, *e.g*., *Cubic Corp. v. Marty* , 185 Cal. App. 3d 438 (1986) (ongoing employment and token bonus was adequate consideration for invention assignment agreement). Lee's admission that he contributed his ideas to the ViCHIP Viper codec project in order to try to help the project meet certain milestones that would entitle him to even greater compensation means there was, in fact, consideration for the Patent Assignment.

In addition, even if Lee were correct that, in 2004, his joint venture partners "denied Dr. Lee his right to 35% of the MPEG 4 Viper Codec profits," this would not change the fact that there was consideration for the Patent Assignment when it was signed in 2003. The adequacy of consideration is to be determined in light of conditions existing at the time a contract is made.

*Cubic Corp.,* 185 Cal. App. 3d at 448.

### 3. Lee's Legal Authorities Regarding "Consideration" Do Not Support His Position

The cases cited by Lee do not support invalidating the Patent Assignment. In fact, Lee's citation to California Civil Code section 1614 ("A written instrument is presumptive evidence of consideration") highlights the untenability of his argument. Lee points to three cases for the proposition that "[c]ourts consistently refuse to enforce assignments that purport to assign preexisting inventions for which no consideration is established." Lee Opp. at 18:11-13. However, *Fox v. Kingsland*, 81 F. Supp. 433 (D.C. Cir. 1948), had nothing to do with an assignment, but instead involved whether the inventor was barred from filing his patent because he worked for the Patent and Trademark Office when he conceived of his invention. The court noted, in passing, that the inventor filed for his patent before going to work for a new employer that required an invention assignment agreement, but noted that, "the [inventor's] position in this regard is not before the Court in this suit ... ." *Id.* at 437-438.

Similarly, *Bailey v. Chattem, Inc.*, 684 F. 2d. 386 (6th Cir. 1982), did not involve any challenge to a patent assignment. Indeed, the inventor in *Bailey* admitted that he had executed the patent assignment, but claimed that he had not received what he had been promised in exchange for his invention. The patent assignment in that case became at issue over where it was signed and whether it was complete when signed, for purposes of a choice of law analysis, not over whether it was enforceable. *Id.* at 393-394.

Finally, *Connors v. Howard Johnson*, 30 Mass. App. Ct. 603 (1991), again had nothing to do with the validity of a patent assignment. In *Connors*, an inventor of ice cream flavors signed an agreement with a company giving rights to any new flavors he developed, but not to the old flavors he had developed before joining the company. Nonetheless, the company used both the new and the old flavors for decades, including many years both before and after the inventor's death. The Massachusetts appellate court found that "the defendant's use of the formulas was obviously consensual and of right, and nothing in the record shows that the right was the subject of restriction or condition." *Id.* at 605. Nothing in the *Connors* case, nor any of the other cases

1  cited by Lee,[5] supports his argument that the signed and executed Patent Assignment agreement
2  should not be enforced.

3      As detailed in ViCHIP's opening brief, the Patent Assignment unambiguously assigned
4  ownership of the invention and the patent application to ViCHIP.  Thus, all of Dr. Lee's claims –
5  all of which are predicated on his claim of ownership of the patent application and the underlying
6  invention in it – must fail.  Similarly, Lee's defense to ViCHIP's affirmative claims at issue in
7  this motion must also fail.  The Patent Assignment and other contracts between Lee and ViCHIP
8  provide that ViCHIP owns the patent-pending invention.  Lee's decision to take the information
9  relating to that invention and the patent application from ViCHIP (and destroy ViCHIP's
10 computer files containing that information) was a breach of his contract with ViCHIP, a breach of
11 his fiduciary duty, conversion of ViCHIP's property, and a violation of the Computer Fraud and
12 Abuse Act.  No facts need to be tried to find for ViCHIP on all of these claims.

13     **C.**    **Lee's Other Arguments In His Opposition Are Similarly Meritless.**

14     The rest of Lee's Opposition offers no evidence of any material factual dispute.  Instead,
15 the Opposition tosses out a number of  baseless legal arguments.

