UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ViCHIP CORPORATION,

    Plaintiff,

    v.

TSU-CHANG LEE,

    Defendant.

_____/

No. C 04-2914 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff's motion for summary judgment came on for hearing before this court on May 17, 2006. Plaintiff ViChip Corporation ("ViChip") appeared through its counsel, Lesley E. Kothe, Robert Shwarts, and Sean A. Lincoln. Defendant, Dr. Tsu-Chang Lee ("Lee"), appeared through his counsel, G. Whitney Leigh. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiff's motion for summary judgment as follows, and for the reasons stated at the hearing.

## **BACKGROUND**

This action stems from a dispute between plaintiff ViChip and its former CEO – defendant Lee – in which the corporation alleges that the latter stole confidential and proprietary information from the company. ViChip is an electrical engineering company involved in the manufacture and sale of integrated circuits (i.e., microelectronic semiconductor devices used for electronic communications). Defendant Lee is not only ViChip's former CEO, but also its former president, secretary, CFO, and sole director. Lee is also the current president of an independent company known as ViVoDa Communications ("ViVoDa"), a position he has held at all times relevant to the instant

action.

### A. Background Allegations

On November 20, 2002, Lee and ViVoDa entered into a joint venture agreement with two other Taiwanese companies, Solid State System Corp. ("3S") and SESODA Corporation ("Sesoda"). See Declaration of Lesley Kothe in Support of ViChip's Motion for Summary Judgment ("Kothe Decl."), Ex. B. Under the terms of the joint venture agreement, the parties agreed to research, develop, and outsource the production of a particular type of integrated circuit. To that end, the joint venturers created ViChip Corporation Ltd., a Taiwanese corporation ("ViChip Taiwan"). See Kothe Decl., Ex. A. Lee was named the general manager of ViChip Taiwan, and a member of its board of directors. See id. In December 2002, the ViChip Taiwan board incorporated a wholly-owned subsidiary based in California – plaintiff ViChip. Lee became ViChip's president, CEO, and sole director. This was in addition to Lee's status as chairman of the board of ViVoDa.

After ViChip was incorporated, Lee assembled an engineering team to begin work on the products contemplated by the joint venture agreement. One of the efforts to develop integrated circuit technology – which was to be used in video encoding/decoding and compression/decompression – was referred to as the "Viper Project."

In order to protect the integrity of its work, ViChip had numerous security measures in place to protect and prevent the unauthorized disclosure and use of its confidential and proprietary information and trade secrets. For example, each employee was required to sign an Employee Invention Assignment and Confidentiality Agreement ("Employee Agreement"). See Kothe Decl., Exs. F, H, T. The Employee Agreement contained both (1) an assignment provision in which employees agreed to assign to ViChip all rights to technologies developed while working for the company (as well as other intellectual property rights in any relevant invention); and (2) a confidentiality provision, in which employees agreed to keep confidential any proprietary information they possessed, and to return all proprietary information to ViChip in the event of termination. See id., Ex H at 2-3.
2

In April 2003, Lee himself executed an Employee Agreement. <u>See</u> Kothe Decl., Ex. I.

Prior to his execution of the Employee Agreement, Lee had also signed a consulting agreement with ViChip on January 10, 2003 ("Consulting Agreement"), whereby he agreed, on behalf of ViVoDa, to become a consultant for ViChip. <u>See</u> Kothe Decl., Ex. C. Pursuant to the agreement, ViChip agreed to pay ViVoDa for Lee's consulting work, and in exchange, Lee assigned all rights to his and ViVoDa's work product to ViChip. <u>Id</u>.

On June 23, 2003, ViChip filed a provisional patent application with the Patent and Trademark Office ("PTO") in connection with the invention that resulted from ViChip's work on the Viper Product (i.e., the "Viper chip"). <u>See</u> Kothe Decl., Ex. K. The provisional application claimed as an invention the "core video codec technology" upon which ViChip's Viper chip is based. <u>Id</u>., Ex. E at ¶ 5. The provisional application named 5 engineers as inventors, including Lee. In connection with the provisional application, ViChip's patent counsel, David Jaffer, also sent a U.S. patent assignment form to Lee, in which all five inventors were listed. <u>See id</u>., Ex. N. All five inventors, including Lee, signed the form, which exclusively assigned all their rights in the Viper chip invention to ViChip. <u>See</u> Kothe Decl., Exs. N; I at 56:13-57:2.