16     **1.**    **Lee' Intentional Interference Claim Is Improper As A Matter of Law.**

17     ViCHIP's opening brief demonstrated that an intentional interference claim such as Lee's
18 can only be brought against a *stranger* to that relationship, and further showed that, in fact,
19 ViCHIP was created by the execution of the contract that Lee complains was interfered with (the
20 JVA) and thus cannot be a "stranger" subject to Lee's claim.  Lee's Opposition offers no factual
21 assertions at all to challenge ViCHIP's evidence, but merely disagrees with the import of the legal

---

[5] Lee's citation to *Troy Iron & Nail Factory v. Corning*, 55 U.S. 193 (1852), is a mystery.  As best as can be gleaned from the Court's opinion in the vernacular of the day, the Court found that an assignment agreement between two parties had no consideration because the record showed that the owner of the patent had previously agreed to assign that patent to the other party as part of an earlier patent assignment.  Thus, the *Troy* case does not support Lee's arguments here.  Indeed, that case undercuts Lee's argument that he was entitled to additional compensation for signing the Patent Assignment, since he had previously signed the ViCHIP Employee Invention Assignment Agreement and Confidentiality Agreement, which already obligated him to assign inventions to ViCHIP.

1  authorities cited by ViCHIP.  Lee Opp. at 20-22.

2  Of course, there is no dispute that ViCHIP was not a party to the JVA.  However, there is
3  also no dispute that ViCHIP Taiwan and ViCHIP were created by the JVA and the joint venture
4  partners.  And, as Lee's Opposition demonstrates at length, Lee's complaint against his joint
5  venture partners under the JVA is that they took actions to remove him from his positions of
6  authority at ViCHIP and deprived him of ownership rights in ViCHIP Taiwan.  ViCHIP and
7  ViCHIP Taiwan are the entire focus of the JVA , according to Lee.  Lee cannot legitimately
8  contend that ViCHIP is a "stranger" to that relationship.

9  In an attempt to save his interference with contractual relations claim, Dr. Lee asks this
10 Court to ignore a "core" principle of California law as well as the Ninth Circuit's threshold test
11 for determining whether a defendant is a stranger to an economic relationship and thus cannot be
12 held liable for tortious interference.  In the *Marin Tug* case, the Ninth Circuit made clear that
13 "California law has long recognized that the core of intentional interference business torts is
14 interference with an economic relationship by a third-party *stranger* to that relationship, so that an
15 entity with a direct interest or involvement in that relationship is not usually liable for harm
16 caused by pursuit of its interests."  *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271
17 F.3d 825, 832 (9th Cir. 2001).  Dr. Lee does not (and cannot) offer any evidence to rebut the
18 undisputed fact that ViCHIP, an entity created by Dr. Lee and his joint venture partners to
19 implement the purposes of the JVA, is not a "stranger" to the JVA.

20 Lee's discussion of the authorities cited by ViCHIP does not change that analysis.
21 Though Lee suggests that only a party to the contract can be "not a stranger," the cases
22 demonstrate the opposite.  For example, in both the cases of *National Rural Telecommunications*
23 *Cooperative v. DirectTV, Inc*., 319 F. Supp. 2d 1059 (C.D. CA 2003) (granting partial summary
24 judgment) and *Travelers Casualty & Surety Co. of Amer. v. Amoroso*, 2004 WL 1918890, *3 (N.
25 D. Cal. Aug. 24, 2004)  (granting motion to dismiss on tortious interference claim), the courts
26 made clear that California law bars tortious interference claims against parties with a "direct
27 interest or involvement in [the] relationship," whether or not they are parties to the contract with
28 which they supposedly interfered.  *Id*.  Indeed, the *DirectTV* court highlighted "the Ninth

Circuit's clear identification of the stranger analysis as one of the core principles of California law...".  *DirectTv*, 319 F. Supp. 2d at 1071.   ViCHIP cited both of these cases in its opening brief, but Lee's Opposition fails to mention them, let alone distinguish them.

### 2. The Issue of Ownership of the Patent Application and the Corresponding Invention Should be Decided Now, But the Issue of Inventorship Need Not Be Decided By This Court.

Lee's Opposition repeatedly confuses the issue of "inventorship" with the issue of "ownership."  Both Lee's claims and ViCHIP's claims at issue in this motion involve the question of which party *owns* the invention and patent application under the Patent Assignment and other agreements between the parties.  Whether Lee is the sole inventor or the joint inventor of some or all of that invention doesn't change the issue of ViCHIP's ownership.  Whatever inventive role Lee played in the Viper codec, he assigned it to ViCHIP and ViCHIP owns it.  Given Lee's admission that the utility patent applications he filed subsume the claims contained in ViCHIP's Provisional Patent Application, Kothe Decl., Ex. G (Lee Amended Answer), Ex. I (Lee 1/11/05 Depo) at 74:15-76:16, ViCHIP is entitled to summary judgment declaring ViCHIP's rights to the pending patent applications.