In spring of 2004, Tim Hu, the Chairman of ViChip and ViChip Taiwan, allegedly learned for the first time of the nature of Lee's continuing involvement with ViVoDa while a current officer and director of ViChip, as well as the existence of what he deemed "questionable" contracts that Lee had entered into with ViChip on behalf of ViVoDa. See Declaration of Tim Hu in Support of ViChip's Motion for Summary Judgment (" Hu Decl."), ¶ 5. Mr. Hu also learned that Lee had used certain ViChip funds for Lee's attendance at a trade show on behalf of ViVoDa. <u>See</u> Kothe Decl., Ex. O at 108, 134-135, 136. Accordingly, on May 13, 2004, Mr. Hu and ViChip Taiwan's board of directors decided that Lee should be removed from his positions with ViChip, and Lee was replaced on ViChip's board with 3 new members. <u>See</u> Hu Decl., ¶¶ 5, 9; Kothe Decl., Ex. N. The next day, Mr. Hu met with Lee and informed him that ViChip Taiwan wanted him to step down from his

3

position at ViChip.  Kothe Decl., Exs. O at 138-141, Ex. A at ¶¶ 19-20.

In late May 2004, after the above meeting with Mr. Hu, Lee decided to split ViChip's patent application into two parts – an algorithm portion and an architecture design portion. See Kothe Decl., Ex. I at 64-65; Hu Decl. at ¶ 7.  Lee wanted to file a utility patent solely in his own name for the algorithm portion of the invention.  See Kothe Decl., Ex. A at ¶¶ 29-30; Ex. P at ¶ 5.  Mr. Hu learned about this, and also learned that Lee had removed from ViChip's premises both his executed copy of his employee confidentiality agreement, as well as the executed copy of ViChip's patent assignment form.  See Hu Decl., ¶ 7. Accordingly, the next day, on June 4, 2004, Lee's employment at ViChip was terminated, and he was also removed from his positions as president, CEO, secretary, CFO, and registered agent of ViChip.  See Hu Decl., Exs. A-C.

Lee admits that on June 3, 2004, he took several ViChip files and deleted certain electronic files.  Specifically, Lee has admitted to: removing from ViChip's offices and ViChip's patent counsel's office hard copies relating to ViChip's provisional patent application, including the original executed copy of the patent assignment form; accessing ViChip's file server and deleting the contents of computer files that Lee had generated as an employee; deleting the contents of Lee's ViChip-issued laptop computer; and removing the executed copy of his employee confidentiality agreement.  See Kothe Decl., Exs. I at 43, 49, 50, 57-58; S at ¶ 3.  He has also admitted that he tore up the original executed copy of his employee confidentiality agreement, and the original and copy of ViChip's patent assignment form (in which all 5 inventors had assigned their exclusive rights to ViChip). See Kothe Decl., Ex. I at 11-12, 20, 57-58.

On June 14, 2004, Lee filed two utility patent applications with the PTO.  See Kothe Decl., Exs. I at 30-31; R at Exs. 3-4.  Both claim priority to ViChip's provisional patent application, and list Lee as sole inventor.  Lee admits that his utility applications subsume the claims contained in ViChip's provisional patent application.  See id., Ex. I at 74.  On June 23, 2004, ViChip filed its own utility patent application, which also claims priority to its

4

provisional patent application. See Kothe Decl., Ex. Q at 42-43, 47.

B.     The Instant Action

ViChip filed suit against Lee on July 19, 2004. ViChip alleges five causes of action: (1) breach of contract in connection with the Employee Agreement executed by Lee; (2) breach of fiduciary duty; (3) trade secret misappropriation; (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and (5) conversion. See Complaint, ¶¶ 51-81.

On May 19, 2005, Lee filed an amended answer and counterclaims against ViChip. Lee asserts four counterclaims: (1) for declaratory relief regarding ownership of the intellectual property embodied in the relevant patent applications; (2) misappropriation; (3) unjust enrichment; and (4) intentional interference with contractual relations and prospective economic advantage. See Counterclaims of Tsu-Chang Lee; Tsu-Chang Lee's Amended Answer to Complaint ("Counterclaims and Amended Answer"), ¶¶ 42-71.