Whether the ultimate patent or patents that issue from the applications on file by the parties regarding the Viper codec list Lee alone, or the team of ViCHIP engineers who all signed the Patent Assignment as inventors, is an issue for the PTO.  The resolution of the inventorship issue is not necessary to decide ViCHIP's motion, and it need not be decided here.

### 3. Lee's Arguments that His Actions Were All for ViCHIP's Benefit Are Inconsistent With the Undisputed Facts, Do Not Excuse His Behavior, and Make No Sense.

After 22 pages of argument in Lee's Opposition that his actions were all proper because he "unilaterally rescinded" the agreements he signed and thus *he* owned all the intellectual property at issue, Lee's Opposition suddenly reverses itself in pages 23 through 25 and argues that all of Lee's actions *were for the benefit of ViCHIP*.  He asserts that he stole ViCHIP's patent files "to protect [ViCHIP's] minority shareholders." Lee Opp. at 23:11-12.  This rather stunning *non-sequitur* is, of course, belied by the fact that Lee then took the patent files and filed patents in his own name and has refused to transfer them to ViCHIP.  If Lee believed ViCHIP's

1    management was doing something improper, he had recourse through legal means.  Stealing and
2    destroying ViCHIP's property and then using what he took for his own personal benefit is hardly
3    for ViCHIP's benefit.
4        Lee next argues that he cannot possibly be liable under the Computer Fraud and Abuse
5    Act because, when he was busy destroying ViCHIP's computer files, he was still the CEO and
6    director of ViCHIP. Lee Opp. at 23.  Lee provides no authority for this assertion, because there is
7    none.  Moreover, Lee ignores ViCHIP's opening argument that Lee's authority to access
8    ViCHIP's server terminated the minute he breached the duty of loyalty that agency law imposes
9    on an employee.  *See United States v. Galindo*, 871 F.2d 99, 101 (9th Cir. 1989) ("When an agent
10   acts contrary to the interests of the principal, the agency relationship ceases.").  Such a massive
11   breach of his fiduciary duties, especially his duty of loyalty, to the company cannot be "self-
12   authorized" just because he was the CEO.  Lee knew he was about to be fired – indeed, he admits
13   that the impending reorganization was the reason he accessed and destroyed the files.  Lee Opp.
14   at 23:3-13.  The fact that Lee still had access to ViCHIP's computer system did not give him
15   authority to destroy files on that system.
16       Finally, Lee argues that he cannot be held liable for breach of fiduciary duty because his
17   actions were "justified" by the business judgment rule.  Lee Opp. at 24:9-19.  Again, Lee provides
18   no support for the notion that a fiduciary of the company can take company property for his own
19   benefit, destroy company files, continue to use the company property for his own purposes
20   thereafter, and then stand behind the shield of the "business judgment" rule.   Of course, the
21   business judgment rule does not protect such behavior.  *See*, *e.g.*, *Gaillard v. Natomas Co.*, 208
22   Cal. App. 3d 1250, 1265-66 (1989) (business judgment rule does not apply to directors securing
23   benefits for themselves, but only to *disinterested* directors).  Under basic hornbook law, "To be
24   protected by the business judgment rule, directors' decisions must be 'disinterested and
25   independent'– *i.e.*, made without self-interest or undue influence of others. Where a director has
26   (directly or indirectly) a *personal interest* in a corporate decision, his or her judgment on the
27   matter is *not* entitled to judicial deference under the rule." Friedman, C. Hugh , *California*
28   *Practice Guide: Corporations*, (Rutter Group 2006), at § 6:245.3.  Lee's taking of documents

from ViCHIP for his own personal use in filing a patent application for himself, and his destruction of ViCHIP's computer files, cannot possibly qualify for protection under the business judgment rule.

## III. CONCLUSION

For all the foregoing reasons, ViCHIP requests that the Court grant ViCHIP's motion for summary judgment and narrow this case to the few remaining issues that require a trial.

DATED: April 19, 2006                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By:     */s/ Lesley E. Kothe*
             Lesley E. Kothe
         Attorneys for ViCHIP Corporation