Vichip now seeks summary judgment on all of its causes of action against Lee, with the exception of its trade secrets misappropriation claim. It also seeks summary judgment on all four of Lee's counterclaims.[1]

**DISCUSSION**

A.     Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

---

[1] The parties have also filed requests for administrative leave to file certain documents under seal, and ViChip has filed objections to evidence requesting that the court strike paragraph 7 of the Declaration of David Jaffer (filed by Lee). The court hereby: (1) DENIES the parties' requests to file under seal, as neither party has shown a compelling need as required by Kamakana v. City of Honolulu, 2006 WL 1329926 (9th Cir. 2006); and (2) SUSTAINS ViChip's objection and STRIKES paragraph 7 of the Jaffer Declaration.

5

verdict for the nonmoving party. Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Lee's Counterclaims

#### 1. Declaratory Relief

Lee seeks declaratory relief regarding inventorship and ownership of the intellectual property rights embodied in the provisional patent application filed by ViChip on June 23, 2003, the utility patents filed by Lee and ViChip on June 14, 2004 and June 23, 2004, respectively (all of which claim priority to the provisional patent application), and related foreign patent applications.  See Counterclaims and Amended Answer, ¶¶ 42-55.  ViChip seeks summary judgment as to Lee's claim, asserting that the undisputed evidence establishes ViChip's ownership of the technological invention contained in the above patent filings by virtue of assignment provisions contained in three separate agreements: (1) the Consulting Agreement; (2) the Employee Agreement; and (3) the U.S. patent assignment form.  Lee, for his part, disputes that any assignment ever took place, arguing that he is the sole inventor of the underlying patent invention, that it preexisted ViChip's formation, and that it was never subject to the assignment provisions contained in the above three agreements.

Preliminarily, the court must draw a line between inventorship and ownership.  To the extent that Lee seeks a declaration that he was the sole inventor of the patented technology at issue, the court notes – as ViChip points out – that such a determination should be made by the Patent and Trademark Office, not the court.  See Concrete Washout Sys., Inc. v. Minegar Envtl. Sys., Inc., 2005 WL 1683930, *4 (E.D. Cal. 2005) (noting that claims of inventorship are best left to PTO to determine in first instance); Display Research Lab., Inc. v. Telegen Corp., 133 F. Supp. 2d 1170, 1175 (N.D. Cal. 2001) (holding that "the PTO's established procedure for handling inventorship disputes is a

better forum for [defendant] to bring its [counterclaims]").  Even if the court were the proper forum in which to adjudicate the inventorship issue in the first instance, consideration of this issue is simply not relevant here.  This is because, regardless whether Lee were to be deemed the original inventor of the patented technology at issue, the court's determination of *ownership* of the patented technology is contingent on whether the above agreements validly assigned all exclusive rights to the underlying technology to ViChip, or left such rights in the hands of the original inventor(s), whomever such inventor(s) might be.  As such, the court declines to reach the merits of Lee's claim to inventorship, and limits its decision to the merits of Lee's claim regarding ownership of the underlying technology.

Moreover, the court notes that Lee has failed to submit any evidence actually proving his claim to sole inventorship.  The exhibits he relies on fail to set forth the precise nature of any preexisting invention claimed by Lee, the date of any such invention, or whether it was in fact the same invention as the underlying Viper chip technology contained in the provisional patent application (and therefore resulting utility and foreign patent applications).  See, e.g., Declaration of Dr. Tsu-Chang Lee in Support of Defendant and Counterclaimant Tsu-Chang Lee's Opposition to ViChip's Motion for Summary Judgment ("Lee Decl."), Exs. F, O; Declaration of G. Whitney Leigh in Support of Defendant and Counterclaimant Tsu-Chang Lee's Opposition to ViChip's Motion for Summary Judgment ("Leigh Decl."), Exs. C, I.  Indeed, these exhibits actually support ViChip's contention that, to the extent any preexisting technology belonging to Lee actually *did* exist, Lee contributed such technology to the Viper project in order to *help create* the final Viper chip product in a collaborative process for which the whole Viper engineering team could take credit.  See Kothe Decl., Ex. I at 56:13-57:2; Ex. M; Ex. N.  In other words, the undisputed evidence demonstrates that, far from being sole inventor of the Viper chip technology, Lee was a co-inventor.

With the above preliminary issue resolved, the court now turns to the issue whether ownership of the underlying ViChip technology was exclusively assigned to ViChip by

operation of any of the three above-referenced agreements.

        a.  Consulting Agreement

  For proof of ownership of the underlying Viper chip technology, ViChip first relies on the assignment provision contained in the Consulting Agreement executed by Lee, wherein Lee – on behalf of ViVoDa – assigns to ViChip the "entire right, title and interest in [all] Work Product," including all "patents, copyrights, trade secrets and other proprietary rights" therein. See Kothe Decl., Ex. C at ¶ 8. "Work Product" under the Consulting Agreement is defined as all technology first produced or created by Lee while performing under the agreement, and its definition is distinguishable from that of "Background Technology," which is expressly defined to refer to preexisting technology owned by ViVoDa. See id. at ¶ 1(a-b).

  Lee acknowledges the assignment provision contained in the Consulting Agreement, but argues that it cannot operate to transfer ownership of any of the underlying Viper chip technology he worked on, since (1) Lee is not an actual party to the agreement; (2) the agreement anticipates, in its definition of "Background Technology," that ViVoDa maintained ownership over all preexisting technology; and (3) all Background Technology was expressly omitted from the agreement's assignment provision by virtue of the provision's inclusion of the term "Work Product" only.

  Lee is correct. The Consulting Agreement only transfers ownership in all technology expressly "produced by or created for" ViChip after execution of the agreement, excluding all Background Technology already in existence and owned by ViVoDa. The agreement also binds ViChip and ViVoDa only, since those are the only named parties to the agreement. Accordingly, by its express terms, the Consulting Agreement cannot operate to effectively assign any work that Lee did as either an inventor or co-inventor of the Viper chip.

  If ViChip is to prevail in its claim that its ownership of the Viper chip technology is undisputed, therefore, it must do so by operation of either the remaining Employee

8

1  Agreement, or the U.S. patent assignment form.

2        b.   Employee Agreement

3    ViChip asserts that ownership of the Viper chip technology was exclusively assigned
4  to it by virtue of the Employment Agreement signed by Lee as an employee of ViChip.  In
5  its work for hire provision, the Employment Agreement expressly states that all inventions
6  "that *result* from work performed by [Lee] for [ViChip]" are expressly assigned to ViChip.
7  See Kothe Decl., Ex. H at ¶ 3 (emphasis added).  In addition, a separate provision entitled
8  "Assignment of Other Rights" expressly states that Lee "irrevocably transfer[s] and
9  assign[s] ... all worldwide patents, patent applications, copyrights, mask works, trade
10 secrets, and other intellectual property rights in any Invention," as well as all "moral rights"
11 with respect to any invention.  See id. at ¶ 5.

12   Lee asserts that the Employee Agreement's assignment provisions are ineffective in
13 conveying ownership to the Viper chip technology because (1) they do not apply to
14 inventions created before the agreement's execution, and (2) they therefore do not apply to
15 his preexisting technology, which he alleges as the basis for the Viper chip technology.

16   These arguments are unpersuasive.  First, as explained above, to the extent that
17 Lee seeks to dispute inventorship with respect to the underlying Viper chip technology, this
18 is not the proper forum in which to do so.  Second, the undisputed evidence with respect to
19 development of the Viper chip technology demonstrates that, to the extent that Lee
20 contributed any technology to the creation of the Viper chip, his contributions led to a
21 *resulting* product (i.e., the Viper chip) that was the subject of the provisional patent
22 application.  See Kothe Decl., Ex. I at 56:13-57:2; Ex. M; Ex. N.  The above provisions of
23 the Employee Agreement expressly cover such resulting product, since the agreement was
24 validly executed by Lee in April 2003, prior to the June 2003 filing of the provisional patent
25 application related to the Viper chip technology.  See Kothe Decl., Ex. K; Ex. M.

26   Finally, even if the court were to assume that the Viper chip was based on
27 technology owned independently by Lee and which preexisted Lee's employment with
28

ViChip, in order to prevail on this argument Lee would still have to affirmatively prove that this preexisting technology could somehow be independently identified or carved out from the resulting Viper chip technology that formed the basis for ViChip's provisional patent application. Yet, as discussed above, Lee has pointed to no evidence to this effect. He fails to set forth the contours of his preexisting technology and the date of any such invention, let alone set forth the differences between it and the Viper chip that ultimately resulted. See Lee Decl., Exs. F, O; Leigh Decl., Exs. C, I. Without such evidence, the court cannot determine what technology Lee wishes to protect, let alone make a determination as to whether such technology was in fact protected from the assignment provision contained in the Employee Agreement that Lee executed.

    Accordingly, the court concludes that the undisputed evidence demonstrates that Lee expressly assigned to ViChip, for its "sole and exclusive property," all Viper chip technology that was the subject of ViChip's provisional patent application and upon which Lee worked as an employee.

    ViChip is therefore correct that the undisputed evidence demonstrates that, pursuant to the Employee Agreement, ownership for the underlying Viper chip technology disclosed in the provisional patent application lies with ViChip.

               c.    U.S. Patent Assignment Form

    ViChip also relies on the assignment provision contained in the U.S. patent assignment form that Lee executed in conjunction with ViChip's provisional patent application. The patent assignment form contains an assignment provision whereby Lee – who acknowledges therein to being one of five inventors of the Viper chip technology – expressly assigned "the full and exclusive right, title and interest" to the invention to ViChip. See Kothe Decl., Ex. N; Ex. I at 56-57. Lee admits that he signed the agreement. However, he claims that the patent assignment form is unenforceable because (1) it lacked consideration; and (2) cannot confer upon ViChip the right to Lee's "broader technology."

    Again, Lee's arguments lack merit. First, although he argues lack of consideration,

10

1  Lee offers no evidence affirmatively proving this point.  Moreover, he does nothing to refute
2  ViChip's evidence that he was paid a salary of $165,000 for his role and work at ViChip, or
3  that the joint venture agreement creating ViChip – to which Lee was a signatory – expressly
4  contemplated that, assuming successful development of the underlying technology, Lee
5  would receive technical shares in the joint venture, from which he might profit.  See Kothe
6  Decl., Exs. B; O at 70:8-15.  Added to this is the fact that, by signing the patent assignment
7  form itself, Lee expressly acknowledged that his execution of the assignment form was
8  supported by "good and valuable consideration."  See id. at Ex. N at TCL00000269.  Each
9  of these factors demonstrates that the patent assignment form was adequately supported
10 by consideration.

11      As for Lee's argument that the patent assignment form could not confer rights to
12 Lee's broader technology, it is unclear what purpose this argument serves.  As with the
13 interpretation of any contract, the court must look to the plain meaning of the terms and
14 provisions contained in the patent assignment form.  See MacKinnon v. Truck Ins. Exch.,
15 31 Cal. 4th 635, 648 (2003).  Those terms and provisions expressly assign to ViChip
16 exclusive rights to the Viper chip invention disclosed in the provisional patent application.
17 See id. at Ex. N.  By Lee's own admission, that invention is the same in substance to that
18 which he later disclosed in his own utility patent application.  See Kothe Decl., Ex. I at 74-
19 76.  Accordingly, the undisputed evidence is that the patent assignment form conveys to
20 ViChip exclusive rights to the *same* technology that is the source for Lee's subsequent
21 utility patents, not to any broader technology.

22      As such, Lee is bound by the express provisions of the patent assignment form,
23 pursuant to which he conveyed all rights to the provisional patent application's underlying
24 technology to ViChip.

25      In view of the above, the court finds that Lee fails to materially dispute ViChip's
26 contention that he conveyed all rights to the underlying technology at issue to ViChip, by
27 operation of two different agreements – the Employee Agreement, and the U.S. Patent
28

Assignment form. Due to these agreements (and to Lee's own admissions), ownership of the underlying technology disclosed in the provisional patent application, and Lee's subsequent utility patents, rests with ViChip. Accordingly, the court GRANTS summary judgment on Lee's declaratory relief counterclaim in favor of ViChip.

### 2. Misappropriation

ViChip also seeks summary judgment with respect to Lee's counterclaim for misappropriation. Specifically, Lee claims that ViChip is liable for misappropriation of the underlying patent technology at issue.

In order to state a claim for misappropriation, Lee must prove that (1) he has invested substantial time and money in development of his property; (2) that ViChip has appropriated the property at little or no cost; and (3) that Lee has been injured by ViChip's conduct. See Balboa Ins. Co. v. Trans Global Equities, 218 Cal. App. 3d 1327, 1342 (1990). Here, however, in view of the court's discussion and holding with respect to Lee's declaratory relief claim, it simply cannot be said that Lee is able to prove the second element of this claim. It is axiomatic that ViChip cannot appropriate, or otherwise unlawfully take, that which it already owns.

Accordingly, as a matter of law, the court GRANTS summary judgment in ViChip's favor on this counterclaim.

### 3. Unjust Enrichment

Next, ViChip seeks summary judgment with respect to Lee's unjust enrichment counterclaim. In order to succeed on this claim, Lee would have to establish: (1) that ViChip received a benefit; and (2) that it would be unjust to allow ViChip to retain the benefit at Lee's expense. See, e.g., Lectrodryer v. Seoulbank, 77 Cal. App. 4th 723, 726 (2000).

For the same reasons just detailed above – i.e., that all undisputed evidence demonstrates that ViChip is the legal owner of the underlying technology contained in the provisional patent application – Lee cannot establish that allowing ViChip to retain the

provisional patent inventions would be unjust.

Accordingly, the court GRANTS summary judgment in ViChip's favor as to this counterclaim.

### 4. Intentional Interference with Contract

Finally, Lee alleges a claim for intentional interference with contractual relations and prospective economic advantage. Specifically, he alleges that ViChip has intentionally interfered in the joint venture agreement. See Counterclaims and Amended Answer, ¶¶ 60-71. ViChip seeks summary judgment as to this claim, arguing that, as a matter of law, the claim cannot stand, since ViChip is not a stranger the joint venture agreement.

ViChip is correct that California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship. See Della Penna v. Toyota Motor Sales U.S.A., Inc., 11 Cal. 4th 376 (1995). Accordingly, an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests. See Marin Tug & Barge, Inc. v. Westport Petroleum, Inc., 271 F.3d 825, 832 (9th Cir. 2001).

Neither California courts nor the Ninth Circuit has had occasion to pass on the precise issue before the court here – i.e., whether a company set up as a joint venture might be considered a stranger to the original joint venture agreement for purposes of the intentional interference torts. National Rural Telecomm. Co-op v. DirectTV, Inc., however, is instructive. See 319 F. Supp. 2d 1059 (C.D. Cal. 2003). In that case, the district court had occasion to consider whether a third party beneficiary to a contract could be held liable for intentional interference with the contract. The court conducted an exhaustive analysis of prior case law interpreting the "stranger" requirement, before holding that defendant third party beneficiaries to the contract, even though not named parties, could not be deemed strangers to the contract. See id. at 1073. The court held that he duty not to interfere with a contract "falls only on strangers-interlopers who have *no legitimate interest in the scope or course of the contract's performance.*" See id. at 1073 (emphasis added). It found that

defendants, who were directly and actively involved with plaintiff's business, and who stood to benefit from the contract as third parties, had a legitimate interest in the performance of the underlying agreement in question. See id. at 1071-72; see also Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1284 (11th Cir. 2003) (third party beneficiary cannot be deemed "stranger" to contract).

Here, the court finds that ViChip is analogous to a third party beneficiary. Although not named as a party to the joint venture agreement, it has a direct interest or involvement in the relationship embodied among the parties to the joint venture agreement. Namely, it is *the* economic interest that was expressly set up by virtue of that agreement, and its fundamental existence depends on the performance of the joint venture agreement. See Kothe Decl., Ex. B.

Accordingly, the court finds that, since ViChip cannot be deemed a stranger to the joint venture agreement, Lee's intentional interference claim against it must fail. The court therefore GRANTS summary judgment as to this counterclaim in favor of ViChip.

C. ViChip's Affirmative Causes of Action

1. Breach of Contract

ViChip seeks summary judgment on its breach of contract claim. In order to prove this claim, ViChip must demonstrate (1) the existence of a valid contract; (2) performance of the contract; (3) breach; and (4) damage. See, e.g., Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968). Here, ViChip points to the existence of the duly executed and performed Employee Agreement, and specifically asserts breach by Lee of the confidentiality provision contained therein. Under the terms of that provision, Lee expressly agreed that, upon termination of his employment, he would "promptly deliver to [ViChip] all documents and materials of any nature pertaining to [his] work with [ViChip]" and would "not take with [him] any documents or materials ... containing any Proprietary Information. See Kothe Decl., Ex. H at ¶ 8.

Lee freely admits to violating this provision. He concedes: that he duly executed the

Employee Agreement in April 2003; that his employment was terminated on June 4, 2004; and that, shortly or immediately before he received official notice of his termination but after the May 14 meeting in which he had been asked to step down, he (1) removed from ViChip's files the hard copy of ViChip's provisional patent application and related information, including an executed copy of the patent assignment form and (2) deleted from ViChip's electronic server all electronic files related to ViChip's provisional patent application. See Kothe Decl., Ex. I at 11-12, 43, 49-50; Ex. A at ¶¶ 21. Lee failed to return, or due to destruction was not able to return, any of this information to ViChip until litigation of the instant action was underway.

Despite the above admissions, Lee disputes that a breach of the Employee Agreement has occurred. First, he contends that the agreement does not bind him in the first instance, since he was not an employee of the company, but rather an officer. Second, he argues that, even if the agreement did apply to him, his decision to take provisional patent application files and delete related electronic files is nonetheless protected, since all information relates to pre-existing technology which he invented, which was therefore not covered by the agreement, and not proprietary to ViChip.

These arguments are to no avail. As to the former, Lee admits that he signed the Employee Agreement. The mere fact that he was also an officer of the company does not render his execution of the Employee Agreement suspect, or otherwise invalidate the agreement. Nor does Lee present any legal authority to this effect. Moreover, Lee presents no evidence of mistake, excusable neglect, or anything else that would prove that the Employee Agreement can be declared void or legally meaningless. Indeed, Lee's argument amounts to little more than a claim that although he executed the agreement, he either did not mean to do so or did not read its terms – an argument that has been soundly rejected by courts. See, e.g., Randas v. YMCA of Metropolitan Los Angeles, 17 Cal. App. 4th 158, 163 (1993) ("one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it"). Accordingly, the only

1 conclusion to be reached is that Lee's execution of the agreement – a fact he admitted – binds him to its provisions.

With respect to the latter argument, Lee does not explain how the purported pre-existence of his own technology – even if the actual subject of ViChip's provisional patent application – could be relevant to the confidentiality provision that binds him, and which he is accused of breaching.  Nor can he.  He presents no evidence actually disputing ViChip's claim that the provisional patent application and related electronic files, or the information contained therein, was maintained on ViChip's property, in ViChip's name, and proprietary to ViChip.  Unless he can produce such evidence, Lee cannot dispute what he has expressly admitted – that he removed and destroyed information proprietary to ViChip, in violation of the confidentiality provision contained in the agreement.[2]

In sum, Lee cannot avoid the impact of his own admissions, all of which prove that he signed a valid Employee Agreement, which contained a confidentiality provision that he breached when he removed and destroyed provisional patent information from ViChip's files and property.  For these reasons, summary judgment as to ViChip's breach of contract claim is GRANTED.

### 2. Breach of Fiduciary Duty

ViChip asserts that summary judgment is also warranted on its breach of fiduciary duty claim.  To prove its claim for breach of fiduciary duty, ViChip must show "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  See Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995).  Here, Lee has already admitted to having owed ViChip a fiduciary duty.  See Kothe Decl., Ex. G at ¶¶ 19-20 (Lee's Amended Answer).  Accordingly, the only real issue for consideration is whether Lee has breached that duty.  ViChip contends proof of breach is undisputed, since Lee has

---

[2] Moreover, as explained above in connection with Lee's declaratory relief counterclaim, although Lee repeatedly asserts in this case that his own invention preexisted any agreement at issue, and was contained in the Viper chip claimed by ViChip in its provisional patent application, he doesn't actually introduce probative evidence to this effect.

16

admitted to taking proprietary information and deleting relevant electronic files. Lee, however, argues that his actions were justified under the business judgment rule, in order to prevent ViChip's files from "being heisted by 3S."

Lee's argument is misguided at best. The business judgment rule can only be used where a fiduciary is demonstrated to have acted in an unbiased manner. See, e.g., Gaillard v. Natomas Co., 208 Cal. App. 3d 1250, 1265-66 (1989). Here, Lee's actions in taking and destroying proprietary information cannot seriously be viewed as unbiased, or in the best interests of ViChip. Although Lee claims his actions were driven out of a desire to protect ViChip from a 3S takeover, Lee has presented no probative evidence that ViChip was in danger of being improperly "taken over" by any competing company, and has presented no evidence demonstrating why ViChip's provisional patent files or electronic files would need to be taken, let alone wholly destroyed. Indeed, Lee's actions appear to be anything but unbiased, given the affirmative evidence demonstrating that Lee knew he had been asked to step down from his role as director and officer of ViChip, knew that he might soon be removed, and also knew that the deadline for filing the non-provisional patent application was approaching. See, e.g., Kothe Decl., Ex. A at ¶¶ 19-20; N; O at 138-141; Hu Decl., ¶¶ 5, 9.

Since Lee has failed to present any affirmative evidence that would materially dispute the evidence and admissions before the court, the court GRANTS summary judgment on ViChip's claim for breach of fiduciary duty.

### 3. Computer Fraud and Abuse Act

Next, ViChip seeks summary judgment on its claim under the Computer Fraud and Abuse Act ("CFAA"). To make out a claim thereunder, ViChip must prove that Lee has (1) intentionally accessed (2) a protected computer (3) without authorization, and (4) as a result of such conduct, has (5) intentionally, recklessly or otherwise caused (6) damage. See 18 U.S.C. §§ 1030(a)(5)(A-B). Here, ViChip points to Lee's express admission that he deleted ViChip's computer files, and argues that this is undisputed evidence establishing a

17

1  violation of the CFAA.  In response, Lee disputes the third "authorization" element only,
2  claiming that his actions were technically authorized, since he deleted the above files while
3  still an officer and director of ViChip.

4        This argument is unpersuasive.  While there is a paucity of Ninth Circuit authority
5  interpreting the authorization prong of the CFAA, Int'l Airport Centers, LLC v. Citrin is
6  directly on point, and provides meaningful guidance.  See 440 F.3d 418, 419-21 (7th Cir.
7  2006).  In Citrin, the Seventh Circuit interpreted the identical CFAA provision pursuant to
8  which ViChip is suing, under a similar factual scenario.  There, an employee who was an
9  agent for a real estate agency decided to terminate his employment and go into business
10 on his own. *Prior to his termination*, however, he accessed the computer that was given to
11 him by his employer and deleted all information and data that he had been gathering in the
12 course of his employment.  He also loaded the computer with a program that would
13 permanently delete the files so that they would be untraceable.  The Seventh Circuit held
14 that the employee could still be deemed to have accessed the employer's computer without
15 "authorization," even though the agent's employment had not yet terminated, and that
16 liability could attach under the CFAA.  This is because, as the Seventh Circuit put it,
17 "Citrin's breach of his duty of loyalty [in deleting the relevant files] terminated his agency
18 relationship ... and with it his authority to access the laptop, because the only bases of his
19 authority had been that relationship."  See id. at 420.

20       So here.  It cannot be disputed that Lee, as both employee and officer, had a duty of
21 loyalty that he owed ViChip, and therefore an agency relationship.  See, e.g., United States
22 v. Galindo, 871 F.2d 99, 101 (9th Cir. 1989).  Accordingly, when Lee decided –  the night
23 before his termination and *after* knowing that he was being asked to step down and give up
24 his duties at ViChip – to delete all information from ViChip's server and his ViChip-issued
25 computer, he similarly breached his duty of loyalty and terminated his agency relationship
26 to the company.  See Kothe Decl., Ex. O at 138:14-141:16; see also Lee Decl., ¶¶ 18-19,
27 22.  In doing so, and as the Citrin court held, he also terminated his authorization to access
28

1 the files.

2 In view of the evidence establishing Lee's unauthorized destruction of ViChip's
3 electronic files, and Lee's failure to present any evidence materially disputing this fact, the
4 court hereby GRANTS summary judgment in ViChip's favor as to this claim.

        4.      Conversion

6 Finally, ViChip moves for summary judgment on its conversion claim. In order to
7 prove conversion, ViChip must show ownership or right to possession of the intellectual
8 property at issue, wrongful disposition of the property, and damages. See, e.g., Kremen v.
9 Online Classifieds, Inc., 337 F.3d 1024, 1029 (9th Cir. 2002).

10 These elements are satisfied here. First, as the court held in conjunction with its
11 discussion of Lee's declaratory relief counterclaim, ViChip has proven ownership of the
12 underlying patent technology at issue. Second, Lee has admitted to taking ViChip's
13 provisional patent application files and information, and that the utility patents he filed
14 claimed the same technology as was contained in ViChip's provisional patent application.
15 See Kothe Decl., Ex. I at 74-76; Counterclaims and Amended Answer, ¶¶ 38, 44, 46, 66,
16 79. Finally, with these facts ViChip has demonstrated damages, since its rights to its
17 intellectual property are now encumbered, due to the competing patent filings submitted by
18 Lee.

19 Lee fails to create a material dispute as to any of the foregoing and introduces no
20 evidence on these points. Accordingly, summary judgment on the conversion claim is
21 GRANTED in favor of ViChip.

        D.      Conclusion

23 For the above reasons, the court GRANTS summary judgment in favor of ViChip as
24 to (1) all its affirmative causes of action against Lee, with the exception of its trade secrets
25 misappropriation claim; and (2) all four of Lee's counterclaims.

26 By separate order, the court refers the parties to Magistrate Judge Spero to conduct
27 a settlement conference on the one remaining claim prior to the August 3, 2006 final pretrial

conference.

**IT IS SO ORDERED.**

Dated: June 9, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge